# EXHIBIT B

## AMERICAN ARBITRATION ASSOCIATION

### Commercial Arbitration Tribunal

---

**Case No. 01-16-000-2652**

OSRAM SYLVANIA INC.

      Claimant/Counter-Respondent,

          v.

PHOTOGRAPHIC ILLUSTRATORS CORPORATION

      Respondent/Counter-Claimant and      Third-Party Claimant,

          v.

BROOK ELECTRICAL SUPPLY COMPANY; CAPITAL LIGHTING & SUPPLY,
LLC d/b/a CAPITALTRISTATE; FACILITY SOLUTIONS GROUP, INC.; FROST
ELECTRIC SUPPLY CO. d/b/a FROSTELECTRIC.COM; STUART C. IRBY
COMPANY d/b/a IRBY.COM; McNAUGHTON-McKAY ELECTRIC CO.; And
TRADE SERVICE CO., LLC,

      Third-Party Respondents

---

## FINAL AWARD

I, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the

arbitration agreement entered into by the above-named parties and signed June 22, 2006, with an

effective date of June 1, 2006 as amended on September 30, 2008 and having been duly sworn,

and having heard the proofs and allegations of the Parties, and having previously rendered a

Partial Final Award dated November 20, 2017 hereby AWARD as follows:

### PARTIES' APPLICATIONS FOR ATTORNEYS' FEES AND COSTS

A Partial Final Award ("PFA") was issued in the arbitration on November 20, 2017.

All terms and abbreviations used in the PFA shall have the same meaning herein. Both parties

have moved for an award of attorneys' fees and costs, and each has opposed the application of the other.

In essence PIC in the Arbitration sought damages from Sylvania and the Customer Defendants for breach of the Agreement, for copyright infringement under the Copyright Act, 17 U.S.C. sec. 501, and for violation of the Digital Millennium Copyright Act, 17. U.S.C. sec. 1202 ("DMCA").   The PFA found in favor of PIC on its contract claim and for Sylvania and the Customer Defendants on the statutory claims under Title 17.

PIC now seeks an award of attorneys' fees and costs under Para 39 of the Agreement: "Prevailing Party.   If any legal action, arbitration, or other proceeding is brought for a breach of this Agreement of any of the warranties herein, the prevailing party shall be entitled to recover its   reasonable attorneys' fees and other costs incurred in bringing such action or proceeding, in addition to any other relief to which such party may be entitled."

Para 47 of the Agreement further provides it is governed by the laws of the Commonwealth of Massachusetts. Sylvania opposes PIC's fee and costs applications and seeks an award of costs and fees under the Copyright Act, 17. U.S.C. sec. 505 and under DMCA, 17 U.S.C. sec. 1203.   For the reasons set forth below, I grant the application of PIC for the recovery of its reasonable attorneys' fees and costs, and I deny the applications of Sylvania and of the Customer Defendants for their attorneys' fees and costs under the Copyright Act and under the DMCA.   Each side shall bear its own AAA administrative fees and arbitrator fees and expenses.

While Sylvania disputes the holding that PIC was the prevailing party on its claim for breach of the Agreement, PIC indeed was the prevailing party under the Agreement.   While Sylvania did successfully contend in opposition to PIC's Copyright and DMCA claims that Sylvania's obligations under Para 10.b of the Agreement were covenants and not conditions,

Sylvania vigorously disputed that it had breached its obligations under Para 10.b regardless of the characterization.   Although the obligation to provide a copyright notice or other attribution on PIC Images fell squarely on Sylvania under Para 10.b, it argued through much of the arbitration that the attribution obligation was that of PIC and to the extent Para 10.b had imposed any requirements on Sylvania it had complied. The evidence demonstrated, however, that Sylvania had utterly disregarded the obligation to provide copyright notice or attribution on the Images, in favor of sales and customer relations over its obligations to PIC under the Agreement.

