# EXHIBIT C

# AGREEMENT

This is an Agreement by and between Osram Sylvania, Inc. ("OSI") and Photographic Illustrators Corporation ("PIC").

WHEREAS OSI (including its predecessors) has used the photographic services of PIC and its president Paul Picone for many years and desires to continue using such services;

WHEREAS PIC has provided photographic services to OSI for many years and desires to continue providing such services;

WHEREAS PIC has alleged that OSI has used PIC's photographs outside the scope of the licenses granted to OSI;

WHEREAS OSI and PIC desire to resolve any disputes between them in favor of a continuing business relationship on mutually beneficial terms; and

WHEREAS OSI desires to obtain a release for past alleged unlicensed uses of PIC's photographs and a paid up license to freely use photographs taken by Paul Picone and for which PIC owns the copyright;

NOW THEREFORE, in consideration of the above circumstances and of the mutual promises and conditions contained herein, the parties agree as follows:

1. Term. This Agreement shall be effective as of 1 June 2006 and shall continue for six (6) years thereafter unless terminated earlier as provided for herein.

2. Definitions.

   a. "Past Images" shall mean photographs taken by and/or modified by PIC and/or Paul Picone for OSI or one of its subsidiaries and/or affiliates prior to the effective date of this Agreement.

   b. "Future Images" shall mean photographs taken by and/or modified by PIC and/or Paul Picone for OSI or one of its subsidiaries and/or affiliates during the term of this Agreement.

   c. "Images" shall mean Past Images and Future Images.

   d. "Use" shall mean and include, but not be limited to, copy, edit, modify, prepare derivative works, reproduce, transmit, display, broadcast, print, publish, use in connection with any media (including, but not limited to, advertising, packaging, promotional and collateral materials), and store in a database. "Use" shall, for the purposes of this Agreement, be given the greatest possible interpretation.

3. Photography Services.

   a. PIC shall provide the photography services set forth in Exhibit A attached hereto ("Photography Services") as OSI and/or as any of its affiliates and subsidiaries may reasonably request from time to time. In order to provide such services, PIC shall provide the services of Paul Picone, whose services shall be of the essence of this Agreement. Mr. Picone shall perform all of his services in a timely, professional, and workmanlike manner in

1

CONFIDENTIAL

OSI00075541

accordance with professional standards of care, quality and practice appropriate to the nature of the technical and professional services rendered hereunder.

b.  Photography Services shall be deemed "requested" by OSI upon receipt by PIC of a purchase order referencing an estimate issued by PIC in accordance with Section 12 below.

c.  For the Photography Services set forth in sub-section a above, the "day rate" professional fee for in-studio photography shall be five thousand two hundred twenty United States dollars (US$5,220.00), the "day rate" professional fee for on-location photography shall be eight thousand one hundred United States dollars (US$8,100.00), and PIC's professional fees shall otherwise be as specified in Exhibit C attached hereto.  The professional fees set forth in this sub-section shall be adjusted annually during the term of this Agreement commensurate with any change in the United States Consumer Price Index effective since the latter of the commencement of this Agreement or the last fee adjustment.

d.  PIC may, at its option, quote or estimate and then charge or invoice a lower "day rate" for any prospective Photography Services contemplated in sub-section a above.  In the case where requested Photography Services will require substantially less than a full day, the professional fee shall be a reasonable pro rata portion of the day rates specified in sub-section c above.  Any such lower "day rate" or pro rata rate shall not alter any of the respective rights and obligations of the parties pursuant to this Agreement other than to supersede (for the quote, estimate, charge and invoice) the rates set forth in sub-section c above.

e.  PIC may, with the express prior written approval of OSI, substitute another photographer to perform Photography Services in lieu of Mr. Picone subject to such person being of reasonably comparable skill and such person agreeing in writing to be bound by the provisions of this Agreement to the extent this Agreement calls for his/her personal services and/or deals with rights and/or obligations he/she may have personally.  OSI may not, however, require PIC to substitute another photographer.  In the case where a substitute photographer provides the Photography Services, the rates shall be as agreed to by the parties in writing.

f.  Within a reasonable time after the completion of requested Photography Services, PIC shall provide OSI with proofs (as that term is commonly used with respect to photographs) of the photographs taken.

4.  Image Management Services.  PIC shall provide the following "Image Management Services" for OSI.

a.  PIC shall maintain a filing system and/or database for Past Images (to the extent PIC has such Past Images in its custody or control at the time of its execution of this Agreement) and all Future Images that enables PIC to reasonably retrieve and provide a particular Image that OSI might reasonably request.   PIC shall use its best efforts to maintain and back up this database, but takes no responsibility for unusual circumstances or acts of God that may result in loss of data.

b.  PIC shall provide OSI with "camera-ready," post-production Images as OSI and/or as any of its affiliates and subsidiaries may reasonably request from time to time.  PIC need not provide raw images to OSI.

2

OSI00075542

PIC-0147-0002

c. Upon reasonable request by OSI or its designee, PIC shall retrieve particular Images from the filing systems and/or database described in sub-section a above and PIC shall provide such retrieved Images to OSI or its designee in a suitable format for such Use as OSI may reasonably require.

d. PIC shall provide OSI, as OSI may reasonably request from time to time, with the image services set forth in Exhibit B attached hereto. The prices for the image services set forth in Exhibit B shall be as set forth in Exhibit C attached hereto and such prices shall be adjusted annually during the term of this Agreement commensurate with any change in the United States Consumer Price Index effective since the latter of the commencement of this Agreement or the last price adjustment. OSI acknowledges that Exhibit C contains information highly confidential to PIC and will not disclose Exhibit B outside of OSI. Within OSI, access to Exhibit C shall be restricted to the OSI Legal and Intellectual Property Departments, OSI auditors, the OSI Purchasing Department, the OSI Finance and Accounting Departments, the OSI Brand Management & Marketing Communications Department, the marketing departments and groups of the various OSI and Osram Sylvania Products, Inc. business units, and the OSI Packaging Department, unless written permission from PIC is obtained to share Exhibit C with others.

e. OSI shall maintain an FTP site to enable PIC to deliver Images to OSI in electronic form. PIC shall not charge OSI for maintaining its own FTP site for the delivery of Images to OSI.

f. For digital imaging requests. OSI shall use the form Formatting Request for Digital Imaging as set forth in Exhibit D attached hereto.

g. PIC shall have no obligation to provide Image Management Service with respect to photographs provided by photographers other than PIC.

5. <u>Release Fee</u>. As partial consideration for the release set forth in Section 19 below, OSI shall pay PIC fifty thousand United States dollars (US$50,000.00) within five (5) business days of the complete execution of this Agreement. This payment shall be non-refundable.

