# EXHIBIT F

## AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| OSRAM SYLVANIA, INC., | |
| Claimant, | |
| *v.* | |
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION, | |
| Respondent/Counter/Claimant And Third-Party Claimant, | Case No. 01-16-0000-2652 |
| *v.* | |
| BROOK ELECTRICAL SUPPLY COMPANY; CAPITAL LIGHTING & SUPPLY, LLC d/b/a CAPITALTRISTATE; FACILITY SOLUTIONS GROUP, INC.; FROST ELECTRIC SUPPLY CO. d/b/a FROSTELECTRIC.COM; STUART C. IRBY COMPANY d/b/a IRBY.COM; McNAUGHTON-McKAY ELECTRIC CO.; And TRADE SERVICE CO., LLC, | |
| Third-Party Respondents. | |

## PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S
## <u>APPLICATION FOR AWARD OF ATTORNEYS' FEES AND COSTS</u>

## TABLE OF CONTENTS

INTRODUCTION AND SUMMARY .......................................................................... 1

DISCUSSION ................................................................................................................ 2

I.     PIC is entitled to $4,232,714.33 in attorneys' fees for prevailing on the parties'
contract claims. ..................................................................................................... 2

        A.    Under Massachusetts law, the contingent-fee agreement between PIC
and its counsel controls the award of fees against OSI, so long as the
fee is not unreasonable. .................................................................................. 2

        B.    PIC's contingent-fee agreement obligates PIC to pay 30 percent of all
"Litigation Proceeds"—including any award of costs and fees—less
certain "Litigation Expenses." ...................................................................... 5

        C.    The contingent fee that PIC agreed to pay is reasonable, and so should
be shifted in full to OSI under the 2006 License Agreement. ......................... 9

        D.    The reasonableness of the contingent fee is confirmed by comparing
the factors courts use in hourly-fee cases. ..................................................... 11

II.    PIC is entitled to an award of $2,108,316.46 in costs incurred in the arbitration............. 17

CONCLUSION ............................................................................................................. 21

## INTRODUCTION AND SUMMARY

In January 2016, Osram Sylvania, Inc. ("OSI") initiated this arbitration by filing a Demand for Arbitration against Photographic Illustrators Corporation ("PIC"). In April 2016, OSI answered and counterclaimed. On November 20, 2017, the arbitrator rendered a Partial Final Award (the "Award"). The arbitrator dismissed each of OSI's claims and awarded PIC $9,591,049.99 on its breach-of-contract counterclaims. Award at 86-87. The contract in issue is a license agreement by which PIC granted OSI a license to use certain photographs in which PIC holds the copyrights. *See* Ex. J-002 (the "2006 License Agreement"). As the arbitrator notes, "under ¶ 39 of the 2006 License Agreement, PIC is entitled to recover its reasonable attorneys' fees and costs incurred in bringing its breach-of-contract claims." Award at 85. PIC also is entitled to recover its fees and costs incurred in defending against "OSI's claims that PIC breached the implied covenant of good faith and fair dealing as to the 2006 License Agreement, and for a declaratory judgment regarding the parties' rights under the agreement." *Id*. "[T]he contract makes an award of fees mandatory." *Id*. The only remaining question with respect to attorneys' fees and costs, then, is in what amount they should be awarded.

The proper amount of the attorneys' fees depends on the interplay of two contracts: (1) the 2006 License Agreement between PIC and OSI; and (2) the contingent-fee agreement between PIC and its counsel, McKool Smith. That is because, under Massachusetts law, when the basis for fee shifting is a contract between the parties, "the question of what fees are owed 'is ultimately one of contract interpretation' and our primary obligation is simply to honor the agreement struck by the parties." *See AccuSoft Corp. v. Palo*, 237 F.3d 31, 61 (1st Cir. 2001) (quoting *MIF Realty L.P. v. Fineberg*, 989 F.Supp. 400, 402 (D. Mass. 1998)). Massachusetts courts have interpreted fee-shifting provisions like paragraph 39 of the 2006 License Agreement as contracts for indemnity, requiring the losing party to reimburse whatever fee the prevailing

party *actually incurs* in the case, including a contingent fee, provided that fee is reasonable. *See Northern Heel Corp. v. Compo Indus., Inc.*, 851 F.2d 456, 475-76 (1st Cir. 1988); *Winthrop Corp. v. Lowenthal*, 558 N.E.2d 1138, 1141 (Mass. Ct. App. 1990). The 30-percent contingent fee that PIC agreed to pay its counsel is undeniably reasonable under the circumstances. Therefore, PIC seeks reimbursement of the actual contingent fee that PIC owes McKool Smith.

Likewise, under Massachusetts law, the proper amount of costs is a matter of contract and, again, involves simply shifting PIC's actual costs to OSI provided the costs were reasonable. *See, e.g., WHTR Real Estate Ltd. P'ship v. Venture Distr., Inc.*, 825 N.E.2d 105, 111-12 (Mass. App. Ct. 2005). Under a cost-shifting provision like paragraph 39 of the 2006 License Agreement, an award of costs should not be limited to costs that would be "taxable" under Fed. R. Civ. P. 54(d), but should encompass all reasonable costs. *See Best Buy Stores v. Developers Diversified Realty Corp.*, No. 05-2310 (DSD/JJG), 2011 WL 1321391, at *10-11 (D. Minn. Feb. 1, 2011) (applying Massachusetts law). As all costs incurred by PIC, including consultant and expert-witness fees, were reasonable for this large, complex matter, all such costs should be borne by OSI pursuant to paragraph 39 of the 2006 License Agreement.

