**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION, <br><br>       Petitioner, <br><br> v. <br><br> OSRAM SYLVANIA, INC., <br><br>       Respondent. | Case No. 1:17-cv-12425-PBS |

**PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S OPPOSITION TO OSRAM SYLVANIA, INC.'S MOTION TO VACATE ARBITRATION AWARD OF COSTS AND ATTORNEYS' FEES**

On November 20, 1017, Arbitrator Bernard J. Bonn entered an 87-page award on the merits of the claims asserted by Osram Sylvania, Inc. ("OSI") and the counterclaims asserted by Photographic Illustrator Corp. ("PIC") (the "Partial Final Award").[1] The Arbitrator dismissed each of OSI's claims while awarding PIC nearly $9.6 million on its breach-of-contract claims. On January 18, 2018, the Arbitrator entered a 13-page award on the parties' competing fee applications (the "Final Award").[2] The Arbitrator awarded PIC approximately $5.4 million in fees and costs on its breach-of-contract claims pursuant to the *mandatory* provision in the PIC-OSI license agreement (the "Agreement"),[3] entitling the prevailing party on a breach-of-contract claim to recover its reasonable attorneys' fees and costs. The Arbitrator also exercised his discretion in declining to award any fees and costs to OSI as the prevailing party on the copyright claims, pursuant to the copyright statute that authorizes fees and costs in the court's *discretion.*

OSI did not challenge the Arbitrator's merits decision reflected in the Partial Final Award, and OSI has paid PIC the amount awarded. But OSI does seek to vacate the Final

---

[1] *See* Declaration of Joseph Petersen ("Petersen Decl.") (Dkt. 34), attaching the Partial Final Award as Exhibit B.

[2] *See* Petersen Decl., attaching the Final Award as Exhibit C.

[3] *See* Petersen Decl., attaching the Agreement as Exhibit A.

Award.  As this Court is doubtless aware, the grounds for vacating an arbitration award are exceedingly narrow and nearly impervious to appellate review absent extraordinary circumstances.  The Federal Arbitration Act ("FAA") provides the four exclusive grounds for vacating an arbitration award.  OSI relies on two grounds.  One, the Final Award was allegedly the product of the arbitrator's "evident partiality."  Two, the arbitrator allegedly "exceeded his powers" by misapplying case law and misinterpreting the Agreement in awarding PIC its fees and costs but denying OSI its fees and costs.  OSI does not come close to meeting its heavy burden of vacating the Final Award.

As to the claim of "evident partiality," OSI's assertion was based on nothing more than a class photograph from nearly 50 years ago that OSI's lawyers "discovered" on the Internet that reflected the Arbitrator and Phil Smith, one of the founders of the law firm that represented PIC, were in the same L.L.M. class in 1970.  Rather than simply asking PIC's counsel to confirm whether there was any connection between Mr. Bonn and Mr. Smith, OSI instead made unsupported allegations of "an undisclosed but apparent relationship" between Mr. Bonn and Mr. Smith, and filed a discovery motion that falsely accused Mr. Bonn of bias and speculated that "[f]or all Sylvania knows, Mr. Bonn and Mr. Smith have a continuing relationship, and Mr. Bonn concealed that relationship to prevent Sylvania from challenging his award."  Dkt. 29 at pp. 1 and 6.  OSI's Motion repeats this same ground of evident partiality based upon this supposed undisclosed relationship.  Motion, p. 12.  In fact, OSI's wild and unsubstantiated assertions of bias were baseless.  Mr. Smith submitted a declaration that he does not recall ever even meeting Mr. Bonn and has never had a relationship of any kind with him.  Dkt. 31-1 at ¶ 8.  The Court summarily denied OSI's discovery motion based upon this alleged, but non-existent, relationship between Mr. Bonn and Mr. Smith.  Dkt. 35.  As such, OSI's claim of arbitrator bias or partiality in connection with the Final Award must be rejected.[4]

_____

[4] OSI never did explain why it was that Mr. Bonn apparently was neutral and unbiased in rendering his merits award in the November 2017 Partial Final Award, notwithstanding the