The provisions of Para 39 are standard fee shifting terms in a commercial contract and Massachusetts courts have developed   a body of case law that deals with the language and how to determine if the requested attorneys' fees are reasonable.   Neither party has offered any evidence on the parties' intent in Para 39, and there is no apparent ambiguity in language of Para 39. Thus, I give the language its plain meaning as construed in Massachusetts case law.

A very early case regarding an application for attorneys' fees is <u>Cummings v. National Shawmut Bank of Boston,</u> 284 Mass. 563 (1934).    In <u>Cummings</u> the SJC affirmed a finding that counsel for the bank had been entitled to fair and reasonable compensation for his legal services.   The court identified factors to be considered in making the determination of a fair and reasonable fee, including counsel's ability and reputation, demand for the attorney's services, the amount and importance of the matter involved, time spent, fees usually charged for similar services by other attorneys in the same legal community, the amount of money or value of property affected by the dispute, and the results obtained.   The court specifically noted that no single factor was necessarily decisive in determining a fair and reasonable charge for such services.   <u>Id</u>. at 569.   Since Cummings, other courts in Massachusetts have regularly utilized similar language and a similar approach to determine a reasonable attorney's fee.   <u>E.g.</u>, <u>First</u>

National Bank of Boston v. Brink, 372 Mass. 257 (1977); Winthrop Corp. v. Lowenthal, 29

Mass. App. 180 (1990); MIF Realty, L.P., v. Fineberg, 989 F.Supp. 400 (D. Mass 1998);

Northern Heel Corp. v. Compo Industries, Inc. 851 F.2d 456 (1st Cir. 1988); Accusoft Corp. v.

Palo, 237 F.3d 31, 39 (1st Cir. 2001).

 The courts also recognize the enforceability of fee shifting provisions in contracts

entitling the prevailing party to reasonable attorneys' fees and costs. Accusoft at 39; Winthrop at

185-6; MIF Realty.   Similarly the courts applying Massachusetts law have recognized the

enforceability of contingent fee awards provided the attorneys' fees are reasonable.   First

National Bank of Boston 361 N.E. 2d 406, 412; Northern Heel Corp. at 475.

 PIC is seeking a fee award based on a contingent Fee Agreement it reached with its

counsel McKool Smith.   PIC's fee application is supported by the affidavit of Gary Cruciani, a

partner with the firm of McKool Smith and lead counsel for PIC in the proceedings ("Cruciani

Affid."), and the affidavit of Matthew Fleeger, President of PIC ("Fleeger Affid.").   The Fee

Agreement provides that PIC is obligated to pay McKool Smith 30% of Net Litigation Proceeds

("NLP").   NLP is defined as the SUM of Fees ("F") to be awarded PLUS the Award of

Damages ($9,591,049.99) ("A") PLUS Costs to be Awarded ("B") MINUS Litigation Expenses

("C") advanced by or on behalf of PIC during the proceedings ($1,824,443.92).   As a formula it

is expressed as follows: $F = 30\% ((A+B+F)-C))$.   If all of PIC's Fees and Costs were awarded as

requested, the Fee award would total $4,232,714.33, less than what McKool Smith's normal

billing rates would have generated. Cruciani Affid. para 15.. Mr. Cruciani also identifies certain

McKool Smith expenses that were properly incurred but were not billed to PIC and thus do not

make up a part of PIC's applications for Fees and Costs. Cruciani Affid. para 16.

 I am satisfied that the Fee Agreement was the result of an arms-length negotiation

between the lawyers and a sophisticated client.   Under Massachusetts law such a contingency

fee agreement is then enforceable as against the client. See Cambridge Trust Co. v. Hanify &

King, PC, 430 Mass. 472 (1999).    And it is enforceable against Sylvania if the Fee Agreement

is reasonable.   Sylvania argues it is not reasonable and should be rejected.