6. <u>Retainer</u>.

a. Beginning in June 2006 and continuing during the term of this Agreement, OSI shall pay PIC a non-refundable monthly retainer as an advance against PIC's fees and expenses for Photography Services and Image Management Services.

b. The monthly retainer shall be fifty thousand United States dollars (US$50,000.00) during the first year of the Agreement, and shall be adjusted yearly during the term of the Agreement commensurate with any change in the United States Consumer Price Index effective since the latter of the commencement of this Agreement or the last fee adjustment.

c. The retainer for June 2006 shall be paid on or before 30 June 2006 and thereafter the monthly retainer shall be paid on or before the fifteenth (15th) day of each calendar month during the term of this Agreement.

d. OSI shall offset one hundred percent (100%) of invoiced Photography Services and Image Management Service fees due by the retainer payments made pursuant to this Section 6 and OSI shall offset fifty percent (50%) of invoiced expenses due by the retainer payments made pursuant to this Section 6 (collectively, "Amounts To Be Offset"). The fifty

3

percent (50%) of invoiced expenses that are not offset by the retainer payments ("Non-Offset Expenses") shall be paid by OSI to PIC within sixty (60) days of the close of the month in which PIC's invoice is received by OSI. In the event the Amounts To Be Offset for a given month exceed the positive retainer balance, the excess ("Excess Amount") shall be paid by OSI to PIC within sixty (60) days of the close of the month in which PIC's invoice is received by OSI. By way of illustration, if PIC's invoices for a given month total $40,000 for Photography Services and Image Management Services and $30,000 for expenses, the Amount To Be Offset for that month is $55,000 (i.e., $40,000 plus 50% of $30,000) and the Non-Offset Expenses are $15,000. If the positive retainer balance is $50,000, then the Excess Amount would be $5,000. In such scenario, OSI would pay to PIC the $5,000 Excess Amount and the $15,000 Non-Offset Expenses within 60 days of the close of the month in question. OSI may apply unused retainer amounts from the subsequent months to cover payment of any Excess Amount but not any Non-Offset Expenses.

e. OSI's requests for Photography Services shall be commercially reasonable, including satisfying the conditions of sub-section k of Section 10 below. OSI shall not justify requests for Photography Services as reasonable by the presence of a positive retainer balance.

f. In the event a positive balance of retainer payments remains upon the termination or completion of this Agreement, for six (6) months after the completion or termination of this Agreement, OSI may reasonably request PIC to provide Photography Services and Image Management Services, PIC shall perform such services, and the positive retainer balance may be used to offset one hundred percent of fees and expenses invoiced by PIC, until exhausted or the time to use such positive retainer balance expires. Six (6) months after the completion or termination of this Agreement any positive balance of retainer payments shall vest with PIC, PIC shall not be obligated to provide any further Photography Services or Image Management Services for OSI, and the remaining positive retainer balance shall not be refundable to OSI.

7. <u>Royalty</u>. For future Use of Past Images and Future Images, OSI shall pay PIC a non-refundable royalty of three million United States dollars (US$3,000,000.00) in forty eight (48) monthly installments of sixty two thousand five hundred dollars (US$62,500.00), each installment to be paid on or before the fifteenth (15th) day of each calendar month beginning in October 2006 until such royalty is paid in full. A breach of any section of this Agreement, other than Section 19, by PIC shall not relieve OSI of the obligation to make or to continue to make payments pursuant to this Section 7. Any amounts owed by PIC to OSI for any reason shall not offset the payments due pursuant to this Section 7. Rights OSI may have or that may arise pursuant to Sections 21 or 22 of this Agreement shall not relieve OSI of the obligation to make or to continue to make payments pursuant to this Section 7.

8. <u>Ownership</u>. PIC shall retain ownership of all Past Images and the copyrights thereto, PIC shall be the owner of all Future Images and the copyrights thereto, and PIC shall retain ownership of all Future Images and the copyrights thereto.

9. <u>License</u>. In consideration of the royalty payment set forth in Section 7 above, PIC (and, to any extent necessary, Paul Picone) hereby grants OSI a non-exclusive, worldwide license in and to all the Images and the copyrights thereto to freely Use, sub-license Use, and permit Use, in its sole and absolute discretion, in perpetuity, anywhere in the world. Notwithstanding the foregoing, OSI may not sub-license Images in exchange for valuable consideration such as a fee (e.g., as stock photography). PIC and Paul Picone shall not grant any rights that would be, or might be, inconsistent with the rights granted in this Section. PIC and Paul Picone may (i)

4

CONFIDENTIAL

Use the Images and (ii) grant licenses in the Images (and the corresponding copyrights in those Images) to entities other than OSI, so long as the conditions of this Section 9, and the remainder of this Agreement, are respected.

10.  Service Conditions.

a.  PIC and Paul Picone shall be known as OSI's "Photographer Of Record" and PIC and Paul Picone may advertise, publicize and otherwise hold themselves out as such.  The designation "Photographer Of Record"  provided for in this sub-section is honorary and not intended to convey any right or entitlement or impose any obligation on either party beyond that specifically provided for in this Agreement.

b.  To the extent reasonably possible and practical, OSI shall, as may be reasonable and practical with respect to size, prominence, aesthetics, and Use, include a copyright notice indicating PIC as the copyright owner and/or include proper attribution indicating Paul Picone as the photographer for Images Used by OSI.  More specifically, by way of example:

i.  OSI shall have no obligation to include such copyright notice and/or attribution for Images appearing on packaging, point of purchase displays or the like;

ii.  OSI shall include such copyright notice and/or attribution on Images framed for display;

iii.  OSI shall include such copyright notice and/or attribution as a footnote or end note for Images appearing in materials such as annual reports; and,

iv.  OSI shall include such copyright notice and/or attribution as a side note or footnote for Images appearing in published advertisements.

c.  OSI shall permit PIC to submit an estimate on any and all photography services OSI may require where such photography services will likely exceed ten thousand United States dollars (US$10,000.00) in fees for services and licensing, not including expenses.

d.  OSI may, in its sole and absolute discretion, use and obtain photography services (including but not limited to services that are the same as the Photography Services) and image management services (including but not limited to services that are the same as the Image Management Services) provided by other entities including, but not limited to, its own employees, and OSI shall be free to inform third parties of its right to do so.

e.  PIC and Paul Picone may provide Photography Services and Image Management Services to other entities subject to PIC giving any and all of OSI's reasonable requests for services priority over the provision of services to such other entities.

f.  In the case where one or more persons not in the employ or control of OSI appear in an Image, unless otherwise agreed to by OSI and PIC in writing, PIC shall be responsible for obtaining appropriate permissions and/or releases.

g.  In the case where Photography Services require the purchase, lease or rental of specialized equipment or unusual or expensive materials not already owned by PIC, PIC shall provide OSI with sufficient notice and information to allow OSI to make a reasonable business judgment to proceed or not.

5

CONFIDENTIAL

OSI00075545

h.  PIC shall not knowingly Use, allow the Use, or license the Use of Images in any manner that would be detrimental to OSI or cause harm to OSI's reputation.

i.  PIC shall not Use, allow the Use, or license the Use of Images that show OSI employees or former employees without the express prior written consent of OSI, such consent not to be unreasonably withheld.

j.  PIC shall not Use, allow the Use, or license the Use of Images that show the inside of OSI research, development and/or manufacturing facilities without the express prior written consent of OSI, such consent not to be unreasonably withheld.

k.  "Reasonable requests" for Photography Services shall provide five (5) day lead time for in-studio services and ten (10) day lead time for on-location services.

l.  If, without PIC's written consent, OSI postpones or cancels any scheduled requested Photography Services, OSI shall pay PIC the percentage set out in the table below of the professional fees estimated by PIC for the postponed or canceled Photography Services:

| Notice days = X | Fee Percentage |
| --- | --- |
| X < 2 | 100% |
| 2 > X < 14 | 50% |
| 14 > X < 30 | 25% |
| X > 30 | 0% |

In any event, OSI shall pay all out-of-pocket expenses incurred by PIC in connection with postponed or canceled scheduled requested Photography Services.

m.  For on-location Photography Services postponed or canceled due to adverse weather conditions, OSI shall pay PIC fifty percent (50%) of the professional fees estimated by PIC for such postponed or canceled Photography Services plus any out-of-pocket expenses incurred.

n.  OSI is responsible for having its authorized representative present during all "shooting" and other appropriate phases of work that PIC performs for OSI to approve PIC's artistic interpretations.  If no OSI representative is present, then PIC's interpretations shall be accepted.  OSI shall pay one hundred percent (100%) of PIC's professional fees and charges for any re-shooting requested by OSI.