## DISCUSSION

I.  **PIC IS ENTITLED TO $4,232,714.33 IN ATTORNEYS' FEES FOR PREVAILING ON THE PARTIES' CONTRACT CLAIMS.**

   A.  **Under Massachusetts law, the contingent-fee agreement between PIC and its counsel controls the award of fees against OSI, so long as the fee is not unreasonable.**

Given the fee-shifting provision set forth in the 2006 License Agreement, Massachusetts law mandates that OSI reimburse PIC for its actual attorneys' fees, so long as that amount is not unreasonable. *See Northern Heel*, 851 F.2d at 475-76; *Winthrop*, 558 N.E.2d at 1141. In *Northern Heel*, the court explained that "[w]here the contract for employment of counsel provides a clear and workable formula for determining the amount of fees, the terms of the

2

agreement will usually control" a contractual fee-shifting award. *See* 851 F.2d at 475. Moreover, said the court, when the prevailing party agreed to pay its counsel a contingent fee, the contingent fee should provide the basis for a fee award "unless it is unreasonable under the circumstances." *Id*. The court explained that, "[i]n Massachusetts, when a fee award is sought pursuant to a provision of a pact between the lawyer's actual client and the client's litigation adversary, the agreement between the parties resembles a contract of indemnity and contemplates that the prevailing party will be reimbursed for his attorney's fees." *Id*. (internal quotation marks omitted).

Similarly, a Massachusetts court vacated an arbitral fee award under a contractual fee-shifting provision because the arbitrator calculated it using the lodestar method rather than looking to the prevailing party's one-third contingent-fee agreement. *See Winthrop*, 558 N.E.2d at 1141 & n.6. The parties' contract provided that, "in the event that any action or proceeding is brought in connection with the Agreement, the prevailing party therein shall be entitled to recover its costs and reasonable attorney's fees." *Id*. at 1139 (brackets and internal quotation marks omitted). Lowenthal, the prevailing party, submitted a fee application based on his counsel's "normal time charges," which totaled $33,881, but did not disclose the contingent-fee agreement. *Id*. The arbitrator awarded $35,400 in fees and costs. *Id*.

The superior court confirmed the award, and over a year after the judgment had been entered, Winthrop moved to vacate the judgment for fraud based upon Lowenthal's failure to disclose the contingent fee agreement. *Id*. at 1140. The damages awarded were $17,200, and one third of that amount would have yielded a fee of $5,733 if calculated under the contingent-fee agreement as opposed to the $33,881 lodestar. *Id*. at 1139. The court ultimately vacated the fee award that had been calculated under the lodestar method and ordered it recalculated in accordance with the one-third contingent-fee contract. *Id*. at 1143.

The court viewed the proper fee calculation as, in the first instance, a matter of interpreting the fee-shifting provision in the parties' contract. *Id*. at 1141; *accord AccuSoft Corp.*, 237 F.3d at 61. And in light of the provision's language and purpose, the court concluded that the parties intended for the fee award to cover the prevailing party's actual obligation to its counsel, "provided that such fees did not exceed an amount that was determined to be reasonable." *Winthrop*, 558 N.E.2d at 1141. Thus, said the court, "the contingent fee agreement, so long as the fee provided therein was reasonable, controlled the situation here." *Id*. at 1142.

The court distinguished case law in which attorneys' fees were based upon *statutory* fee-shifting provisions rather than *contractual* fee-shifting provisions:

> We emphasize that we are concerned in this case with a provision in a contract where the parties agreed to shift payment of legal fees to the losing party. *The decisions involving statutes that call for the shifting of payment of legal fees to the losing party are not applicable.* In those decisions, the legislative policies involved in the enactment of the statutes are of major importance, and those policies are not present where parties voluntarily agree to shift the payment.

*Id*. at 1141 n.6 (emphasis added).

Other jurisdictions agree that when the basis for fee shifting is contractual—not statutory—the award ordinarily should reimburse the prevailing party for its actual fees, including contingent fees. In *Johnson Controls, Inc. v. Edman Controls, Inc.*, for example, the court affirmed a one-third contingent-fee award under a contractual fee-shifting provision. *See* 712 F.3d 1021, 1027-28 (7th Cir. 2013). The court underscored "the distinction between attorney's fees shifted by statute and those shifted by contract," which unlike statutory awards, involve "the parties' *ex ante* private ordering." *Id*. at 1027. "There is less need to police the reasonableness of fees shifted pursuant to a contract," said the court, "because the parties to a contract expressly consent to and define the terms of the fee shifting." *Id*. It observed that "[i]f the parties do not want to pay an opposing party's contingent fee, they are free to write an

4

agreement under which the prevailing party will be obliged only to pay fees calculated in accordance with the lodestar method." *Id*.[1]

As in all these cases, the basis for the fee award to PIC is a contractual provision, paragraph 39 of the 2006 License Agreement. Paragraph 39 provides:

> Prevailing Party. If any legal action, arbitration, or other proceeding is brought for a breach of this Agreement or any of the warranties herein, the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in bringing such action or proceeding, in addition to any other relief to which such party may be entitled.