With respect to OSI's claim that the Arbitrator "exceeded his powers" in rendering the Final Award, this contention is simply a repeat of OSI's arguments that the Arbitrator got it wrong—he should have awarded substantially less fees and costs to PIC and should have awarded at least some fees and costs to OSI.  In effect, OSI argues that not only did the Arbitrator get it wrong, he got it really, really, really wrong.  But the Arbitrator had nearly unfettered discretion in deciding the Final Award, and OSI's complaints that he got it really, really, really wrong are not a basis for vacating the Final Award.  Moreover, while OSI obviously does not like the result, the Arbitrator's Final Award was carefully reasoned, identified the correct law, and applied the applicable law to the facts.  The Final Award contains a rigorous and well-reasoned analysis of both PIC's contract claim under the fee-shifting provision of the Agreement and PIC's copyright claim under the fee-shifting copyright statute.

A final and troubling aspect of OSI's Motion is the venom directed at the Arbitrator. If name-calling and impugning the integrity and honesty of the arbitrator were the standard by which a motion to vacate an arbitration award was governed, then OSI would have met its burden with flying colors.  OSI's Motion is startling for its series of ad hominem attacks directed towards the Arbitrator, in which the accusations include the following:   "the bankruptcy of the Arbitrator's supposed logic" (p. 1, n.1); "the Arbitrator's possible bias" (*id*.); "the Arbitrator's 'reasoning'—if that is what it was" (p. 2); "[t]he Arbitrator thus worked a kind of procedural alchemy" (p. 3); "Sylvania reasonably suspects" that the fee award "resulted from the Arbitrator's 'evident partiality'" (p. 3); "the Final Award is intellectually dishonest" (p. 9); the arbitrator "justif[ied] the wholesale manipulation of language to achieve a desired result" (*id*.); "the Arbitrator's revisionist position" (*id*.); "the Arbitrator presumed to rewrite the terms of the License [w]ith no evidentiary basis or legal justification" (*id*. ); "[t]his line of justification by the Arbitrator is disingenuous" (p. 10, n.4);

---

supposed 50-year relationship between Mr. Bonn and Mr. Smith, but all of a sudden was irretrievably biased two months later in connection with his Final Award in January 2018.

"[t]he Final Award … reveal[s] a decided bias *against Sylvania* and *in favor* of PIC" (p. 11) (emphasis in original); "[t]his assertion lacks intellectual integrity" (*id.*); "the Arbitrator manipulated facts, manufactured others, and characterized them in ways that supported the conclusion he wished to reach—whatever the reason, whether to benefit PIC for a corrupt motive or simply to award PIC 'more' than the nearly ten million dollars he awarded for breach of a license" (p. 13); "the Arbitrator cannot hide behind the incantation of magic words" (p. 15); "the Arbitrator turned a blind eye" to the case law (p. 16); "the Arbitrator's decision is unfounded in both reason and fact" (*id.*); and this Court's intervention is required "to restore the legal, intellectual, and procedural integrity of the arbitration" (p. 19).  This personal attack on the arbitrator is not only an unseemly violation of the rules of professional decorum, but bespeaks the bankruptcy of OSI's arguments in opposition to the Final Award.

In short, the FAA and applicable case law precludes OSI's attempt to have this Court re-evaluate and second-guess the Arbitrator's findings.  OSI's motion to vacate should be denied.

## I.    FACTUAL BACKGROUND

OSI commenced an arbitration proceeding against PIC, alleging six causes of action, including a preposterous RICO claim.  PIC counter-claimed against OSI for, among other things, breach of contract and copyright infringement.  PIC also agreed to dismiss seven district court actions against OSI distributors and to arbitrate those claims as part of the OSI arbitration instead.  The central disputes between the parties revolved around whether OSI and its customers' use of PIC's copyrighted photographs violated the licensing terms of the Agreement.