 Admittedly as a contingent fee agreement PIC's Fee Agreement is enhanced beyond a

more routine 30% contingency fee arrangement, but Mr. Cruciani effectively lays out the

mechanics, rationale and justification for the Fee Agreement and for PIC's calculation of the

Fees and Costs it seeks.   Cruciini Affid.   Mr. Fleeger similarly authenticates the Cost figures

and expense calculation in the Fee formula, while noting that some legitimate expenses were

written off and thus not included in the final cost figures.   Cruciani Affid. para 31; Fleeger Affid

para 9.   I am satisfied that the costs and expenses itemized by Mr. Cruciani and by Mr. Fleeger

in their affidavits and in the exhibits attached thereto were properly and reasonably incurred.

 Mr. Cruciani identifies McKool Smith as a national litigation firm, with an excellent

reputation and a record of success that specializes in high profile litigation involving complex

issues with substantial damage claims.   I personally observed the work of both counsel for over

a year throughout the arbitration proceedings, and I found the performance, skill and dedication

of both firms to be excellent.   McKool Smith often enters into contingency fee agreements with

its clients in such cases, and it is not unusual in the firm's experience to negotiate agreements

similar to that with PIC.   Cruciani Affid. paras. 3-22. Mr. Cruciani identified the McKool Smith

lawyers who worked on the arbitration, their respective billing rates, the individual and total

hours billed (7,331) and what fees those hours would have generated had PIC been paying hourly

rates, to wit, $4,317,399.50.   Cruciani Affid. para 15.

 In matters such as this, and especially ones involving difficult legal and factual issues

with large damages at stake, high profile litigation firms and lawyers, whose services are in high demand, require and are able to negotiate an incentive beyond normal billing rates in order to devote the resources necessary for such cases, and a contingency fee arrangement such as that with PIC can provide that incentive.   Similarly, clients seek such alternative billing arrangements in cases in which it is difficult for clients to evaluate the risks, the legal issues and the likelihood of success in complex and/or technical litigation.   That is particularly true where the opposing party is a substantial enterprise with the means for expensive and protracted litigation, represented by a similarly prominent national law firm with experience in copyright cases.   In this case, Sylvania and its law firm, Kilpatrick Townsend fit that description.   In this arbitration, PIC and Mr. Fleeger were willing to and did pay the costs and expenses incurred in the arbitration, totaling $1,824,443.92, and agreed to share with McKool Smith on a percentage basis the net recovery of the litigation.   Had PIC not prevailed in the arbitration McKool Smith would have recovered no fees; PIC would have paid all of its own costs and expenses and likely would have been responsible for Sylvania's attorney's fees and costs.   Two sophisticated parties thus negotiated a fee agreement under which PIC was certain it would not have to pay the legal fees of its counsel out of pocket and McKool Smith would likely earn a fee beyond its normal billing rate if it were successful, but only if it were successful. Thus, I find that the Fee Agreement is reasonable as between PIC and McKool Smith. See Cambridge Trust Co. v. Hanify & King, PC, 430 Mass. 472 (1999). (SJC enforced contingent fee agreement whereby law firm received percentage of total of recovery which included awarded fees.)   So the Fee Agreement is enforceable as between PIC and McKool Smith.   Sylvania, however, argues it should not be enforceable against it because it does not provide a reasonable attorneys' fee within the meaning of the Agreement, Para 39 and Massachusetts caselaw.

As noted above, the language in Para 39 is free from ambiguity and the only question is whether the Fee that would be due under the Fee Agreement is reasonable under Massachusetts law.   Considering the relevant factors, I find the Fee requested is reasonable in these circumstances.   In doing so, I considered the following factors: billing rates for comparable counsel in the Boston legal community where this arbitration was tried; the billing rates and fee agreements of national litigation counsel in large complex cases; the difficult nature of the case; the results obtained; the reputation and quality of services of counsel; the time spent.