11.  <u>Photography Services Request</u>.  In order to provide accurate estimates for Photography Services, it is understood that PIC requires at least the following information from OSI: how much time will be required for the shoot, where the shoot will take place, the intended end uses of the photography, how many shots will be needed, what type of product or scene will be photographed, whether the product or scene will be ready to shoot or will require preparation (and if so how much preparation will be needed), and whether props will be needed.  A one-on-one discussion with the requisitioning individual will be required, and in many cases a one-on-one discussion with the product manager will also be necessary.

12.  <u>Estimates</u>.  OSI shall request estimates from PIC for specific Photography Services and PIC shall promptly provide such estimates.  Such estimates shall include the name of the OSI

6

requestor and the following elements in detail:  detailed description of, and if applicable estimated charges for, the Photography Services, duration of services, camera type(s), special equipment required, film type, props, wardrobe, make-up, casting, talent, crew charges, subcontractor charges, special requirements, travel expenses, amortization of equipment, PIC rental charges, rental charges, leasing charges, anticipated post production services, and any such other information OSI might reasonably require and as would be reasonably necessary for OSI to prepare an accurate and complete Purchase Order.

13.  Invoices.

a.  PIC shall issue separate invoices for Photography Services and Image Management Services.

b.  Invoices for Photography Services shall not exceed PIC estimates for such services by more than five percent (5%) unless (i) such excess was expressly approved in writing by OSI prior to incurring the charge, or (ii) such excess was caused by changes made at OSI's written request.

c.  Expenses other than those listed on Exhibit C attached hereto (e.g. travel expenses) shall be itemized in invoices and copies of invoices for expenses shall be attached thereto. Such expenses shall be passed on at cost with no premium added.

d.  Expenses associated with the operation, in connection with the rendering of Photography Services pursuant to this Agreement, of PIC owned or long term leased vehicles shall be charged to OSI at the federal mileage reimbursement rate, except for the following specialty vehicles, the expenses for which shall be charged at the rates set forth in this subsection: van or truck (including, for example, a Chevrolet Suburban) US$1.00 per mile; light trailer US$0.25 additional per mile; and, heavy trailer US$0.50 additional per mile.  The expense rates for the specialty vehicles set forth in this sub-section shall be adjusted annually during the term of this Agreement commensurate with any change in the United States Consumer Price Index effective since the latter of the commencement of this Agreement or the last fee adjustment.  PIC shall include in its estimates the vehicles expected to be used and the estimated round trip mileage.

e.  Invoices for Photographic Services and for Image Management Services shall be issued within thirty (30) days after completion of the work invoiced.

f.  All PIC invoices for Photography Services and Image Management Services shall be directed to the attention of the OSI Vice President of Brand Management & Marketing Communications.

g.  Invoices, to the extent not covered by a positive retainer balance, shall be due and payable sixty (60) days from receipt.

14.  Payment Instructions.  Payments to PIC pursuant to this Agreement shall be made in United States funds by check made out to PIC.

15.  Late Payment.  In the event that OSI fails to timely or completely make any payment provided for in, or pursuant to, this Agreement when due, interest at the prime rate (as published in the Wall Street Journal as of the date such payment is due) plus two (2)

7

percentage points per annum shall accrue on all past due and unpaid amounts until such amounts including interest are paid in full.

16.  Representation & Warranties.

a.  PIC represents and warrants that it presently owns the Past Images and the copyright in and to all Past Images.

b.  PIC represents and warrants that it has owned the Past Images and the copyright in and to all the Past Images for any claim released by PIC in accordance with Section 19 below.

c.  PIC represents and warrants that all the Past Images are original works.

d.  PIC represents and warrants that it has not granted any rights in and to the Past Images and/or the copyrights in and thereto that would be inconsistent with the rights granted to OSI under this Agreement.

e.  PIC represents and warrants that PIC shall own the copyright in and to the Future Images.

f.  PIC represents and warrants that the Future Images shall be original works.

g.  PIC represents and warrants that it will not grant any rights in and to the Future Images and/or the copyrights in and thereto that would be inconsistent with any of the rights granted to OSI under this Agreement.

h.  PIC represents and warrants that, to its knowledge at the time of execution of this Agreement, the Past Images do not infringe any copyright, trademark, privacy right, or publicity right of any third party.

i.  PIC represents and warrants that to its knowledge at the time a Future Image is created, such Future Image will not infringe any copyright, trademark, privacy right, or publicity right of any third party.

j.  PIC represents and warrants that, to its knowledge at the time of its execution of this Agreement, Past Images of products or scenes meant to illustrate the performance of products did in fact illustrate the performance of OSI products.

k.  PIC represents and warrants that, to its knowledge at the time of its execution of this Agreement, Past Images of products or scenes meant to illustrate OSI products, did in fact illustrate OSI products.

l.  PIC represents and warrants that to its knowledge at the time of the creation of Future Images, such Future Images of products or scenes meant to illustrate the performance of OSI products, will in fact illustrate the performance of OSI products.

m.  PIC represents and warrants that to its knowledge at the time of the creation of Future Images, such Future Images of products or scenes meant to illustrate OSI products will in fact illustrate OSI products.

17.  Moral Rights.

8

CONFIDENTIAL

OSI00075548

a.  In the event of a conflict between this Agreement and any statutory and/or common law moral rights, droit moral, and any rights granted under the Visual Artists Rights Act (17 U.S.C. §106A), this Agreement shall govern to the extent permitted by applicable law.

b.  Nothing in this Section 17 shall diminish any rights of PIC or Paul Picone or an obligation of OSI provided for pursuant to this Agreement.

18.  Enforcement.  In the event a third party infringes the copyright of any Image, PIC shall have the right, but not the obligation, to commence and prosecute a suit for such infringement and to pay the expenses thereof.  In such case, PIC shall retain any damages or settlement monies obtained via the suit.  If PIC elects not to file a suit for infringement in the event a third party infringes the copyright of any Image within sixty (60) days after being notified of such infringement, OSI shall have the right, to the extent possible under law, but not the obligation, to file and prosecute a suit for such infringement at its own expense.  In such case, OSI shall retain any damages or settlement monies obtained via the suit.  In the event either party initiates an action for infringement of an Image copyright by a third party, the parties agree to perform, at the initiating party's expense, whatever acts may be reasonably requested to enable such action to be brought and to cooperate in the prosecution thereof, including, but not limited to, being named a party in any such action.

19.  Release.

a.  In consideration of OSI continuing to do business with PIC as contemplated by this entire Agreement and the payment set forth in Section 5 above, PIC and Paul Picone, separately and collectively, on behalf of themselves and their officers, representatives, divisions, subsidiaries, heirs, successors, agents and assigns, hereby release, acquit and forever discharge OSI and its officers, representatives, divisions, subsidiaries, affiliates, successors, agents and assigns of and from any and all claims, costs, demands, debts, actions, causes of action, judgments, executions, liabilities, and obligations of every kind, matured and unmatured, now existing, or arising in the future out of currently existing known facts, of any kind or nature whatsoever, and other claims of every kind and nature whatsoever, whether in law or equity, contract or tort, liquidated or unliquidated, absolute or contingent, suspected or unsuspected, known or unknown, accrued or unaccrued and whether asserted or unasserted, that PIC and/or Paul Picone ever had as of their execution of this Agreement.

b.  As of the date of the execution of this Agreement, OSI represents and warrants that is unaware of any cause of action it may have against PIC and/or Paul Picone.

20.  No Admission.  The parties understand and agree that entering into this Agreement, the giving of consideration, the giving and accepting of the release set forth in Section 19 above and the provisions contained herein, shall not constitute or be construed as an admission of any liability whatsoever by the parties, or the admission of the validity of any claims made by or against any party hereto.