J-002 at J-002.0014, ¶ 39. This provision is virtually identical to the contractual fee-shifting provision in *Winthrop*, which the court said shifted the contingent fee that the prevailing party owed its counsel (*compare* "the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs" here, *with* "the prevailing party therein shall be entitled to recover its costs and reasonable attorney's fees" in *Winthrop*). As a matter of Massachusetts contract law, paragraph 39 should be given the same interpretation as the fee-shifting provision in *Winthrop*. *See* 558 N.E.2d at 1141-42. That is, the actual contingent fee that PIC owes under its contingent-fee agreement with McKool Smith should control the contractual award of fees against OSI, so long as that amount is not unreasonable. *See id.*

> **B.    PIC's contingent-fee agreement obligates PIC to pay 30 percent of all "Litigation Proceeds"—including any award of costs and fees—less certain "Litigation Expenses."**

PIC and its lead counsel in the arbitration, McKool Smith, executed a Retention Agreement setting forth the contingent fee that PIC agreed to pay for the representation (the "Fee

---

[1] *See also All-Ways Logistics, Inc. v. USA Truck, Inc.*, 583 F.3d 511, 520 (8th Cir. 2009) (affirming contractual fee award based on one-third contingent-fee agreement governed by Arkansas law); *Bernback v. Greco*, 69 F. App'x 98, 105 (3d Cir. 2003) (affirming contractual fee award based on 40-percent contingent-fee agreement and explaining that "[t]he District Court did not err in conforming the fee award to the fee agreement between Bernback and his counsel"); *3H Enters., Inc. v. Murray*, 994 F. Supp. 403, 405 (N.D.N.Y. 1998) (awarding contractual attorneys' fees approximating actual fee owed under one-third contingent-fee agreement governed by New York law, finding that there was no evidence that the fee was grossly disproportionate to what the prevailing party would have agreed to pay its counsel absent a fee-shifting provision).

Agreement"). *See generally* Declaration of Gary Cruciani ¶ 12 & Ex. A ("Cruciani Dec.") (submitted with this application).

The following definitions and provisions are relevant to the calculation of attorneys' fees under the Fee Agreement: Contingent Fee, Net Litigation Proceeds, Litigation Proceeds, and Litigation Expenses. *See id.*, Ex. A § 1.01.

The "Contingent Fee" is defined as "30% of Net Litigation Proceeds." *Id*.

"Net Litigation Proceeds" is defined as "Litigation Proceeds minus Litigation Expenses." *Id*.

"Litigation Proceeds" is defined to include "the full fair market value of all cash and non-cash consideration received or obtained by [PIC] or inuring to the benefit of [PIC]" from the arbitration. *Id*. Litigation Proceeds expressly includes, among other things, "sums relating to compensatory damages, exemplary or enhanced damages, *attorneys' fees*, pre-judgment interest, *costs* and post-judgment interest." *Id*. The Fee Agreement later reiterates that "[a]ll Court Awarded Fees and Costs recovered in any Litigation shall be treated as Litigation Proceeds and shall be subject to the same 30-percent contingent fee." *See id.* § 5.04.

"Litigation Expenses" is defined by listing a number of specific costs and "all other expenses reasonably incurred in the preparation for or prosecution of the Arbitration" except for "software analysis or computing costs incurred directly by [PIC] in connection with [PIC's] efforts to identify acts of copyright infringement." *Id*. § 1.01.

As the Fee Agreement requires PIC to pay Litigation Expenses up front, it entitles PIC to reimbursement of such expenses from any Litigation Proceeds before the contingent-fee percentage is applied and McKool Smith's fee calculated. *See id.* §§ 1.01, 5.02(a).

At a high level, and ignoring for a moment the important nuances of the Fee Agreement, PIC agreed to pay McKool Smith a 30-percent contingent fee. If one were simply to apply a 30-

percent contingent fee to the actual damages award of $9,591,049.99, that would equal $2,877,315.[2]

This simple calculation, however, ignores important aspects of the contingent fee agreed upon by PIC and McKool Smith. First, the Fee Agreement applies the contingent-fee percentage not only to actual damages, but to *all proceeds* from the arbitration (including any award of attorneys' fees and costs). *See* Cruciani Dec., Ex. A § 1.01 (definition of "Litigation Proceeds"), § 5.04. Second, the Fee Agreement provides that PIC is entitled to any unreimbursed expenses "off the top" and before McKool Smith receives any proceeds. *See id.* § 1.01 (definition of Contingent Fee and Net Litigation Proceeds) and § 5.02(a)(i). In sum, the Fee Agreement applies the contingent-fee percentage not to Litigation Proceeds, but rather to "*Net* Litigation Proceeds," which accounts for the above two factors.

As a result, the proper contingent-fee calculation under the Fee Agreement must account for, at a minimum, any award of costs in the arbitration, along with Litigation Expenses as defined by the Fee Agreement. One could write the formula: **((A + B) – C) \* 30% = F**, where A represents actual damages, B represents costs awarded in the arbitration, C represents Litigation Expenses, and F represents the resulting fee to which McKool Smith is entitled. Of these three variables that go into the calculation of the fee award (F), two are known: actual damages (A) which equals $9,591,049.99 and Litigation Expenses (C) which equals $1,824,443.92. *See* Fleeger Dec. ¶ 11. But the amount of costs that the arbitrator will *award* PIC (B) is unknown, although the amount of costs that PIC seeks to recover is known and is $2,108,316.46. *Id.* ¶ 4, *see infra*, Part II.

---

[2] $9,591,049.99 \* 30% = $2,877,315.00.