After conducting a twelve-day hearing, the Arbitrator found that OSI had indeed violated the terms of the Agreement by exploiting PIC's photographs contrary to its terms. The Arbitrator found, however, that OSI had violated a "covenant" of the license Agreement, and not a "condition" of it, thus enabling PIC to prevail solely under its breach

of contract theory, not its copyright infringement theory. The Arbitrator also found in favor of PIC on all of OSI's claims against PIC. As a result, in November 2017, the Arbitrator awarded PIC $9,591,049.99 in damages. Partial Final Award, p. 87.[5] The Arbitrator required the parties to file by December 4, 2017 applications for attorneys' fees and costs: PIC, as the "prevailing party under the Agreement which has a provision for the recovery of reasonable attorneys' fees and costs"; and OSI, as the "prevailing party on the copyright claims." *Id.*

PIC and OSI each submitted an application for attorneys' fee and costs. After full briefing, the Arbitrator granted PIC's application pursuant to the mandatory fee-shifting provision of the Agreement, and awarded PIC $5,434,330.56 in costs and fees. Final Award, p. 13. After review of Section 505 of the Copyright Act and U.S. Supreme Court precedent, the Arbitrator exercised his discretion and denied OSI's application. *Id.* at 12-13.

OSI then brought the Motion to vacate the Final Award (but not the Partial Final Award).

## II.    STANDARD OF REVIEW

Noticeably absent from OSI's Motion is virtually any reference to the incredibly high standard required for a court to vacate an arbitrator's ruling under the FAA. "Under the FAA, courts may vacate an arbitrator's decision only in very unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013) (internal citations omitted). A party that implores a court to vacate an arbitration award "faces a steep uphill climb: the

---

[5] Although OSI did not ask this Court to vacate the Partial Final Award, it did file a frivolous motion in the arbitration, asking the Arbitrator to modify a portion of the award based on the contention that the $8,752,950.22 award for failing to comply with the attribution provision in the Agreement was the result of a "computational error." According to OSI, the arbitrator just got his math wrong and, instead of $8,752,950.22, this part of the award should only have been $3,501,180.09. See Declaration of Robert E. Allen ("Allen Decl.") ¶ 3, Ex. A, Dec. 1, 2017 letter from Petersen to Bonn. In fact, the Arbitrator did not make a $5 million math error but, as the arbitrator held, this was an attempt by OSI to re-argue the case, notwithstanding Rule 50 of the AAA Rules which provides that the "arbitrator is not empowered to redetermine the merits of any claim already decided." *Id.* ¶ 4, Ex. B, Disposition for Application of Modification of Award.

scope of judicial review of arbitration awards is "among the narrowest known in the law." *First State Ins. Co. v. Nat'l Cas. Co.*, 781 F.3d 7, 9 (1ˢᵗ Cir. 2015) (quoting *Me. Cent. R.R. Co. v. Bhd. of Maint. of Way Emps.*, 873 F.2d 425, 428 (1st Cir. 1989)).  In fact, a "court's review of an arbitration award is extremely narrow and exceedingly deferential," and "nearly impervious to judicial oversight." *Ortiz-Espinosa v. BBVA Sec. of P.R., Inc.*, 852 F.3d 36, 47-48 (1ˢᵗ Cir. 2017) (internal citations omitted).

Specifically, "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement."  *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (citing *Paperworkers v. Misco, Inc.*, 484 U.S. 29, 36 (1987)); *accord Ortiz-Espinosa,* 852 F.3d at 48 ("In reviewing an arbitration award under the FAA, courts do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts . . . . [e]ven where such error is painfully clear . . ." (internal citations omitted)); *First State Ins.,* 781 F.3d at 11 ("A legal error (even a serious one) in contract interpretation is, in and of itself, not a sufficient reason for a federal court to undo an arbitration award.").  If an arbitrator is "even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Garvey,* 532 U.S. at 509 (internal citations omitted).  It is only when the arbitrator "strays from interpretation and application of the agreement and effectively dispenses his own brand of industrial justice that his decision may be unenforceable." *Id.* (internal citations omitted).  Indeed, the arbitrator's "improvident, even silly, fact-finding does not provide a basis for a reviewing court to refuse to enforce the award." *Id.* (quoting *Misco*, 484 U.S. at 39); *accord First State Ins.,* 781 F.3d at 11 ("[A]s long as an arbitration award 'draw[s] its essence' from the underlying agreement, it will withstand judicial review — and it does not matter how 'good, bad, or ugly' the match between the contract and the terms of the award may be.").  That limited judicial review

"maintain[s] arbitration's essential virtue of resolving disputes straightaway." *Sutter*, 133 S. Ct. at 2068 (internal citations omitted).