In opposition, Sylvania first asserts it was the prevailing party in the arbitration, not PIC. Indeed PIC was the prevailing party and the PFA held PIC was entitled to its fees under Para 39. Sylvania challenges the reasonableness of PIC's fee application by reciting in a number of different ways the apportionment of time or page space PIC's attorneys devoted in opening and closing arguments, in their opening and closing briefs, and in their proposed findings of fact and conclusions of law to the copyright/DMCA claims versus the contract claims.   While Sylvania's percentages appear to be generally accurate, they simply reflect PIC's ambition to recover under the potentially more lucrative copyright/DMCA claims rather than just on the contract claims. Ultimately, though, PIC could not recover on any of its claims without first establishing the breach of the contract provisions in Para 10.b.   The question before me is whether PIC's fee application is reasonable as a matter of contract interpretation and as a matter of fact under Massachusetts law.

Admittedly, PIC did emphasize in the proceedings its copyright claims because they held out the prospect of substantially higher damages under PIC's copyright theories.    In his affidavit para 25 in support of PIC's fee application, however, Mr. Cruciani contends that 90% of PIC's case was involved in developing a core set of facts applicable to both the copyright and the

contract claims.   And while I do not put a percentage on it, I generally agree with Mr. Cruciani's statement.   The same facts were at issue under both the contract and the copyright claims, and the case ultimately turned on whether Sylvania's breach of its obligations under Para 10.b gave rise to both copyright and breach of contract liability or only to liability for breach.   Sylvania argues that it was PIC's unnecessary and unreasonably aggressive copyright litigation practice that caused this arbitration to be so expensive, suggesting that as a reason that PIC's attorney's fees are unreasonable.   But it was Sylvania that breached the Agreement by failing to comply with the attribution and copyright obligations in Para 10.b and by distributing thousands of images to its customers without insuring the use of the copyright notice.   It was the presence of those thousands of images that gave rise to the litigation, yet at no time did Sylvania concede that it had breached.   PIC did take an aggressive litigation position but as I have found not an unreasonable one or one lacking in good faith.   The intent of the parties in Para 10.b of the Agreement was contested, but the reason for this arbitration was Sylvania's failure to take its obligations under Par 10.b seriously and its decision to put its corporate/commercial self-interest ahead of its contractual obligations.   The fault was not PIC's assertion that the lack of attribution created a copyright violation.   Again, however, the question is whether as a matter of fact PIC's requested fees and costs are reasonable.

Sylvania challenges the hours spent by McKool Smith and the absence of complete and detailed billing sheets to contest the fee application.   PIC's application, however, is not based on hours but on a percent of the Net Litigation Proceeds and that in turn is based on the contract damages; the copyright and DMCA claims do not factor into the amount of the fee application. Sylvania challenges some of the assertions in the Cruciani affidavit regarding his firm's practice and contingency fee practice, but I have no reason to doubt the veracity of his statements.   The

Fee Agreement was entered into in August 2016 long before McKool Smith had spent any

significant time in this matter. I am familiar with billing rates of lawyers in large Boston firms

and have had experience dealing with national litigation firms from other cities, including Dallas.

The McKool Smith normal billing rates are comparable to those of large firms in Boston and the

contingency fee agreement generates effective hourly rates comparable to those of large Boston

law firms that might be involved in this type of litigation.   The Fee Agreement also is consistent

with fee agreements used by litigation firms that practice nationally.   Defendant firms as well as

plaintiff firms offer creative and potentially lucrative fee arrangements to clients that are seeking

to avoid large out of pocket legal fees.   I find nothing objectionable about the Fee Agreement.

While Sylvania emphasizes that PIC recovered less than its damage claims under its copyright

and DMCA claims, that has scant relevance when it is understood that the Fee Agreement is a

contingency agreement based on the recovery made, not the pleadings.   PIC recovered a

substantial figure of over $9 million, and its fee application is based on that damage recovery.