21.  Behavior.

a.  During the term of this Agreement, PIC and Paul Picone shall act at all times with due regard to public morals and conventions.  If either PIC and/or Paul Picone shall be convicted in a court of law of committing any act that is or shall be a reasonably substantial offense (under circumstances not engineered or arranged by OSI) involving moral turpitude under

9

Federal, state or local laws, or if OSI provides substantiated information that PIC and/or Paul Picone has committed any act which brings it or him into public disrepute, contempt, scandal or ridicule, which insults or offends the community, or which injures the success of OSI, any of OSI's products or services, or reflects unfavorably upon OSI's reputation, as decided by an outside, third-party arbitrator whose decision shall be final, then at the time of any such decision by a court or arbitrator, OSI shall have the right, in addition to its other legal and equitable remedies, including injunctive relief, and upon notice to PIC, to terminate the provisions of Sections 3, 6, and sub-sections a, c, and e of Section 10 of this Agreement (and only those Sections and sub-sections listed here) without further obligation to PIC or liability of OSI.  In the event that the provisions of Sections 3, 6, and subsections a, c, and e of Section 10 of this Agreement terminate pursuant to this sub-section, the remainder of this Agreement and more specifically, but not by way of limitation, the provisions of Sections 4, 5, 7, 8, 9, and subsections b, d, f, h, i, and j of Section 10 shall continue in full force and effect for the remainder of the term of this Agreement and or until the parties' respective rights and obligations are exhausted or met.

b.  During the term of this Agreement, PIC and Paul Picone shall have the right to request an investigation by OSI's legal department of any alleged harassment or other inappropriate behavior on the part of OSI employees toward PIC or Paul Picone.  If such allegations are substantiated, PIC and Paul Picone shall have the right not to work with any OSI employees responsible for such harassment or other inappropriate behavior.  Moreover, if an outside, third-party arbitrator finds that such harassment or other inappropriate behavior constitutes a hostile environment for PIC or Paul Picone:

    i.  PIC and/or Paul Picone shall not be considered in breach of this Agreement for their actions to avoid such hostile environment;

    ii.  PIC and/or Paul Picone shall be entitled to an award of damages as determined by the arbitrator, such damages compensating PIC and/or Paul Picone for losses directly attributable to such hostile environment; and,

    iii.  if OSI is unable or unwilling to remedy such hostile environment, then PIC and Paul Picone shall have the right to terminate their obligations under Sections 3 and 4 of this Agreement, while still receiving full payment of all retainer amounts pursuant to Section 6 of this Agreement for the full balance of the term of this Agreement as liquidated damages for such hostile environment.

c.  During the term of this Agreement, if an outside, third-party arbitrator finds that Paul Picone or any employee of PIC engages in harassment or other inappropriate behavior that constitutes a hostile environment for one or more employees of OSI who interact with PIC, and PIC is unable or unwilling to remedy such hostile environment, then OSI shall have the right to terminate the provisions of Sections 3, 6, and sub-sections a, c, and e of Section 10 of this Agreement without further liability or obligation of any kind.  In the event that the provisions of Sections 3, 6, and subsections a, c, and e of Section 10 of this Agreement terminate pursuant to sub-section a or b above, the remainder of this Agreement and more specifically, but not by way of limitation, the provisions of Sections 4, 5, 7, 8, 9, and subsections b, d  f, h, i, and j of Section 10 shall continue in full force and effect for the remainder of the term of this Agreement and or until the parties' respective rights and obligations are exhausted or met.

CONFIDENTIAL

OSI00075550

**PIC-0147-0010**

d.  Notwithstanding the foregoing, nothing in this Agreement shall be construed to restrict PIC's right to provide photography services and/or image management services to other entities in the event that the provisions of Sections 3, 6, and sub-sections a, c, and e of Section 10 terminate pursuant to this Section 21.

22.  Death Or Disability.

a.  In the event of the death of Paul Picone prior to the expiration or termination of this Agreement, the provisions of Sections 3, 6 and subsections a, c, e and g of Section 10 of this Agreement shall immediately terminate without further obligation or liability of OSI.

b.  If Paul Picone shall fail or be unable to fulfill his obligations hereunder due to illness, injury, or accident for a period longer than sixty (60) days, OSI may, in its sole and reasonable discretion, at any time thereafter, terminate the provisions of Sections 3, 6, and sub-sections a, c, and e of Section 10 of this Agreement without further liability or obligation of any kind.  PIC shall promptly provide notice to OSI of any condition that interferes with the ability of Paul Picone to fulfill his obligations hereunder.

c.  In the event that the provisions of Sections 3, 6, and sub-sections a, c, and e of Section 10 of this Agreement terminate pursuant to sub-section a or b above, the remainder of this Agreement and more specifically, but not by way of limitation, the provisions of Sections 4, 5, 7, 8, 9, and sub-sections b, d, e, f, h, i, and j of Section 10 shall continue in full force and effect for the remainder of the term of this Agreement and or until the parties respective rights and obligations are exhausted or met.

d.  Notwithstanding the foregoing, nothing in this Agreement shall be construed to restrict PIC's right to provide photography services and/or image management services to other entities in the event that the provisions of Sections 3, 6, and sub-sections a, c, and e of Section 10 of this Agreement terminate pursuant to sub-section a or b above.

23.  Irreparable Injury.  It is expressly understood and agreed that the services to be rendered by PIC and Paul Picone under the terms of this Agreement and the Photography Services and Image Management Service obligations undertaken by PIC under this Agreement are of a special, unique, unusual, extraordinary and intellectual character involving skill of a peculiar value, the loss of which cannot be reasonably or adequately compensated by damages in an action at law, and that a breach by PIC of any of the Photography Services and Image Management Service provisions contained in this Agreement will cause OSI irreparable injury and damage.  PIC hereby expressly agrees that OSI shall be entitled to injunctive and other equitable relief to prevent and/or cure any breach or threatened breach by PIC of the Photography Services and Image Management Service provisions contained in this Agreement.

24.  Confidentiality.

a.  Acknowledgment.  In connection with the activities contemplated by this Agreement, PIC and Paul Picone acknowledge that they may learn of or be exposed to OSI confidential information.

b.  Definition.  Confidential information includes, but is not limited to, this Agreement, the terms of this Agreement, information relating to the intellectual property and business practices of OSI, whether or not reduced to writing or other tangible medium of expression, whether or not patented, patentable, capable of trade secret protection, or protected as an

11

unpublished or published work under the United States Copyright Act of 1976 as amended. Confidential information also includes comparable information that a party may receive or has received from others with whom it does business. Intellectual property includes information relating to research and development, inventions, discoveries, improvements, methods and processes, know-how, algorithms, compositions, works, concepts, designs, ideas, prototypes, models, samples, writings, notes, and patent applications. Business practices includes information relating to intellectual property, business plans, financial information, products, services, manufacturing processes and methods, costs, sources of supply, strategic marketing plans, advertising plans, customer lists, sales, profits, pricing methods, personnel, and business relationships.

c. Exceptions.  Confidential information does not include information which (i) is or becomes generally available to the public other than as a result of a breach of this Agreement, (ii) is already known to PIC or Paul Picone from a source other than OSI or one of its affiliates prior to the execution of this Agreement, (iii) is furnished by a third party who is lawfully in possession of such information and who lawfully conveys that information to PIC and/or Paul Picone, or (iv) is subsequently developed by PIC and/or Paul Picone independently of the information received from OSI.

d. Treatment.  PIC shall take steps to protect OSI's confidential information and it shall not (i) use, (ii) disclose, (iii) copy or (iv) allow access to OSI confidential information except in the normal and proper course of performing pursuant to this Agreement.  Notwithstanding the foregoing, PIC may disclose OSI confidential information responsive to a request by a government agency in connection with an investigation, in response to a litigation discovery request, and in response to a subpoena, subject to prompt notice to OSI and reasonable efforts and cooperation in making such disclosure subject to a protective order or on a confidential basis.