Thus, assuming that PIC is awarded full reimbursement of the actual costs it incurred in the arbitration (as requested below, *see infra*, Part II), this formula would produce a fee to counsel for prevailing on the contract claim in the amount of $2,962,476.76.[3]

Yet, the above fee calculation still ignores that the Fee Agreement expressly includes any award of *attorneys' fees* in the amount to which the contingent-fee percentage is applied. Thus, to calculate the actual fee mandated by the Fee Agreement, the formula requires a further adjustment to include attorneys' fees on both sides of the equation, resulting in the following: **((A + B + F) – C) * 30% = F**. In other words, attorneys' fees (F) now appear on both sides of the equation because, while the ultimate purpose of the exercise is to calculate a reasonable attorneys' fee, the fees are both an input into the formula as well as the output of the formula. Solving algebraically for (F) (so that it appears alone, and on only the right side of the formula) results in the following: **(A + B – C) / 2.333 = F**.[4] Assuming once again that PIC is awarded full reimbursement of the actual costs it incurred in the arbitration, this formula would produce a fee to counsel for prevailing on the contract claim in the amount of **$4,232,714.33**.[5] As the fee produced by this formula represents the fee that PIC will actually have to pay its counsel—and is

---

[3] ($9,591,049.99 + $2,108,316.46 – $1,824,443.92) * 30% = $2,962,476.76. Although Litigation Expenses is a constant ($1,824,443.92), attorneys' fees (F) would correspondingly decrease with any decrease in costs awarded in the arbitration. To make any adjustment for actual costs awarded, one would merely substitute that number for $2,108,316.46 in the above formula.

[4] The specific steps in solving for (F) are as follows:
- Divide each side of the formula by 30%, resulting in: A + B + F – C = F ÷ 30%
- F ÷ 30% can be rewritten as F * 3.333, resulting in: A + B + F – C = F * 3.333
- Subtract F from each side of the formula, resulting in: A + B – C = F * 2.333
- Divide both sides of the formula by 2.333 to isolate F, resulting in: (A + B – C) / 2.333 = F

[5] ($9,591,049.99 + $2,108,316.46 – $1,824,443.92) / 2.333 = $4,232,714.33. As previously noted, If PIC were awarded an amount less than its actual costs of $1,876,615.18, then the formula is easily adjusted by substituting the actual costs awarded for $2,108,316.46 in the formula.

reasonable for the reasons explained below—it is the amount that PIC seeks to have reimbursed by OSI consistent with Massachusetts law.[6]

### C.   The contingent fee that PIC agreed to pay is reasonable, and so should be shifted in full to OSI under the 2006 License Agreement.

The amount of fees produced by a strict application of the Fee Agreement is entirely reasonable under the circumstances. As set forth above, in contractual fee-shifting cases, the actual contingent fee that a prevailing plaintiff owes its counsel ordinarily controls a contractual fee award against the defendant. *See Northern Heel*, 851 F.2d at 475-76; *Winthrop*, 558 N.E.2d at 1141. The reasonableness of a contractual fee award warrants less judicial scrutiny than the reasonableness of a statutory fee award, as a contractual fee award does not implicate the policies underlying the statute. *See Winthrop*, 558 N.E.2d at 1141 n.6; *see also Johnson Controls*, 712 F.3d at 1027 (explaining that "[t]here is less need to police the reasonableness of fees shifted pursuant to a contract"); *Quint v. A.E. Staley Mfg. Co.*, 84 F. App'x 101, 102 (1st Cir. 2003) (observing that "unlike statutory fees, which normally are delimited to 'reasonable' compensation, fee awards predicated upon fee agreements privately negotiated between attorney and client are reviewed more deferentially" and reduced "only in those 'exceptional circumstances' where the fee assessed by counsel is 'unethically excessive'"). The admonition to evaluate fee awards using "strictly conservative principles" is inapplicable in the context of contractual fee shifting. *See Northern Heel*, 851 F.2d at 476.

---

[6] The only other potential complication with the fee calculation under the Fee Agreement is that the Award authorizes OSI to file an application for a discretionary award of fees under 17 U.S.C. § 505 because OSI prevailed on PIC's copyright claims. *See* Award at 87. Unlike PIC's mandatory entitlement to fees as the prevailing party under the contract, whether OSI may recover for prevailing on PIC's copyright claim is discretionary. As PIC intends to show in its reply to OSI's fee application, under the "objective-reasonableness" approach adopted by the United States Supreme Court, PIC's copyright claims were objectively reasonable and OSI should not recover any attorneys' fees. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1986 (2016). Although any such award would, as a practical matter, reduce the amount that PIC ultimately collects in the arbitration, it would not impact the fee calculation because it would constitute a "Client Lawsuit Obligation." *See* Cruciani Dec., Ex. A § 5.02(b). As such, any award of attorneys' fees to OSI would be solely the responsibility of PIC under the Fee Agreement and would not reduce Litigation Proceeds so as to impact the calculation of attorneys' fees owed by PIC to McKool Smith. *Id.*

Here, the question is whether PIC's 30-percent contingent fee is reasonable. There can be no dispute that a 30-percent contingent fee is reasonable. The fee that PIC and McKool Smith agreed upon in this matter is at the low end of the price range usually charged by plaintiffs' lawyers in complex commercial cases like this one. The 30-percent contingent fee not only is at the low end contingent fees usually charged by McKool Smith, but also is at the low end of contingent fees demanded by commercial litigators across the country for comparable matters, who commonly collect up to 40 percent of any recovery. *See* Cruciani Dec. ¶¶ 13-14. Numerous courts across the country have recognized that contingent fees usually range from 30 to 40 percent of any recovery in complex commercial matters. *See, e.g., Cook v. Rockwell Int'l Corp.*, No. 90-CV-00181-JLK, 2017 WL 5076498, at *2 & n.2 (D. Colo. Apr. 28, 2017) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis." (internal quotation marks omitted) (collecting cases)); *In re Remeron Direct Purchaser Antitrust Litig.*, No. CIV.03-0085 FSH, 2005 WL 3008808, at *16 (D.N.J. Nov. 9, 2005) (same); *Schwartz v. TXU Corp.*, No. 3:02-CV-2243-K, 2005 WL 3148350, at *31 (N.D. Tex. Nov. 8, 2005) ("In local, regional and national markets, complex commercial cases require a contingent fee between 30 and 40 percent of the gross recovery.").