## III. OSI PRESENTS NO BASIS UPON WHICH TO VACATE THE FINAL AWARD

### A. The Arbitrator Did Not Manifestly Disregard the Law In Exercising His Discretion In Denying OSI's Fees and Costs Under the Copyright Act

OSI's allegations that the Arbitrator manifestly disregarded the law in denying OSI's application for attorneys' fees and costs are meritless. OSI acknowledges that "this Circuit has declined to decide 'whether manifest disregard remains as an available basis for vacatur . . . .'" (Motion pp. 12-13, quoting *Ortiz-Espinosa*, 852 F.3d at 46). Even if it does survive, however, OSI fails to meet any of this doctrine's three tests in challenging the Final Award: (1) that it was unfounded in reason and fact; (2) that is was based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) that it was mistakenly based on a crucial assumption that is concededly a non-fact. *Mt. Valley Prop. v. Applied Risk Servs.*, 863 F.3d 90, 95 (1st Cir. 2017). Instead, OSI asserts that the Arbitrator appreciated the existence of the standard upon which attorneys' fees are granted under the Copyright Act but "willfully decided not to apply it." Motion p. 13.

But in "order to demonstrate that the arbitrator both recognized and ignored the applicable law, there must be some showing in the record, other than the result obtained, that the arbitrators knew the law and expressly disregarded it." *Prudential-Bache Secs. v. Tanner*, 72 F.3d 234, 240 (1st Cir. 1995). Not only is there nothing in the Final Award to support OSI's allegations, but the record shows the exact opposite.

The Copyright Act provides: "In any civil action under this title, the court *in its discretion* may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (emphasis added). Here, PIC had a good faith basis to pursue its copyright claims, which were objectively reasonable, not frivolous and brought with the motivation of protecting its copyrights—all factors the U.S. Supreme Court has instructed

courts to review in determining whether attorneys' fees should be awarded in a copyright action. *See Fogerty v. Fantasy*, 510 U.S. 517 (1994). While there is no "precise rule or formula" to when attorneys' fees should be awarded under the Copyright Act, *id.*, the U.S. Supreme Court has placed two restrictions on that authority. First, a court may not award attorneys' fees "as a matter of course;" rather, it must make a more particularized, case-by-case assessment. *Id*. at 533. Second, a court may not treat prevailing plaintiffs and prevailing defendants differently under Section 505. *Id*. at 527.[6] The U.S. Supreme Court also established several non-exclusive factors for courts to consider: "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." *Id*. at 534 n.19. Recently, the U.S. Supreme Court revisited these factors and confirmed that a court should "give 'substantial weight' to the reasonableness of a losing party's litigation positions while also considering other relevant circumstances." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).

The Arbitrator applied the *Fogerty* factors to PIC's copyright claims and concluded that attorneys' fees were not warranted. First, the Arbitrator found that PIC's copyright claims were objectively reasonable and that PIC had a good faith motive in bringing them. Final Award, p. 12. Second, the Arbitrator found that granting fees to OSI would not "further the Copyright Act's fundamental goal of 'enriching the general public through access to creative works." *Id.* at 13 (quoting *Fogerty*, 510 U.S. at 527).[7] Third, the Arbitrator

---

[6] OSI implies that the Arbitrator did not apply the award of attorneys' fees in an evenhanded manner because he awarded PIC's fees under the mandatory contractual provision of paragraph 39 of the Agreement but denied OSI's fees under the discretionary provisions of Section 505. Aside from comparing apples and oranges, *Fogerty* solely requires a court to treat prevailing plaintiffs and prevailing defendants the same when exercising its discretion on whether to award attorneys' fees under the Copyright Act. Contrary to OSI's assertions, the Arbitrator granted PIC its attorneys' fees solely based on being a prevailing plaintiff on its breach of contract claims.