PIC also seeks Costs totaling $2,108,316.46 under the provisions of Para 39 of the

Agreement. I read Para 39 as allowing "reasonable" costs related to the claims for breach of the

Agreement. PIC's total Costs includes AAA administrative and arbitrator fees of $166,400 paid

by PIC.   Because I do not award those fees as part of PIC's Costs, they should be deducted from

PIC's application.   All of the Costs sought by PIC are identified in the Curciani and Fleeger

affidavits and exhibits, as well as the affidavit of Craig Smith of the Lando & Anastasi , LLP law

firm that initially represented PIC in the arbitration.   Mr. Fleeger identifies the largest

component of PIC's Cost as $1,302,657.46 which represents compensation and expenses for Len

Bucchino, a consultant in computer and software development and technology, and two expert

witnesses, Professor Jeffrey Sedlik (photography and related data analysis) and Dr. Ryan

Sullivan (damages).   PIC also utilized the expert forensic services of Charles Adams.

Mr. Cruciani addresses the reasonableness of PIC's application for Costs in his affidavit. He asserts his opinion that "virtually all of the consulting and expert fees incurred in this case would have been incurred even if the only claims in the case had been PIC's and OSI's claims under the 2006 License Agreement." Cruciania Affid. para 35.   I agree that all of the experts would have been required but not to the degree and expense they were used.   I do find that their billing rates were reasonable and appropriate.   I found Mr. Adams to have been necessary and his fees and expenses are fully recoverable; he testified primarily in response to claims by Sylvania that PIC had altered data and files relating to the Images.   Dr. Sullivan would have had to testify about damages and his testimony and evidence at the hearings related to both the copyright and the contract claims. His emphasis in presentation was on the higher valued copyright claims but his underlying work went to a broader area and clearly related to the contract claims. I based my damage findings on a different approach but utilized Dr. Sullivan's analysis and presentations to inform my thinking.   I find that 50% of Dr. Sullivan's fees and expenses are reasonable and recoverable under Para 39.   Professor Sedlik testified as an expert in photography and metadata, key issues in both the contract and copyright claims.   I find that 75% of his fees and expenses are recoverable under Para 39.   Finally, I find that 75% of the fees and expenses of Len Bucchino are recoverable Costs.   His work provided an evidentiary foundation for all of the claims in the arbitration.   Much of the expert and consulting services covered both theories of recovery, and as I have already noted, both the copyright and the contract theories of recovery turned on the same factual determination; only the legal consequences varied.   Under the copyright claims, certain of the expert services that were required were not obviously applicable to the contract issues.   Based on my familiarity with the

reports and testimony of the three experts and of the consultant, I have fist hand knowledge of their contributions to the recovery by PIC and that is reflected in the adjusted percentages above.

Turning to the Application for Fees and Costs by Sylvania and the Customer Defendants, they seek their fees and costs under the discretionary provisions of 17 U.S.C. sec 505 of the Copyright Act and of 17 U.S.C. sec 1203 (b)(4) and (5) of the DMCA.   Both statutes provide the court may in its discretion award reasonable attorney's fees to the prevailing party and may allow the recovery of costs by or against any party.   PIC suggests that perhaps I do not have the authority to award costs or fees under the statutes because they refer to the power of the "court." PIC cites Nimmer for that proposition.   Rule R-47 (d) ii of the Commercial Arbitration Rules of the AAA may provide me with that authority, but in light of my decision on the applications of Sylvania and of the Customer Defendants, I do not have to make that determination.

PIC correctly cites to the recent unanimous Supreme Court decision <u>Kirtsaeng</u> v. <u>John Wiley & Sons, Inc</u>., 136 S. Ct. 1979 (2016) as controlling authority on whether Sylvania and the Customer Defendants should recover any fees or costs.   I ruled in the PFA that PIC's copyright claims were objectively reasonable and brought in good faith.   This arbitration and the claims asserted were precipitated by Sylvania's clear breach of the attribution provisions of the Agreement and its litigation posture throughout the arbitration.   The Supreme Court in <u>Kirtsaeng</u> repeated the principles and criteria for awarding fees set forth in <u>Fogerty v. Fantasy, Inc</u>., 510 U.S. 517, 533-34 (1994).