e. Return.  All OSI confidential information in tangible form and copies thereof shall be returned to OSI upon request.

f. Confidentiality Term.  PIC acknowledges and agrees that its obligations with regard to OSI confidential information shall continue until such time as one of the exceptions identified in sub-section (c) above applies to the subject matter in question.

g. Previous Disclosures.  Confidential information previously disclosed by OSI to PIC shall be considered OSI confidential information, as defined in this Agreement, and the protections of this Section shall apply to such information and materials, subject to the exceptions set forth in sub-section (c) above.  Any prior agreement to the contrary is in all respects hereby superseded by the provisions of this Section of this Agreement, and such prior agreements and acknowledgements shall be considered void.  The lack of a prior agreement concerning confidentiality is in all respects superseded by the provisions of this Section of this Agreement.

h. Images Containing Confidential Information.  PIC acknowledges that Past Images and Future Images may contain OSI confidential information.  By way of example, Images containing OSI confidential information may include Images of new products not yet publicly announced or available, Images of research and development operations, and Images of manufacturing operations.  PIC shall not Use, allow the Use, or license the Use of Images containing OSI confidential information without the express prior written consent of OSI, such consent not to be unreasonably withheld.

12

25. Employees. PIC shall require its employees to execute agreements in substantially the form of Exhibit E.

26. Subcontractors. PIC shall not use subcontractors to provide any of the services or fulfill any of its obligations under this Agreement unless it obtains the express prior written approval of OSI. PIC shall require any permitted subcontractors to execute agreements in substantially the form of Exhibit E.

27. Non-Competition. During the term of this Agreement and continuing for six (6) months from the expiration or termination of this Agreement, PIC and/or Paul Picone shall not provide photographic services of any kind to any third party that makes or sells products that compete with the products made and/or sold by OSI or its subsidiaries. The provisions of this Section 27 shall not apply in the case of a third party that makes or sells products that compete with OSI or a subsidiary of OSI where PIC and/or Paul Picone have provided photography services on a recurring basis for such third party before such products were made or sold by OSI or a subsidiary of OSI.

28. Independent Contractor. The parties are contracting with each other as independent contractors. The parties do not undertake by this Agreement, or otherwise, to perform any obligation of the other party. In no way is one party to be construed as an agent, or acting as an agent of the other in any respect.

29. Insurance. During the term of this Agreement, PIC shall at its own expense obtain and maintain in full force the following insurance coverage: (i) worker's compensation insurance with no less than the minimum limits required by law; (ii) employer's liability insurance, with a minimum limit of $1 000,000 per occurrence; and (iii) commercial general liability insurance, with a minimum limit of $2,000,000 per occurrence and $4,000,000. Such commercial general liability policies shall (i) include coverage for liability resulting from Premises/Operations, Products and Completed Operations, Blanket Contractual Liability (ii) name OSI as an additional insured; (iii) insure on an occurrence, and not a claims-made, basis; (iv) be issued by insurance companies which are reasonably acceptable to OSI; (v) be primary and contributory ; and (v) not cancelable unless thirty (30) days prior written notice shall have been given to OSI. PIC shall provide proof of such insurance to OSI prior to the supply of any services. The following language should appear in the "Description of Operations" section of the Certificate of Insurance: "The Certificate Holder, its employees, agents, parent, subsidiary and affiliated corporations are hereby added as additional insureds on each of the above policies. The Insured and its insurers hereby waive their right to subrogate against the named additional insureds."

30. Indemnification

a. With respect to claims against one or both parties by third parties and/or government agencies insofar as such claim, demand or action relates in any way to (a) a breach of this Agreement by PIC and/or Paul Picone or (b) an act or omission by PIC and/or Paul Picone, PIC shall defend, indemnify, and hold harmless OSI against any liability, cost, loss, or expense of any kind. OSI shall have the right to select and control legal counsel for the defense of any such claim, demand or action to the extent that the claim, demand or action is asserted against OSI, and for any negotiations relating to any such claim, demand or action; however. PIC shall have the right to approve any settlement of any such claim, demand or action to the extent that such settlement imposes any restrictions on PIC or

13

requires PIC to act in any way, such approval to not be unreasonably withheld.  Nothing in this provision shall restrict PIC in the selection and control of counsel to defend PIC against any such claim.  PIC and OSI shall cooperate to the extent reasonably possible and practical in the defense of any such claim asserted against PIC and/or OSI.

b.  With respect to claims against one or both parties by third parties and/or government agencies insofar as such claim, demand or action relates in any way to (a) a breach of this Agreement by OSI or (b) an act or omission by OSI, OSI shall defend, indemnify, and hold harmless PIC and Paul Picone against any liability, cost, loss, or expense of any kind.  OSI shall have the right to select and control legal counsel for the defense of any such claim, demand or action and for any negotiations relating to any such claim, demand or action; however, PIC shall have the right to approve any settlement of any such claim, demand or action to the extent that such settlement imposes any restrictions on PIC or requires PIC to act in any way, such approval to not be unreasonably withheld.

31.  Prior Obligations.  The parties each represent and warrant that entering into and performing under this Agreement does not conflict with any prior obligations to third parties.

32.  Taxes.  Each party shall be responsible for any income and other taxes required under applicable laws arising out of monies received by each of them pursuant to this Agreement.

33.  No Guarantees.  There are no guarantees whatsoever made by OSI as to the results PIC may obtain pursuant to this Agreement other than as expressly and specifically provided for in this Agreement.  PIC acknowledges that it has relied on no warranties, promise or statements other than those expressly set forth in this Agreement.

34.  Waiver Of Breach.  A breach of any provision of this Agreement may only be waived in writing and the waiver of such breach shall not operate or be construed as a waiver of any subsequent breach.

35.  Severability.  If any provision of this Agreement should, for any reason, be held invalid or unenforceable in any respect, the remainder of this Agreement shall be enforced to the full extent permitted by law.  A court of competent jurisdiction is hereby empowered to modify the invalid or unenforceable provision to make it valid and enforceable.

36.  Performance Excused.  The parties shall be excused from delays in performing or from any failure to perform hereunder to the extent that such delay or failure results from causes such as war or natural disaster or strike which are beyond the reasonable control of the party, provided that, in order to be excused from delay or failure to perform, the party must act diligently to remedy such delay or failure.

37.  Dispute Resolution.  If any dispute arises under this Agreement, the parties shall make a good faith effort to resolve the dispute before taking any action.  The parties shall meet to discuss the dispute no later than ten (10) days after either party gives written notice to the other party that such a dispute exists.  Such meeting may be held telephonically if travel is impractical for either party.  At such meeting, duly authorized representative of each party having authority to resolve the dispute shall be in attendance.  No action, suit, arbitration or other proceeding may be commenced before the parties have met pursuant to this Section, unless immediate injunctive relief is sought, in which case the noted meeting shall take place at the earliest opportunity after such immediate injunctive relief is sought.

14

38.  Arbitration.  All disputes between the parties hereto relating to this Agreement shall be determined solely and exclusively by arbitration in accordance with the rules then in effect of the American Arbitration Association pertaining to commercial arbitrations, or any successors thereto ("AAA").  The forum for arbitration shall be Essex County, Massachusetts.  The parties shall jointly select an arbitrator.  In the event the parties fail to agree upon an arbitrator within ten (10) days, then each party shall select an arbitrator and such arbitrators shall then select a third arbitrator to serve as the sole arbitrator; provided, that if either party, in such event, fails to select an arbitrator within seven (7) days, such arbitrator shall be selected by the AAA upon application of either party. Judgment upon the award of the agreed upon arbitrator or the so chosen third arbitrator, as the case may be, shall be binding on the parties and shall be entered by any court of competent jurisdiction.