It is no surprise, then, that Massachusetts courts have approved similar contingent fees as the basis for contractual fee shifting. In *Winthrop*, for example, the court ordered that an arbitral award of attorneys' fees be recalculated to reflect the prevailing plaintiff's one-third contingent-fee agreement with its counsel. *See* 558 N.E.2d at 1142-43. Similarly, in *Northern Heel*, the court affirmed an award in the amount requested by the plaintiff based on an "elaborate lodestar-cum-multiplier" methodology, but held that an even greater award based on the plaintiff's 25-percent contingent-fee agreement would have been reasonable—even though the fee agreement yielded *more than three times* the amount of counsel's base lodestar figure. *See* 851 F.2d at 476.

The contingent fee that PIC owes under the Fee Agreement is not rendered less reasonable—or out of line with the fees usually charged—because it includes the fee award in the amount to which the contingent percentage is applied. Rather, this is a common feature of contingent-fee agreements in complex commercial cases. *See* Cruciani Dec. ¶ 12. In fact, it is not uncommon for McKool Smith to enter into contingent fee agreements in which the law firm and client split the amount of the damages award, but any fees that are awarded pursuant to a contractual or statutory fee-shifting provision are allocated entirely to McKool Smith. *Id*. Had PIC and McKool Smith entered into such an agreement, they would have split the actual damages on a 70/30 basis, and McKool Smith would have received 100 percent of the attorneys' fees that were awarded. Instead, under the Fee Agreement actually entered into, the attorneys' fees that are awarded will also be split on a 70/30 basis.

Including the fee award as part of the recovery to which the contingent-fee applies is also a feature that the Massachusetts Supreme Court has expressly approved when, as here, the agreement spells it out unambiguously. *See Cambridge Tr. Co. v. Hanify & King Prof'l Corp.*, 721 N.E.2d 1, 6 (Mass. 1999). In any event, even when the amount produced by the Fee Agreement is compared to all *other* anticipated recoveries by PIC (*i.e.*, damages and requested costs, but not the requested fee award itself), it constitutes only 36.2 percent of the recovery.[7] This is still well within the 30- to 40-percent range usually charged in cases like this one.

### D. The reasonableness of the contingent fee is confirmed by comparing the factors courts use in hourly-fee cases.

In contingent-fee agreements, it is the agreement itself that is the focus in determining the reasonableness of the fee. *See Northern Heel*, 851 F.2d at 475 ("Where the contract for employment of counsel provides a clear and workable formula for determining the amount of

---

[7] $4,232,714.33 / ($9,591,049.99 + $2,108,316.46) = 36.2%.

fees, the terms of the agreement will usually control," and "the contingent fee should be enforced unless it is unreasonable under the circumstances."); *Winthrop*, 558 N.E.2d 1138 at 1142 ("[T]he contingent fee agreement, so long as the fee provided therein was reasonable, controlled the situation here.").

In cases that do not involve contingent-fee agreements, courts evaluate the reasonableness of a contractual fee award by, "consider[ing], inter alia, the ability and reputation of the attorney, the time spent, the prices usually charged, the amount of money or property affected by the controversy[,] and the results obtained." *See RFF Family P'Ship, LP v. Link Dev., LLC*, 962 F. Supp. 2d 340, 343 (D. Mass. 2013) (citing *Cummuns v. Nat'l Shawmut Bank*, 188 N.E. 489, 492 (Mass. 1934)). These specific factors arguably do not even apply to contingent-fee agreements or, at a minimum, are entitled to far less weight than the contingent-fee agreement itself. *See Winthrop*, 558 N.E.2d 1138 at 1142-43 (court concluded that the "contingent fee agreement controls" and awarded fee equal to one-third of the actual damages without any discussion of the *Cummings* factors); *Northern Heel*, 851 F.2d at 477 (following extensive discussion of the contingent-fee agreement itself, court concluded that fee was also reasonable under a summary one-paragraph discussion of the *Cummings* factors). Nonetheless, the factors provide an instructive "reasonableness" check on PIC's requested fee award and confirm that an award based upon the actual contingent fee under the Fee Agreement is reasonable.

***Counsel's ability and reputation.*** The ability and reputation of PIC's arbitration counsel easily justify a fee in the amount that PIC requests. Because of the complexity of this matter and the amount at stake, PIC retained McKool Smith, a nationally prominent law firm specializing in representing parties in complex and contentious matters like this one. *See* Cruciani Dec. ¶ 5. The McKool Smith team responsible for the representation has extensive relevant experience and was

eminently qualified to handle the matter. *See id.* ¶¶ 6-11. The numerous awards and recognitions bestowed upon PIC's counsel by the industry's most prominent publications constitute a strong endorsement of the firm's and lawyers' national reputations in complex commercial litigation. *See id.* ¶¶ 5, 7. Courts have considered counsel's "national reputation" in the relevant field as a factor favoring a contractual award in the amount that the lawyers actually charged for the representation. *See Dunkin' Donuts Inc. v. Guang Chyi Liu*, No. CIV.A. 99-3344, 2002 WL 31375509, at *3 (E.D. Penn. Oct. 17, 2002) (applying Massachusetts law). Further, PIC would submit that arbitrator is best positioned to weigh the ability of PIC's counsel as a result of having presided over a twelve-day evidentiary hearing (plus a number of telephonic motions) and having reviewed numerous written submissions.