[7] OSI complains that the Arbitrator did not articulate his reasoning in concluding that an award to OSI would not further the goals of the Copyright Act. (Motion p. 16). Arbitrators are not required to do so. *Rogers v. Ausdal Fin. Partners, Inc.*, 168 F. Supp. 3d 378, 387 (D. Mass.

had found that PIC's copyright claims were not frivolous.  Partial Final Award, pp. 85-86.
These findings were all well supported in the record.  *See* Partial Final Award, generally and
pp. 86-87; Allen Decl. ¶ 5, Ex. C, PIC's Opposition to OSI's Application for Attorneys' Fees
and Costs.  OSI presented no evidence from the record to the contrary.  Thus, the Arbitrator
followed the law in denying OSI's application for attorneys' fees.  *See Dennis v. Wachovia Sec.
LLC*, 429 F. Supp. 2d 281, 289 (D. Mass 2006) (even when faced with conflicting evidence,
"this court cannot second guess the arbitrators' decision, and cannot conclude that they
disregarded the law or otherwise exceeded their authority.").

Indeed, OSI basically argues that the Arbitrator must have ignored the *Fogerty* factors
in exercising his discretion, under Section 505, in denying OSI's application for attorneys'
Fees solely because . . . he did not grant OSI's application.  Such circular reasoning not only
is meritless, but improper in a motion to vacate an arbitration award.  Even assuming that
the Arbitrator misapplied the law in evaluating OSI's application for attorneys' fees, "that
error is not of the kind that would permit this court to overturn the Award."  *System4, LLC v.
Ribeiro*, 275 F. Supp. 3d 297, 305 (D. Mass. 2017); *see McCarthy v. Citigroup Global Markets
Inc.*, 463 F.3d 87, 95 (1st Cir. 2006) ("[O]ur precedents forbid a district court from
conducting such a review [of legal error] of an arbitration award.").

But the Arbitrator correctly applied the law in denying OSI's application.  First, OSI
ignores that attorneys' fees awards under the Copyright Act are *discretionary*.  Yet OSI
claims that it was entitled, as a matter of course, to an award of its attorneys' fees.  *See*
Motion p. 3 ("[T]he Arbitrator's actions in interpreting the 2006 License Agreement . . .
stand §505 on its head by denying the prevailing party *any* of the relief that § 505 mandates .

---

2016) ("It is well-established that arbitrators are not generally required to give the reasoning
behind an award." (quoting *Atkinson v. Sinclair Ref. Co.*, 370 U.S. 238, 245 n.4 (1962)).
Further, OSI cannot challenge the Arbitrators findings on the "disregard of the law" theory based
upon reasoning not stated in the Final Award.  *Tanner*, 72 F.3d at 240 ("In fact, when the
arbitrators do not give their reasons, it is nearly impossible for the court to determine whether
they acted in disregard of the law." (internal citation omitted)).

. . ."). Such a position ignores the plain language of the statute itself and U.S. Supreme Court case-law. 17 U.S.C. § 505; *Kirtsaeng*, 136 S. Ct. at 1985 (a court may not award attorneys' fees "as a matter of course").[8] Further, the Arbitrator made a judgment call in weighing the *Fogerty* factors and concluded that OSI should not be awarded it fees. Whether the Arbitrator correctly weighed the factors is not subject to court review. *Ortiz-Espinosa,* 852 F.3d at 48 (courts do not hear claims of factual or legal error by an arbitrator, even where such error is "painfully clear.").

Second, as OSI acknowledges, the Arbitrator recited the correct *Fogerty* factors and then complains that he "gave short shrift" to OSI's application. Motion p. 15. Strangely, OSI then quotes the Arbitrator's findings that PIC was objectively reasonable, and that an award to OSI would not further the goals of the Copyright Act. Those findings, combined with his other findings that PIC's claims were not frivolous and brought in good faith, confirm that the Arbitrator considered each of these *Fogerty* factors and found in favor of PIC on all of them.

Third, OSI fails to point to any evidence in the record that contradicts the Arbitrator's findings on any of those factors. Instead, OSI argues that *"Kirtsaeng* stands for the proposition that courts must *not* rely exclusively on objective reasonableness—*as the Arbitrator did here . . . ." Id.* But the Arbitrator did not rely exclusively on objective reasonableness. He expressly relied on objective reasonableness, good faith motivation, lack of frivolousness and the furtherance of the Copyright Act's goals.