In <u>Fogerty</u>, the Court emphasized that the trial court has discretion in awarding fees and should not award them as a matter of course. The Court identified some factors to consider, including frivolousness, motivation and objective unreasonableness. <u>Id</u>.   In <u>Kirtsaeng</u>, the Court again relied on the objective reasonableness of the losing party's position. I have already found

that PIC's position on its copyright claims was a reasonable one, albeit not a successful one. Nor do I find that the granting of fees to Sylvania and the Customer Defendants would further the Copyright Act's fundamental goal of "enriching the general public through access to creative works." Fogerty, supra at 527; accord, Kirtsaeng, supra at 1986.   Accordingly, exercising my informed discretion, I deny the applications of Sylvania and the Customer Defendants for attorneys' fees and costs. In light of my basic ruling under Sec 505 and Sec 1203, I do not need to reach the other specific objections PIC has asserted to individual aspects of the costs sought by Sylvania and the Customer Defendants, although those objections are not without basis.

In sum, I grant PIC's application for fees consistent with its contingent fee agreement with McKool Smith.   I also grant PIC's application for the recovery of costs, as reduced by my percentages of the expert and consultant fees and expenses and by the AAA fees and expenses paid to date.   All other costs in PIC's application are approved. The applications of Sylvania and the Customer Defendants for attorneys' fees and costs are denied.

Therefore, Sylvania shall pay to PIC the amount of $5,434,330.56 as calculated here. PIC's formula for the calculation of attorneys' fees is:

Fee = (Award + Costs Awarded-Expenses) / 2.333.


I have reduced PIC's Costs to $1,473,653.50 by subtracting the reductions to the expert and consultant expenses and by subtracting the AAA fees paid to date.   My calculations:

| | | |
|---|---|---|
| AWARD | $ | 9,591,049.99 |
| Costs | $ | 1,473,653.50 |
| Total | $ | 11,064,703.49 |
| Less Expenses | $ | 1,824,493.92 |
| Adjusted Total | $ | 9,240,209.57 |
| divided by 2.333 | $ | 3,960,655.63 |
| | | |
| **PIC FEE AWARD** | $ | 3,960,655.63 |
| | | |
| PIC Requested  Costs | $ | 2,108,316.46 |
| AAA/Arbitrator Fees | $ | 166,400.00 |
| 50% Dr. Sullivan Fee | $ | 285,197.19 |
| 25% Prof Sedlick | $ | 107,400.06 |
| 25% Len Bucchino | $ | 75,665.71 |
| TOTAL REDUCTIONS | $ | 634,662.96 |
| | | |
| **PIC Awarded Costs Total** | $ | 1,473,653.50 |
| | | |
| **PIC Fee and Cost Award** | $ | 5,434,309.13 |

The administrative fees and expenses of the American Arbitration Association totaling $61,600 and the compensation and expenses of the arbitrator totaling $243,550 shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration.   All claims not expressly granted herein are hereby denied.

_____              _____

Date                                                        Bernard J. Bonn III, Arbitrator

| | | |
|---|---|---|
| AWARD | $ | 9,591,049.99 |
| Costs | $ | 1,473,653.50 |
| Total | $ | 11,064,703.49 |
| Less Expenses | $ | 1,824,493.92 |
| Adjusted Total | $ | 9,240,209.57 |
| divided by 2.333 | $ | 3,960,655.63 |
| **PIC FEE AWARD** | $ | 3,960,655.63 |
| PIC Requested Costs | $ | 2,108,316.46 |
| AAA/Arbitrator Fees | $ | 166,400.00 |
| 50% Dr. Sullivan Fee | $ | 285,197.19 |
| 25% Prof Sedlick | $ | 107,400.06 |
| 25% Len Bucchino | $ | 75,665.71 |
| TOTAL REDUCTIONS | $ | 634,662.96 |
| **PIC Awarded Costs Total** | $ | 1,473,653.50 |
| **PIC Fee and Cost Award** | $ | 5,434,309.13 |

The administrative fees and expenses of the American Arbitration Association totaling $61,600 and the compensation and expenses of the arbitrator totaling $243,550 shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims not expressly granted herein are hereby denied.

January 18, 2018

Date

Bernard J. Bonn III, Arbitrator