39.  Prevailing Party.  If any legal action, arbitration, or other proceeding is brought for a breach of this Agreement or any of the warranties herein, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in bringing such action or proceeding, in addition to any other relief to which such party may be entitled.

40.  Assignment & Transfer.  OSI shall be free to assign this Agreement in connection with the sale of substantially all of its business and/or assets and/or in connection with the merger of OSI into its subsidiary Osram Sylvania Products, Inc., subject to the assignee in writing acknowledging this Agreement and agreeing to be bound to this Agreement; otherwise OSI shall not assign or transfer this Agreement without the express prior written consent of PIC, such consent not to be unreasonably withheld.  PIC shall not assign or transfer this Agreement without the express prior written consent of OSI.

41.  Bind & Benefit.  This Agreement shall bind and benefit the successors and assigns of the parties.  This Agreement shall bind the heirs of Paul Picone.

42.  Notice.  Under this Agreement, if one party is required to deliver something to the other, or give notice, such delivery and such notice shall be by next day courier (such as Federal Express, DHL, UPS or the like) addressed as set forth below or as may otherwise be agreed to in writing.  Notice shall be deemed given on the day of delivery.

| To OSI: | Vice President | To PIC: | Paul Picone |
|---------|----------------|---------|-------------|
| | Brand Management & | | Photographic Illustrators Corporation |
| | Marketing Communications | | 467 Sagamore Street |
| | Osram Sylvania, Inc. | | Hamilton, MA 01936 |
| | 100 Endicott Street | | |
| | Danvers, MA 01923 | | |

43.  Entire Agreement.  This Agreement contains the entire agreement between the parties as to the subject hereof.  This Agreement supersedes all prior oral and written agreements between the parties as to the subject hereof.  In particular, except for the particulars relating to describing the Photography Services, Image Management Services and the fees and expenses therefor in conformance with this Agreement, this Agreement supersedes the terms and conditions on any PIC estimate or PIC invoice for Past Images, for Future Images, for past photography services, for past image management services, for future Photography Services, and for future Image Management Services.  The text of this Agreement, Sections 1 through 47 shall supersede any conflicting text in the Exhibits to this Agreement. This Agreement may not be modified or amended except by writing signed by an officer of OSI and an officer or principal of PIC.

15

CONFIDENTIAL                                                                     OSI00075555

44. <u>Counsel Review</u>. Each party has had a full and complete opportunity to review this Agreement, and has been given the opportunity to have counsel review it. The parties agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement or any amendment or any exhibits thereof.

45. <u>Headings</u>. Headings in this Agreement are for the purpose of convenience only. They are not intended to be a material part of the Agreement, and in the event of any conflict between the heading and the text, the text shall govern.

46. <u>Counterparts</u>. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Any counterpart bearing an original signature on behalf of a party shall be deemed to be an original and shall be binding on that party.

47. <u>Governing Law</u>. This Agreement shall be governed by and interpreted in accordance with the laws of the Commonwealth of Massachusetts, United States of America. The parties consent to the jurisdiction of the state and federal courts located in the Commonwealth of Massachusetts for the purpose of enforcing the arbitration provision set forth in Section 38 above and any arbitration award made pursuant to Section 38 above.

IN WITNESS WHEREOF, this Agreement has been executed by the duly authorized representatives of the parties on the date(s) set forth below:

**OSRAM SYLVANIA, INC.**

Michael A. Colotti
Vice President

Date: 6/22/06

**PHOTOGRAPHIC ILLUSTRATORS CORPORATION**

Paul Kevin Picone
President

Date: 6/22/06

INSOFAR as this Agreement calls for my personal services and/or deals with rights and/or obligations that I may have personally, I, Paul Picone hereby acknowledge and agree to be bound by this Agreement.

PAUL KEVIN PICONE

Date: 6/22/06

16

CONFIDENTIAL

OSI00075556

PIC-0147-0016

## EXHIBIT A:  PHOTOGRAPHY SERVICES

Complete services from concept to output.

TRADITIONAL PHOTOGRAPHIC SERVICES

PIC offers full service original photography including film processing and printing.

We use only the finest 8x10, 4x5, 2 1/4, & 35mm cameras, film and lighting equipment.

A three-person, experienced crew is always available for in-studio and on-location, lighting, gaffing, staging, assisting, set building, design and direction.

Professional photography experience

Serving national/international clients since 1965, PIC has gained extensive experience in many areas of photography and design and has received numerous awards for excellence.  Many years of research in lighting filtration, color temperature and film types have resulted in an expertise in architectural lighting photography.

Expert in:
- Catalogs
  - Fashion
  - Food
  - Aerial photography
- Interior and Exterior architectural lighting
- Product
- Packaging
- Photojournalism
  - Sports Photography
  - Corporate Portraits
  - PR/Event Photography

Original digital photography

We have extensive expert knowledge and experience in the use of digital cameras and the application of related techniques and equipment.  We maintain several top-of-the-line cameras and stay abreast of the latest technological advancements.

Projects include the creation and production of:
- National Ads
- Tradeshow graphics and banners
- Illustration
  - Catalogs
  - Packaging

Services include:
- Model search and booking
- Make-up and styling
- Food/ Craft Services and entertainment capabilities
- Location search and access

17

- Lodging and travel arrangements
- Prop search and access
- Set and prop construction
- Product mock-ups
- Packaging and ad graphic comps
- Product preparation, repair, painting, wiring, etc.
- Shipping and receiving
- Courier and limousine
- FedEx / Freight forwarding pickup

Mobile capabilities

When on location, we travel with the equipment necessary to provide full photographic production.  We can:
- Provide large format/digital capabilities
- Download from media
- Process images on the Mac
- Display images
- Access Internet transmission
- Send and receive email
- Send and receive imagery
- Burn CDs and DVDs
- Send and receive FedEx
  - Maintain all equipment to studio standards

A complete set of photographic, lighting and gaffing equipment travels with us.  Our rigs consists of:
- Customized Travel Van
  - Heavy Utility Vehicle
  - 2 utility trailers to serve large or small productions
  - 110v power
  - GPS navigation system
  - Stereo CD sound system
  - Flat screen monitor with DVD
  - Mobile-powered generator
  - Complete mobile digital and traditional photographic capabilities

//
//

18

## EXHIBIT B:  IMAGE MANAGEMENT SERVICES

Digital processing

Full digital support for our traditional photography.  Services include:
- High-res scanning
- Color correction
    - Expert retouching and composite services
    - Image library cataloging, fulfillment services on over 8000 copyrighted images
- File and format conversion on all requested images

Output services include:
- CD ROM
- DVD
- Full line of high-res digital printing

Digital design and production

Our extensive capabilities in digital image making include:
- Expert processing in: Photoshop, Illustrator, InDesign, Quark, Acrobat
- Original digital photocomposition
- Original digital Illustration
- Web design

Graphic design and illustration

We offer a unique capability in the area of graphic design with both digital and traditional draftsmanship.

We also offer commercial printing service management.

Electronic Image file transfer.

19

CONFIDENTIAL

OSI00075559

## EXHIBIT C:  PRICE LIST

On this and the five following pages....

# Confidential PIC Price List for OSI

Please note: This price list is for internal use only as set forth in Paragraph 4(d) of the PIC-OSI Agreement dated June 1, 2006.

### PROFESSIONAL FEES

As set forth in Paragraph 5(e) of the PIC-OSI Agreement dated June 1, 2006, PIC's Day Rates are subject to adjustment based on the Consumer Price Index.