  ***Time spent.*** PIC's counsel devoted an enormous amount of resources to this matter. *See* Cruciani Dec. ¶ 15 and Ex. B. In particular, McKool Smith spent 7,331 hours on this matter through December 1, 2017. *Id.* Applying McKool Smith's standard hourly rates to these hours produces a "lodestar" figure of $4,317,399—almost $85,000 *more than* PIC requests as reimbursement of its actual contingent fee.[8] In fact, the $4,317,399 lodestar reflects more than $287,000 in deductions, such that the actual, unadjusted lodestar would have been $4,604,445. Id. ¶ 16. This fact makes the resulting fee request of $4,232,714.33 that much more conservative and reasonable. While certain courts have found a lodestar approach "advantageous," under Massachusetts law, a court "need not follow the 'lodestar' method of calculation" for contractual fee-shifting cases. *Gaulin v. Commissioner of Public Welfare*, 505 N.E.2d 898, 900 n.7 (Mass. App. Ct. 1987). Rather, "[m]ost cases in which the court has endorsed the lodestar method have

---

[8] PIC's other counsel, Lando & Anastasi, contributed an additional 181.2 hours having a lodestar value of $77,680, mostly during the early stages of the matter. *See* Declaration of Craig Smith ¶¶ 6-7 ("Smith Dec.") (submitted with this application). In an effort to be conservative, PIC does not seek the additional fees that it, in fact, paid to Lando & Anastasi in connection with this arbitration.

involved the vindication of rights under statutory law." *See, e.g., WHTR Real Estate*, 825 N.E.2d 105, 111 (Mass. App. Ct. 2005).

Almost all this time was spent developing the common core of facts and theories that formed the basis of both PIC's contract claims and its copyright claims. *See* Cruciani Dec. ¶¶ 24-25. Common to both claims was, among other things, (1) documenting the uses made by OSI or its customers of PIC images without the notice or attribution; and (2) establishing that it was "reasonably possible and practical" for OSI or its customers to have applied the notice or attribution to the PIC images. These evidentiary undertakings were extensive and were a direct result of the vast use of PIC's images without notice or attribution. *See* Award at 31 (discussing the "comprehensive" infringement report that "documented at least 19,000 separate PIC Images on the internet without copyright notice or attribution").

As discussed, PIC bases its fee application primarily upon the terms of its contingent-fee agreement with McKool Smith and is not requesting a fee based upon a lodestar approach. *See* Cruciani Dec. ¶ 17. But if PIC's attorneys' fee application were based upon an hourly, lodestar analysis (it's not), then PIC arguably would have to allocate or segregate time spent in its successful prosecution and defense of the parties' contract claims from the discrete time spent on issues that PIC did not prevail on. *See* Cruciani Dec. ¶¶ 25-26. Given the interrelated nature of the claims, however, PIC's counsel estimates that a maximum of 10 percent of counsel's time was spent on issues having no bearing on the contract claims. *Id*. ¶ 26. A 10-percent reduction from McKool Smith's $4,317,399.50 lodestar figure would be $3,885,659.55. *Klairmont v. Gainsboro Rest., Inc*., 987 N.E.2d 1247, 1263 n.25 (Mass. 2013) (observing that it is not necessary to apportion attorneys' fees where multiple claims arose from "a single chain of events" or "common nucleus of operative facts" (internal quotation marks omitted)).

These lodestar figures represent the actual market value of McKool Smith's services in an *hourly* representation that is otherwise comparable to this matter. First, the amount of time that McKool Smith spent was reasonable and customary for a matter of this magnitude, particularly given the unique challenges associated with investigating vast and widespread use of PIC's copyrighted images on the internet. *See* Cruciani Dec. ¶ 18. Second, McKool Smith's standard hourly rates reflect the national legal market's valuation of the firm's services—and the rates its clients routinely pay in actual hourly-fee representations—and so likewise are reasonable for a complex matter like this one. *See id.* ¶¶ 19-20. Notably, this dispute is in every sense "national," as it involves parties from all over the country and large, national (or global) law firms representing both sides. *See id.* ¶¶ 20-22. Therefore, the prevailing *national* rates for complex litigation would supply the appropriate yardstick for evaluating hourly rates in this case, regardless of where the arbitration were held. *See id.*

Of course, this was *not* an hourly representation. Because McKool Smith accepted this hotly contested matter on a contingent-fee basis, it forwent an opportunity to collect its standard hourly rates and accepted a material risk of nonpayment or payment at less than its standard hourly rates. Because of this risk, a reasonable fee to McKool Smith in this case could substantially exceed its lodestar of $3,885,659.55. *See In re Volkswagen & Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 165 (D. Mass. 2015) (observing that even where Massachusetts law requires a lodestar-based fee, it is appropriate to enhance the lodestar to appropriately reflect "the risks counsel took in pursuing contingent fees").

**Amount of money or property affected by the controversy and results obtained.** The amount in controversy as well as the intellectual-property rights at issue in this arbitration were substantial. OSI, not PIC, initiated this arbitration and at the hearing demanded $4,457,241.08 in combined actual damages and unjust enrichment for its claims against PIC under the 2006

License Agreement (and on various alternative theories). Tr. 3952, 3954 (Drews). OSI asserted six different claims against PIC, all stemming from PIC's suing OSI's customers and pursuing copyright claims that were allegedly without merit. Award at 86. The arbitrator dismissed each of these six claims asserted by OSI against PIC and found that PIC's claims against OSI's customers were not frivolous or in bad faith, but rather found that "it was Sylvania's breach of contract that created the claims" in the first instance. *Id*. at 86-87. The arbitrator found PIC was the "prevailing party" on OSI's claims that PIC breached the implied covenant of good faith and fair dealing and for a declaratory judgment regarding the parties' rights under the 2006 License Agreement, thereby entitling PIC to a mandatory award of fees. *Id*. at 85.