Fourth, OSI claims that pursuant to *Kirtsaeng*, "courts may award fees to prevailing defendants, for example, to 'deter . . . overaggressive assertions of copyright claims . . . .'" While true, the standard remains discretionary: the court *may* but is not required to award fees. More importantly, the Arbitrator made no finding that PIC had made "overaggressive

---

[8] In fact, even after his victory at the Supreme Court, Kirtsaeng was denied attorneys' fees on remand. *John Wiley & Sons, Inc. v. Kirtsaeng*, 2016 U.S. Dist. LEXIS 176981, at *8 (S.D.N.Y. Dec. 21, 2016).

assertions of copyright claims," nor has OSI presented anything from the record to argue that PIC had done so.[9]   Instead, OSI makes unsupported, conclusory allegations, and essentially argues that the Arbitrator should have done exactly what OSI just finished excoriating the Arbitrator for doing, just with a different *Fogerty* factor:   OSI previously claimed that the Arbitrator erred in focusing solely on the "objective reasonableness" factor (which he did not do) and now claims that the Arbitrator should have focused solely on the "overaggressive assertions of copyright claim" factor (which he did not find occurred).

Finally, OSI fails to cite a single case where a court has vacated an arbitrator's award related to an application for attorneys' fees, let alone one under the Copyright Act.   With respect to OSI's argument that it should have been granted its fees, OSI cites only one case, an unpublished case from the Fourth Circuit, where the court granted a motion to vacate an arbitration award on facts completely different from this one.   In *Dewan v. Walia*, Walia executed a release, but despite its clear language that it extinguished Walia's common law and state and federal statutory claims, the arbitrator found that the release did not preclude Walia's claims in arbitration.   544 Fed. Appx. 240, 247 (4th Cir. 2013) (unpublished).   The Court of appeals vacated the arbitration award because "[t]he plain language of the Release fatally undermines the suggestion that Walia retained the right to bring any of his counterclaims in arbitration."   *Id.* at 248.   Thus, even if *Dewan* had any precedential value, its facts make it readily distinguishable from the facts here.   In contrast, each of the other cases OSI cited rejected an attempt to vacate an arbitration award.   *Mt. Valley Prop.*, 863 F.3d at 95 (affirming the denial of the motion to vacate the arbitration award); *Ortiz-Espinosa*, 852 F.3d at 50 (same); *System4,* 275 F. Supp. 3d at 305 (denying motion to vacate arbitration award); *Sanwan Trust v. Lindsay, Inc.*, 251 F. Supp. 3d 353, 360 (D. Mass 2017)

---

[9] The Arbitrator found that PIC had taken aggressive positions but had not made overaggressive claims:   "PIC did take an aggressive litigation position but . . . not an unreasonable one or one lacking in good faith."   (Motion p. 11 (quoting Final Award at 8)).

(same).  Accordingly, OSI has presented no authority upon which to vacate the Arbitrator's denial of OSI's application for attorneys' fees.

### B.  The Arbitrator Did Not Exceed His Powers In Granting PIC its Attorneys' Fees For Breach of Contract Pursuant to the Agreement

Like the plaintiff in *Sutter*, OSI seeks to set aside the Final Award in accordance with Section 10(a)(4) of the FAA, claiming that the Arbitrator "exceeded his powers."[10] But "[a] party seeking relief under that provision bears a heavy burden. 'It is not enough . . . to show that the [arbitrator] committed an error — or even a serious error." *Sutter*, 133 S. Ct. at 2068 (quoting *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.,* 559 U.S. 662, 671 (2010)). Because the parties bargained for the Arbitrator's construction of their agreement, "an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *Eastern Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)).  Accordingly, the sole question for the Court to consider "is whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.*  As a result of this standard, any contractual basis supporting the Arbitrator's decision is enough to foreclose the possibility of a court vacating the Final Award.  *Id.* at 2069 (Section 10(a)(4) "permits courts to vacate an arbitral decision only when the arbitrator strayed from his delegated task of interpreting a contract, not when he performed that task poorly.").  In other words, under §10(a)(4), "the question for a judge is not whether the arbitrator construed the parties' contract correctly, but whether he construed it at all." *Id.* at 2071.