**Day Rates:**

| | |
|---|---|
| Paul Picone's In-Studio Day Rate | $5,220.00 |
| Paul Picone's On-Location Day Rate | $8,100.00 |

> Note: the above day rates are based on an 8-hour workday.  Overtime rates are 2-x the pro rata hourly rate.  Travel rate for Paul Picone is ½ the pro rata hourly rate.

| | |
|---|---|
| Assistant On-Location Rate: | 2-x hourly in-studio rate per hour on shoot |
| Assistant Night and Weekend Rate: | 4-x hourly in-studio rate per hour on shoot |
| Assistant Travel Rate: | 1-x hourly in-studio rate per hour on the road |

**Rush Fees:**

Turnaround: Production times are estimated on job-by-job basis.  Five (5) days' notice is expected for in-studio services, and ten (10) days' notice is expected for on-location services.  Service cannot be guaranteed if less notice is provided.  Where service can be provided, the following rush charges may be applied at PIC's discretion.

| Days' Notice (X) | Rush Charges | |
|---|---|---|
| | In-Studio Services | On-Location Services |
| 10 days > X > 5 days | No rush charge | Add up to 100% |
| 5 days ≥ X > 48 hours | Add up to 100% | Add up to 200% |
| 48 hours ≥ X > 24 hours | Add up to 200% | Add up to 300% |
| X ≤ 24 hours | Add up to 300% | Add up to 300% |

20

## Confidential PIC Price List for OSI (page 2)

### IMAGE SERVICES

As set forth in Paragraph 4(d) of the PIC-OSI Agreement dated June 1, 2006, PIC's prices for the following image services are subject to adjustment based on the Consumer Price Index.

### File Uploads

File coding and upload of final camera-ready images to database:   $100 per image

### File Retrievals

| | |
|---|---|
| File Retrieval from Digital Directory: | $45 per image * |
| File Retrieval from Chrome Directory: | $75 per image |
| File Retrieval from Archives: | $85 per image |

* File retrieval prices are based on receiving complete and correct product and/or photo identification/description (including NAED codes). Additional charges will be assessed for incomplete and/or incorrect information. Does not include: Formatting, Sizing and Download.

Normal turnaround time is 4 days.  Additional time may be required for quantities over 10.

### File Conversions with Download to Media or Transfer via E-Mail

Conversion of TIFF files from Directory at 450ppi to any other format or resolution, with download to specified media (or transfer via e-mail or FTP site):

| | |
|---|---|
| 4 x 5 file: | $65 per image + download time for large files. |
| FTP Transfer | $55 per file + $3 per Mb. |

### Illustrator Files

Charge for each Illustrator file is $55

Normal turnaround time is 5 days.

21

CONFIDENTIAL
OSI00075561

**PIC-0147-0021**

## Confidential PIC Price List for OSI (page 3)

### MATERIALS AND RELATED COSTS

PIC's prices for the following materials and related costs may be subject to commercially reasonable adjustments based on market factors, and are not limited to adjustment based on the Consumer Price Index.

### Film

| | | | |
|---|---|---|---|
| 4 x 5 Polaroid's: | $18.00 / each | 2 1/4 Polaroid's: | $22.00 / each |
| 4 x 5 E-6 or C-41: | $22.00 / each | 120 mm film: | $69.00 / roll |
| 8 x 10 Polaroid's: | $56.00 / each | 35 mm film: | $48.00 / roll |
| 8 x 10 E-6 or C-41: | $75.00 / each | | |

### Backgrounds (VARITONE)

| | |
|---|---|
| Medium Background: | $240.00 |
| Large Background: | $480.00 |

### 8 Color Ink Jet Prints

Prints are quoted on a per-job basis and will depend on size, quantity and turnaround time required. Starting prices for smaller quantity jobs with normal turnaround are:

| Size | First | 2 - 10 | Additional |
|---|---|---|---|
| 8 x 10 | $35.00 | $22.00 | Quote |
| 8.5 x 11 | $38.00 | $25.00 | Quote |
| 11 x 14 | $69.00 | $49.00 | Quote |

Normal turnaround time is 4 days. Additional time may be required for quantities over 100.

### 4 x 5 Color Internegative

Charge for each 4 x 5 color internegative is $125.00.

Normal turnaround time is 4 days.

CONFIDENTIAL

OSI00075562

**PIC-0147-0022**

## Confidential PIC Price List for OSI (page 4)

### MATERIALS AND RELATED COSTS (continued)

#### 4 x 5 Reproduction-Grade Duplicate Transparencies

| Original | First | Additional |
|----------|-------|------------|
| 4 x 5 | $   95.00 | $62.50 |
| 8 x 10 | $ 125.00 | $77.50 |

Normal turnaround time is 5 days.  Additional time may be required for quantities over 10.

#### Reproduction Grade Duplicate 35mm Slides

| Original | First | Additional (2-10) | Additional (11 & up) |
|----------|-------|-------------------|----------------------|
| 35mm | $18.70 | $4.50 | Quote |
| From: 4 x 5, TX | $22.00 | $4.50 | Quote |
| From: 8 x 10, TX. | $35.00 | $4.50 | Quote |

Normal turnaround time is 5 days.  Additional time may be required for quantities over 200.

#### Media

| CD Rom | DVD | Floppy Disk | Jaz Disk (2GB) |
|--------|-----|-------------|----------------|
| $35.00 | $40.00 | $20.00 | $300.00 |

Normal turnaround time is 5 days.  Additional time may be required for quantities over 10.

#### Labels

Slide Labels (without application)        $ .45 per label
Slide Label Applications                      $ .35 per label

23

CONFIDENTIAL

OSI00075563

**PIC-0147-0023**

## Confidential PIC Price List for OSI (page 5)

### MATERIALS AND RELATED COSTS (continued)

#### Glassless Digital Scans

Originals are scanned using a Duoscan T2500 scanner. Scanning prices include basic cleaning of dust and scratches, sharpening, color correction, and storage in our digital directory and can be saved in the following formats:

For MAC:    TIFF, EPS, PDF, PICT, PSD, and JPEG
For PC:      TIFF, EPS, PDF, PSD, and JPEG

**Note: a Digital Formatting Request Form must accompany EVERY request for digital images.**

| Original | Up to 450ppi at 110% | Higher Resolution/Size |
|----------|----------------------|------------------------|
| 35mm     | $60.00               | Prices based on final image size |
| 2 1/4    | $70.00               | Prices based on final image size |
| 4 x 5    | $125.00              | Prices based on final image size |
| 8 x 10   | $175.00              | Prices based on final image size |

Normal turnaround time is 5 days. Additional time may be required for quantities over 5.

#### RUSH CHARGES

The above image services and materials and related costs may be subject to rush charges if service is requested substantially faster than the normal turnaround times set forth. In such circumstances, the following rush charges may be applied at PIC's discretion:

Service within 48 hours:   Add up to 100%
Next-day Service:          Add up to 200%
Same-day Service:          Add up to 300%

24

OSI00075564

**PIC-0147-0024**

## Confidential PIC Price List for OSI (page 6)

### VEHICLES

Regarding vehicles, Paragraph 13(d) of the PIC-OSI Agreement dated June 1, 2006 is reproduced here for convenience:

Expenses associated with the operation, in connection with the rendering of Photography Services pursuant to this Agreement, of PIC owned or long term leased vehicles shall be charged to OSI at the federal mileage reimbursement rate, except for the following specialty vehicles, the expenses for which shall be charged at the rates set forth in this subsection: van or truck (including, for example, a Chevrolet Suburban) US$1.00 per mile, light trailer US$0.25 additional per mile; and, heavy trailer US$0.50 additional per mile. The expense rates for the specialty vehicles set forth in this sub-section shall be adjusted annually during the term of this Agreement commensurate with any change in the United States Consumer Price Index effective since the latter of the commencement of this Agreement or the last fee adjustment. PIC shall include in its estimates the vehicles expected to be used and the estimated round trip mileage.