Further, OSI took the position that, pursuant to the 2006 License Agreement, the attribution rights that were at the heart of this dispute (1) imposed an affirmative obligation upon PIC to supply images with the copyright notice; (2) only applied to images used by OSI and did not require OSI's customers to use PIC's attribution; and (3) even if the attribution requirements otherwise applied to OSI and its customers, it was not "reasonably possible and practical" for the attribution to be used on PIC images appearing on the Internet. In each case, the arbitrator rejected OSI's position, finding (1) "there was absolutely no obligation under the Agreement for PIC to provide the copyright notice/attribution on the PIC Images it submitted to Sylvania"; (2) "the contractual obligations of Sylvania under 10.b [the attribution provision] extended to the Use of PIC Images by Trade Service, IDEA, and the Respondent Distributors," which obligations OSI "blithely ignored when it came to internet Use of the Images by its customers"; and (3) "PIC has met its burden of showing that it was reasonably possible and practical for PIC's copyright notice to be included on all PIC Images that are the subject of this action, whether the Images were used in print publications or on the Internet." *See id*. at 15, 16, 33, 44.

Finally, the fee award requested by PIC is reasonable in light of the results obtained in the matter. PIC secured a ruling imposing liability on OSI for unlawfully using—and permitting others to use—PIC's copyrighted images without a proper copyright notice or attribution. As a result of this ruling, PIC is entitled to recover $8,752,950.22 on the attribution issue, an amount that, in the words of the award, constitutes "meaningful damages." *See id*. at 10.

In addition to relief related to unlawful use of PIC's copyright images, PIC was also awarded $838,099.77 for unpaid rush charges (plus interest), bringing total compensatory damages to $9,591,049.99. This nearly-eight-figure sum constitutes a substantial recovery by any measure. And it strongly reinforces the reasonableness of the fee award that PIC seeks. Indeed, because PIC seeks reimbursement of the actual contingent fee that it will owe its counsel—itself a function of the monetary recovery to PIC—the fee is essentially reasonable *by definition* in light of the results obtained.

## II.     PIC IS ENTITLED TO AN AWARD OF $2,108,316.46 IN COSTS INCURRED IN THE ARBITRATION.

The Award also provides that under paragraph 39 of the 2006 License Agreement, PIC is entitled to a mandatory award of costs incurred in prosecuting its contract claims and defending against OSI's contract claims. *See* Award at 85. Thus, the only question is what amount of costs OSI should be ordered to bear.

When costs are shifted in accordance with a contract—as opposed to a statute— Massachusetts courts calculate costs in the same way as they calculate a contractual award of attorneys' fees. *See, e.g., WHTR Real Estate*, 825 N.E.2d at 111-12; *Winthrop*, 558 N.E.2d at 1139 & n.1, 1141. That is, PIC should be reimbursed for the costs it *actually incurred*, so long as those costs are not unreasonable. *See id*. Critically, when a contractual provision supplies the basis for shifting of costs, the award of costs is not limited to costs that would be "taxable" under Fed. R. Civ. P. 54(d), but includes *all costs* reasonably incurred in the case. *See Best Buy*, 2011

WL 1321391, at *10-11. In *Best Buy*, the court considered an application for costs in accordance with the cost-shifting provisions of several lease agreements, some of which were governed by Massachusetts law. *See id*. at *1-2. The court rejected the defendants' argument that an award of costs should be limited to taxable costs under Rule 54(d) and 28 U.S.C. § 1920. *Id*. at *10-11. The court explained that it was "necessary to distinguish between costs awarded under Rule 54(d) and those available pursuant to a contract." *Id*. at *10. Contractual cost-shifting provisions, said the court, would be "superfluous" if they shifted only costs already available under Rule 54, and so parties would not include such provisions "unless they intended to recover costs beyond those allowed under § 1920." *Id*. at *11 (citing *Weitz Co. v. MH Washington*, 631 F.3d 510, 535-36 (8th Cir. 2011)).

Here, PIC is entitled to an award of costs in the amount of $2,108,316.46. These costs may be summarized as follows:

| Amount | Description | Evidentiary Support |
|---|---|---|
| $1,734,836.73 | Costs paid directly by PIC, or by Copyright Strategies (on PIC's behalf), including fees for skilled consultant and expert witnesses | Fleeger Dec. ¶¶ 4-9 & Exs. A-G |
| $197,001.97 | Costs advanced by McKool Smith and billed to PIC, and for which PIC seeks reimbursement (representing $215,792.28 in costs actually billed to PIC by McKool Smith, less certain discretionary omissions from amount sought to be awarded) | Cruciani Dec. ¶¶ 29-31 & Exs. C, D, and E; Fleeger Dec. ¶ 4 |
| $10,077.76 | Costs advanced by Lando & Anastasi and billed to PIC, and for which PIC seeks reimbursement | Fleeger Dec. ¶ 4; Smith Dec. ¶¶ 5, 10-11 & Ex. A |
| $166,400.00 | Administrative fees of the AAA and arbitrator fees borne by PIC | Fleeger Dec. ¶ 10 & Ex. H |

In this large, complex matter, costs of this magnitude were reasonable for largely the same reasons as PIC's actual contingent fee is reasonable. *See id*. ¶¶ 32-34. In particular, PIC's expenditures on expert witnesses and its consultant, Len Bucchino, were reasonable and

necessary to the prosecution of PIC's claims. *See id.* ¶¶ 33-34. The utility of these witnesses' work is on display throughout the award.