Paragraph 39 of the Agreement provides:

---

[10] OSI also asserted in its separate motion for leave to conduct limited discovery (Dkt. 29) that the Final Award should be vacated under Section 10(a)(2) of the FAA "where there was evident partiality" on behalf of the Arbitrator.  Since the Court has denied that motion (Dkt. 35), the sole bases OSI has raised to vacate the Final Award is Section 10(a)(4) and the questionable "manifest disregard of the law" standard.

> Prevailing Party.  If any legal action, arbitration, or other proceeding is brought for a breach of this Agreement or any of the warranties herein the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in bringing such action or proceeding, in addition to any other relief to which such party may be entitled.

Even a cursory review of the Final Award leaves no doubt that it was within the Arbitrator's powers to grant PIC's application for reasonable attorneys' fees and costs pursuant to paragraph 39 of the Agreement.  First, the Arbitrator was well aware of paragraph 39.  He quoted and analyzed it, finding that its provisions are "standard fee shifting terms in a commercial contract" under Massachusetts law, with "no apparent ambiguity."  Final Award, pp. 3-4.  Second, and notwithstanding OSI's characterization of the proceedings, the Arbitrator found that "PIC indeed was the prevailing party under the Agreement."  *Id.* at p. 3.  Third, in calculating the amount of the award, the Arbitrator examined relevant Massachusetts case law to determine the factors to be considered in making the determination of a "fair and reasonable fee," and to determine the enforceability of fee shifting provisions in contracts, including when the prevailing party's attorneys are compensated on a contingent basis.  *Id.* pp. 4-6.  Fourth, the Arbitrator considered and then rejected OSI's claims on the computation of PIC's reasonable fees, the very same claims that OSI is making in the Motion.  *Id.*, pp. 4, 8-10.  Finally, the Arbitrator granted PIC's application for attorneys' fees and costs, reducing the costs considerably with respect to two of PIC's experts.  *Id.*  pp. 3, 10-12.

OSI does not question whether the Arbitrator had the power under paragraph 39 of the Agreement to award PIC its reasonable attorneys' fees and costs.  Rather, OSI challenges the Arbitrator's findings on what constituted the reasonable amount.  But courts are precluded from second-guessing an arbitrator's findings on his/her interpretation of a contractual provision.  *Sutter*, 133 S. Ct. at 2069.  Since there is no dispute that, at a minimum, the Arbitrator interpreted paragraph 39 of the Agreement, this Court is precluded from inquiring as to whether or not he correctly calculating the amount.  *Id.*

OSI cites no authority to the contrary.  All of the cases cited by OSI in support of its argument that the Arbitrator exceeded his authority involve, unlike here, an arbitrator rewriting or ignoring the plain language of the contract at issue.  *United States Postal Serv. v. Am. Postal Workers Union*, 907 F. Supp. 2d 986, 994 (D. Minn. 2012) (arbitrator rewrote the parties' agreement by requiring the Postal Service to apply the provisions of a particular postal handbook to a facility, even though that handbook "*specifically and expressly*" stated that only another postal handbook applied); *Salem Hosp. v. AFSCME*, 2005 U.S. Dist. LEXIS 19688, at *12-13 (D. Mass. Sep. 7, 2005) (arbitrator rewrote the agreement by inserting the word "only" into a provision:  "Her addition of the word 'only' . . . completely transforms the purpose, intent and meaning of [a section of the parties' agreement]."); *Hebbronville Lone Star Rentals, LLC v. Sunbelt Rentals Indus. Servs., LLC*, 2017 U.S. Dist. LEXIS 37265, at *35-36 (W.D. Tx. Mar. 15, 2017) (arbitrator reformed the parties' agreement as the result of mutual mistake even though the plain language of the arbitration agreement did not include that claim within its scope); *Augusta Capital, LLC v. Reich & Binstock, LLP*, 2009 U.S. Dist. LEXIS 59123, at *11-12 (M.D. Tenn. July 10, 2009) (arbitrators modified the terms of the agreement by limiting, instead of excising, an "offending term," even though the parties' agreement explicitly precluded them from doing so); *New Jersey Carpenters Funds v. Prof'l Furniture Servs.*, 2009 WL 483849, at *4 (D. N.J. Feb. 25, 2009) (arbitrator determined that the parties' collective bargaining agreement intended to exempt non-union employees even though the agreement explicitly stated that it applied to all classes of employees).[11]