### NOTES

**Note:** Turnaround times begin once ALL requirements have been received. Requests received after 2:00pm are logged in on the following business day.

**Note:** There will be a fee assessed based on time required each time PIC is required to contact anyone (rep, client, other vendor, etc.), via phone or e-mail, for information or requirements not received from the requestor (including complete digital specs). To avoid this charge, please be sure to provide all information necessary to complete your request.

**Note:** Film and images produced by PIC (and copyrights therein) are the sole property of PIC. PIC should produce all duplicate images / duplicate digital files requested by client.

25

OSI00075565

**PIC-0147-0025**

**EXHIBIT D:  FORMATTING REQUEST FOR DIGITAL IMAGING**

---

## Photographic Illustrators, Corp.

Phone: 978-356-0101      Fax: 978-356-1203      e-mail: picorp@comcast.net

### Formatting Request for Digital Imaging

All digital scans have limits as to their application. High-resolution scans provided by PI Corp., have a maximum resolution of 600 dpi @ 8X10. For high-resolution reproduction, we recommend rescanning from original transparencies. Original digital imaging has intrinsic limitations, which may render a lower quality image.

Image(s) Due: _____

*Please indicate your formatting requirements below.  (Answer ALL questions)*

Please provide our PhotoShop      And Fed-X to the following address:
image(s) to be used on a:                _____

                                   _____

    MAC                              _____
    PC                                _____

                     Phone: _____

If sending via the Internet, e-mail or ftp. Address is: _____
*Important: Files transferred via the Internet have certain size and quality limitations.*

Provide on the following media:          We would prefer the mode to be:
                                   *(If none is specified, we will provide RGB)*
    CD ROM  (600 MB)                    RGB
    DVD  (4.7 GB)                          CMYK

Use the following format:

    TIFF          PDF          PhotoShop PSD          JPEG
    EPS          PICT    *(MAC only)*BMP    *(PC only)*

## Resolution required: _____ dpi (72 – 600)   Final image size required: _____

Describe any cropping required: _____

Please indicate what you will be using the images for:

    ·  Internet          · Low  Resolution Literature      ·  FPO *(for position only)*
    ·  Newsprint Flyer  *Tradeshow Graphic Panel        * Banner
    * High Resolution Literature                Other; please describe:

---

    '  <u>**Note:**</u>  *High resolution digital images for these items require at least 3 days.*

26

## EXHIBIT E

### EMPLOYEE/SUBCONTRACTOR AGREEMENT

This is an Employee/Subcontractor Agreement ("Agreement") by and between Photographic Illustrators Corporation ("PIC") and the PIC employee or PIC sub-contractor identified below (hereinafter "Confidant"). Osram Sylvania, Inc., and Osram Sylvania Products, Inc. and their affiliates (collectively "OSI") is a third party beneficiary of this Agreement.

WHEREAS Confidant is an employee or subcontractor of PIC in connection with PIC performing photography and image management services (collectively the "photography services") for OSI

NOW THEREFORE, in consideration of the above circumstances, the parties agree as follows

1.  Confidentiality.  In connection with performing the photography services, Confidant acknowledges that he/she may directly or indirectly receive, learn of, or be exposed to OSI confidential information

OSI confidential information includes, but is not limited to, information relating to the intellectual property and business practices of OSI, whether or not reduced to writing or other tangible medium of expression, whether or not patented, patentable, capable of trade secret protection, or protected as an unpublished or published work under the United States Copyright Act of 1976 as amended. Confidential information also includes comparable information that OSI may receive or has received from others with whom it does business.  Intellectual property includes information relating to research and development, inventions, discoveries, improvements, methods and processes, know-how, algorithms, compositions, works, concepts, designs, ideas, prototypes, models, samples, writings, notes, and patent applications.  Business practices includes information relating to intellectual property, business plans, financial information, products, services, manufacturing processes and methods, costs, sources of supply, marketing plans, advertising plans, customer lists, sales, profits, pricing, personnel, and business relationships.

OSI confidential information does not include information which (i) is or becomes generally available to the public other than as a result of a breach of this Agreement, (ii) is already known to Confidant from a source other than OSI or one of its affiliates prior to the execution of this Agreement, (iii) is furnished by a third party who is lawfully in possession of such information and who lawfully conveys that information to Confidant, or (iv) is subsequently developed by Confidant independently of the information received from OSI. Confidant shall take steps to protect OSI's confidential information and it shall not (i) use, (ii) disclose, (iii) copy or (iv) allow access to OSI confidential information except in the normal and proper course of performing photography services for OSI as directed by PIC.

Confidant's obligations with regard to protecting OSI confidential information shall continue until such time as one of the exceptions identified above applies to the subject matter in question.

2.  Original Works.  Confidant represents and warrant that any photographs, illustrations, or other creative work performed in connection with the photography services for OSI shall be original works or derivative of PIC works.

3.  Ownership Of Intellectual Property.  All intellectual property conceived, made, created, developed or reduced to practice (whether alone or with others, whether or not during normal business hours and whether or not on the premises of one of the parties) in the course of performing photography services for OSI, shall be the property of PIC.  Such intellectual property shall be referred to hereinafter as subject intellectual property.

4.  Assignment.  Confidant hereby assigns and agrees to assign to PIC, or its designees, full right, title and interest in and to all subject intellectual property.  Confidant agrees that, during the term of this Agreement and subsequent to the completion or termination of this Agreement, he/she will, at PIC's request, execute all applications for statutory and will otherwise provide assistance (including but not limited to the execution and delivery of instruments of further assurance or confirmation) to assign subject intellectual property to PIC and to permit PIC to enforce its subject intellectual property rights.  Confidant agrees not to file any application for statutory intellectual property rights including but not limited to any application to register a copyright, relating to subject intellectual property.  All copyrightable works that Confidant creates shall, to the extent possible under law, be considered "works made for hire" as defined by the copyright laws of the United States.

5.  No Use Of OSI Name.  Confidant shall not, without the express prior written consent of OSI:  (a) use any OSI trademark or trade name; (b) disclose its relationship with OSI or the services he/she performs for OSI other than listing such relationship and services on a resume, curriculum vitae or portfolio and/or, (c) disclose or use on behalf of OSI any confidential information belonging to third parties unless written authorization from the party is obtained in form satisfactory to OSI.  Confidant represents and warrants that their actions with respect to OSI are not in conflict with any prior obligations to third parties.

6.  Event Of Breach.  Confidant acknowledges that were Confidant to breach the provisions of this Agreement, the harm to PIC and OSI would be irreparable.  Confidant therefore agrees that in the event of such a breach or threat of such a breach, PIC and OSI shall have, in addition to any other remedies available to them, the right to obtain preliminary injunctive relief against any such breach or threat of such breach.

7.  Entire Agreement.  This Agreement constitutes the entire agreement between the parties as to the subject hereof and there are no understandings or agreements related hereto other than those expressed herein.  This Agreement may be amended only by a written amendment executed by the parties.

8.  Governing Law.  This Agreement shall be governed and interpreted in accordance with the laws of the Commonwealth of Massachusetts, United States of America without regard to principles of conflict of laws.  The parties consent to the jurisdiction of the state and federal courts located in the Commonwealth of Massachusetts.

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed by their duly authorized representatives on the date(s) set forth below:

| CONFIDANT: | Parties | PHOTOGRAPHIC ILLUSTRATORS CORPORATION |
|---|---|---|
| | Signature | |
| | Printed Name | |
| | Title | |
| | Date | |

27

CONFIDENTIAL

OSI00075567

**PIC-0147-0027**