Professor Sedlik's testimony is cited approvingly on numerous occasions throughout the award on a variety of issues. *See* Award at 17, 22, 37, 41, 46, 72, 73, 75.

Dr. Sullivan's fair-market-value analysis is credited as "instructive" on the proper measure of contract damages. *Id.* at 74. Further, while the arbitrator employed a different damages methodology, he noted that his damages number of $8,752,950.22 for OSI's breach of the attribution provision was "within the range of Dr. Sullivan's figure for breach of contract damages for Sylvania alone." *Id.* at 75. The arbitrator also denied OSI's motion to strike Dr. Sullivan's report and testimony. *Id.* at 83-84.

The award discussed Mr. Bucchino's infringement report at great length, and the report is credited as comprehensively "document[ing] at least 19,000 separate PIC Images on the Internet without copyright notice or attribution." *Id.* at 31. The infringement report was central to documenting the scope of the attribution breaches by OSI and its customers:

> I have included the details of the infringement report and the work of Mr. Bucchino because they so well document the breadth of the internet Use for the PIC Images by Sylvania and its customers without the copyright notices/attributions called for in Para 10.b of the Agreement. Sylvania's conduct in not controlling the spread and Use of the Images without attribution was a breach of the Agreement.

> I find that Bucchino was eminently qualified to design the software that he employed in the investigation and analysis that resulted in the Infringement Report, as well as the Side-by-Side PDF Report.

> I find that Bucchino's testimony with regard to the process that resulted in his reports, including the Infringement Report and the Side-by-Side Report, was forthright and credible. I find that Bucchino employed a painstaking and rigorous process to document the vast uses of PIC Images that are in issue in this arbitration….

> Based on the foregoing, and in light of the record as a whole, I find that the Infringement Report accurately and reliably documents thousands of instances in which the PIC Images were used without notice and/or attribution and also

accurately and reliably documents the additional information included in the report, including information related to the nature and location of the use and the entity that engaged in the use. In other words, I find that Sylvania permitted the Third Party Respondents and the Nonparty customers to use the PIC Images without the notice and/or attribution in violation of 10.b as reported in the Infringement Report.

*Id*. at 31-32.

The arbitrator also denied the motion to strike Mr. Bucchino's infringement report and instead expressly found him "to be candid, responsive, knowledgeable, and credible." *Id*. at 79. Moreover, because OSI made an issue of Mr. Bucchino's compensation at the hearing, the award specifically observes that his charges were reasonable in light of the skilled services he provided. *See id*. ¶ 27.

In addition, OSI created a "forensic sideshow" in this case that necessitated each side's hiring forensic experts and resulted in numerous telephonic hearings and substantial testimony at the hearing. For PIC, Charles Adams and Professor Sedlik testified to certain forensic issues. Based in part on that testimony, the arbitrator expressly stated, "I find that PIC generally did preserve its evidence" and that no evidence was lost or destroyed. *Id*. at 67. The award further recites that OSI's forensic expert, Gary Pate, was unable to identify any changes to any files, "just Pate's suspicion." *Id.* at 68.

While the arbitrator declined to sanction either side for failure to preserve evidence, he stated:

I think PIC's request has more merit. For one thing, Sylvania was slow and less than complete in instituting litigation holds; it was unable to account for or produce many of the CDs PIC had sent containing its Final Images; Sylvania did not preserve its FTP server; Mitchell's laptop was destroyed; and other materials might have been saved and produced had litigation holds gone into effect with more people than they did.

*Id*.

Moreover, the costs incurred by PIC, including virtually all the expert and consultant fees, relate to the common core of facts and theories underlying all the claims. *See* Cruciani Dec. ¶¶ 35-38. So few costs would have been avoided had the contract claims been the only claims in the case. *See id*. Therefore, the costs need not be segregated or apportioned among claims. *See Klairmont*, 987 N.E.2d at 1263 n.25. PIC is entitled under paragraph 39 of the 2006 License Agreement to full reimbursement of its actual costs incurred in this matter in the amount of $2,108,316.46.

## CONCLUSION

PIC respectfully requests that the arbitrator render a final award in favor of PIC and against OSI for—

1. $4,232,714.33 in attorneys' fees;

2. $2,108,316.46 in costs; and

3. Any further or additional relief to which PIC may be justly entitled.

Dated: December 13, 2017                   Respectfully submitted,

                                           */s/ Gary Cruciani*_____
                                            Gary Cruciani

                                           **McKool Smith, P.C.**
                                           300 Crescent Court, Suite 1500
                                           Dallas, Texas 75201
                                           (214) 978-4000
                                           (214) 978-4044 fax
                                           gcruciani@mckoolsmith.com

                                           **McKool Smith Hennigan, P.C.**
                                           Robert E. Allen
                                           300 South Grand Ave., Suite 2900
                                           Los Angeles, California 90071
                                           Telephone: (213) 694-1200
                                           rallen@mckoolsmithhennigan.com

                                           **McKool Smith, P.C.**
                                           Charles W. Fowler
                                           300 West 6th St., Suite 1700
                                           Austin, Texas 78701
                                           Telephone: (512) 692-8700
                                           cfowler@mckoolsmith.com

                                           *Attorneys for Respondent/Counter-Claimant and*
                                           *Third-Party Claimant*
                                           *Photographic Illustrators Corporation*

## CERTIFICATE OF SERVICE

I certify that on December 13, 2017, I served this document by transmitting the same by electronic mail to all counsel of record for the Claimant/Counter-Respondent and the Third-Party Respondents.

*/s/ Gary Cruciani*
Gary Cruciani