But the Arbitrator neither rewrote paragraph 39 nor ignored it.  The plain language of paragraph 39 expressly provides that the prevailing party in an arbitration for a breach of the Agreement shall be entitled to recover its reasonable attorneys' fees and costs.  PIC brought a counterclaim against OSI in the arbitration for breach of contract and prevailed, and was thus entitled to its reasonable fees and costs.  Ascertaining the amount of those fees

---

[11] OSI also cites *System4*, but that court denied plaintiff's motion to vacate.  275 F. Supp. 3d at 305.

and costs was squarely in the scope of the Arbitrator's powers and responsibilities under the Agreement. The Arbitrator reviewed the record and each party's arguments, and determined the amount of reasonable fees and costs to which PIC was entitled. Consequently, the Arbitrator's calculations of PIC's reasonable fees and costs are not subject to review. *Dennis*, 429 F. Supp. 2d at 289 ("faced with conflicting evidence, this court cannot second guess the arbitrators' decision, and cannot conclude that they disregarded the law or otherwise exceeded their authority.").

Nonetheless, OSI argues, as it did in its opposition to PIC's application, that the Arbitrator included in his calculations of PIC's reasonable fees time spent by PIC's counsel on its copyright claims, on which PIC did not prevail. Not only did the Arbitrator reject all of those allegations in the Final Award by acknowledging that almost all of the time spent by PIC's counsel was equally applicable to both its copyright and contract claims, but confirmed that the entire amount awarded was based solely on PIC's breach of contract claim. Final Award, pp. 8-9. Specifically, "PIC's application . . . is not based on hours but on a percent of the Net Litigation Proceeds and that in turn is based on the contract damages; the copyright and DMCA claims do not factor into the amount of the fee application." *Id.,* p. 9. OSI's contentions that PIC recovered less under its contract claims that it would have under its copyright claims "has scant relevance when it is understood that the Fee Agreement is a contingency agreement based on the recovery made, not the pleadings." *Id.,* p. 10. The Arbitrator was quite clear that the Final Award was solely based upon PIC's breach of contract claim: "PIC recovered a substantial figure of over $9 million, and its fee application is based on that damage recovery." *Id.* Regardless of whether there are other ways in which the Arbitrator could have computed the amount of reasonable fees and costs, there can be no doubt that the Arbitrator was construing and applying paragraph 39 and acting within the scope of his authority in doing so. The fact that OSI is convinced the Arbitrator committed serious error in calculating those amounts "does not suffice to overturn his decision." *Garvey,* 532 U.S. at 509.

## V.      CONCLUSION

For all of the foregoing reasons, PIC respectfully requests this Court to deny the Motion.

Dated:  March 21, 2018

*/s/ Robert E. Allen*
Craig R. Smith (BBO No. 636,723)
Eric P. Carnevale (BBO No. 677,210)
**Lando & Anastasi, LLP**
Riverfront Office Park
One Main Street – 11th Floor
Cambridge, MA 02142
Tel: (617) 395-7000
Fax: (617) 395-7070
Email:   csmith@lalaw.com
              ecarnevale@lalaw.com

Gary Cruciani (admitted *pro hac vice*)
**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
Tel: (214) 978-4000
Fax: (214) 978-4044
Email: gcruciani@mckoolsmith.com

Robert E. Allen (admitted *pro hac vice*)
**McKool Smith, P.C.**
300 South Grand Ave., Suite 2900
Los Angeles, California 90071
Tel: (213) 694-1200
Fax: (213) 694-1234
Email: rallen@mckoolsmith.com

Charles E. Fowler, Jr. (admitted *pro hac vice*)
**McKool Smith, P.C.**
300 West 6th St., Suite 1700
Austin, Texas 78701
Tel: (512) 692-8700
Fax: (512) 692-8744
Email: cfowler@mckoolsmith.com
***Attorneys for Photographic
Illustrators Corporation***

## CERTIFICATE OF SERVICE

This is to certify that, on March 21, 2018, a true and correct copy of the foregoing document is being filed through the Court's CM/ECF system, which will automatically send electronic copies of this document to all registered participants, as identified on the Notice of Electronic Filing.

/s/ Robert E. Allen
Robert E. Allen (admitted *pro hac vice*)