# Exhibit A

McKool 1357136v1



KILPATRICK TOWNSEND & STOCKTON LLP
www.kilpatricktownsend.com

The Grace Building
1114 Avenue of the Americas
New York, NY 10036-7703
t 212 775 8700  f 212 775 8800

direct dial 650 614 6427
direct fax 650 644 0570
jpetersen@kilpatricktownsend.com

December 1, 2017

**BY EMAIL**

Bernard J. Bonn III
American Arbitration Association
One Centre Plaza, Suite 300
Boston, Massachusetts 02108

        Re:    *OSRAM Sylvania, Inc. v. Photographic Illustrators Corporation*
               No. 01-16-0000-2652 (American Arbitration Association)

Dear Mr. Bonn,

      We write pursuant to Rule 50 of the AAA Commercial Arbitration Rules ("AAA Rules") to respectfully request a correction to the November 20, 2017 Partial Final Award (the "Award").

      Specifically, the Award calculates breach of contract damages "resulting from Sylvania's failure to comply with the attribution provision" of the 2006 Agreement and starts its calculation with a figure of $10.8 million. This figure is derived from a proposal made by PIC in connection with the negotiations that ultimately led to the 2006 License Agreement (OSI-452, copy attached for ease of reference).

      As the Award and relevant case law confirm, "[c]ontract damages are intended to put the damaged party in the same position as performance would have." *See id.* at 74; *Caesars Mass. Mgmt. Co. v. Crosby*, 778 F.3d 327, 334 (1st Cir. 2015) ("[T]he general rule for recovery for breach of contract actions under Massachusetts law [is] 'expectation damages,' wherein 'the wronged party [is] . . . placed in the same position as if the contract had been performed.'"). In other words, contract damages are compensatory rather than punitive in nature. As the Award notes, the breach of contract damages award in this case is intended to "provide PIC with what it would have received under terms that gave Sylvania unlimited licenses without an attribution obligation." *See* Award at 75.

      In OSI-452, PIC states that "PIC's industry standard licensing fee structure" would require a payment of $10.8 million over the next six years based on PIC's estimate that Sylvania would spend $600,000 per year on photography over that same time period. However, in that very same document PIC offers to accept $6,480,000 in return for unlimited licenses over that same time period (calculated by applying an 80% surcharge to Sylvania's projected photography needs over the next six years).

      Thus, the Award's starting point in its contract damages award is a figure that PIC itself disclaimed as the appropriate amount to charge Sylvania for an unlimited license. In that document

Bernard J. Bonn III
December 1, 2017
Page 2


PIC agreed to accept $6,480,000 in return for unlimited licenses and, we respectfully submit, that is the correct starting point for the contract damages calculation. Stated differently, PIC's expectations as set forth in OSI-452 are for professional fees in the total amount of $6,480,000, not $10.8 million.

Starting with the $10.8 million figure gives PIC far more than it could reasonably have expected to receive for unlimited license grants containing no attribution requirement. The following side by side comparison illustrates the extent of that windfall:

| **Calculation with $10.8 million as starting point** | **Calculation with $6,480,000 as starting point** |
|---|---|
| $10,800,000 (professional fees) | $6,480,000 (professional fees) |
| + $3,000,000 (royalty) | + $3,000,000 (royalty) |
| = $13,800,000 | = $9,480,000 |
| − $6,600,000 (payments by OSI to date) | − $6,600,000 (payments by OSI to date) |
| = $7,200,000 (total due) | = $2,880,000 (total due) |
| $8,752,950.22 (total due with CPI adjustment) | $3,501,180.09 (total due with CPI adjustment) |

Accordingly, Sylvania respectfully submits that the correct contract-based damages figure under the Award (insomuch as it relates to attribution) should be $3,501,180.09, not $8,752,950.22. Correcting this computational error tracks the contract analysis in the Award and does not change or re-determine the merits of any claim already decided. *See* AAA Rules, R-50.

We stand ready to discuss further should it be helpful to do so.

Respectfully submitted,

Joseph Petersen

Attachment

cc:   Gary Cruciani, Esq.
      Robert Allen, Esq.
      Charles Fowler, Esq.

Message

**From**: Paul Kevin Picone [picorp@comcast.net]
**Sent**: 3/15/2006 12:22:53 PM
**To**: Colotti, Mike .(HQ) [/O=SYLVANIA/OU=OSI/CN=RECIPIENTS/CN=COLOTTI]
**Subject**: Note to Mike
**Attachments**: Note to Collotti 1.pdf

Mike,

I attached a new document eliminating the weekend rate, this rate never applied to any invoices for OSI projects.

Best,

Paul

OSI Exhibit

OSI-452

CONFIDENTIAL

OSI00088981

OSI-452.0001

Dear Mike,

I was pleased with yesterday's meeting. I am glad that your team, particularly John Mitchell, had a chance to ask a number of questions to ensure that Sylvania, PIC, and our counsel all understand one another. It was a constructive session.

As I mentioned yesterday, one of the problems we encountered with Gillette was the lack of any opportunity to engage in an early dialogue. It was not until our mediation, just before trial (and after a lot of heavy litigation), that I sat face-to-face with a business decision-maker on the other side. That changed everything, and we were able to resolve the case. I am hopeful that the good-faith discussions Sylvania and PIC are now having will likewise enable us to resolve our issues on a business basis.

In order to move things along, I committed yesterday to provide you with a proposal that you could take to senior management. As we discussed at the meeting, there are two components to a workable deal: (1) compensation for past infringement, and (2) an arrangement going forward in which Sylvania will get unlimited rights to use all images so that this problem never recurs.

As discussed in the meeting, the amount owed to PIC for past uses outside the licensed scope is well over $10 million. I am ready to make a significant concession on that amount in the context of an overall agreement.

Regarding the second issue, PIC would ordinarily charge 300% of the fee price for unlimited rights to use its images. On this issue, as well, I am ready to make a significant concession in the context of an overall agreement.

While I am ready to make concessions in the interest of achieving an agreement, it goes without saying that the arrangement must be fair and reasonable to PIC.

As George Atkins noted yesterday, the payment for the past can influence the arrangement in the future, and vice versa. The following proposal sets forth one way to resolve all issues in a "package deal." I am open to other suggestions, but this provides a basic framework for Sylvania's consideration.

(1) Payment by Sylvania of $6 million to settle PIC's claims for past infringement <u>and</u> obtain a paid-up license to continue using all previously-provided PIC images.

> This would give Sylvania a "clean slate" with respect to all past <u>and future</u> uses of every image that PIC has provided to date.

(2) Going forward, Sylvania would pay an 80% surcharge over PIC's standard professional fees (no surcharge would be imposed on costs), in return for which it would be granted an unlimited license to use the images worldwide, in any medium, and for unlimited time. The contract would be for a six-year term, and would include a monthly retainer for professional fees, as discussed.

CONFIDENTIAL

OSI00088982

OSI-452.0002

The following table shows PIC's existing fee structure for a one-year U.S.-only license, and compares this to the proposed fee structure for unlimited licenses going forward.

|  | Existing Fee (one-year U.S.-only license) | Proposed Fee (unlimited license) |
| --- | --- | --- |
| Paul's Day Rate In-Studio | $2,900 | $5,220 |
| Paul's Day Rate On-Location | $4,500 | $8,100 |

Professional fees and costs would be indexed strictly by an objective benchmark such as the Consumer Price Index. Thus, Sylvania would know, exactly, the rates that it will be paying for photography over the next six years.

The above arrangement leaves a lot money on the table for PIC. It represents a concession of well over $4 million by PIC on the outstanding amounts for past uses.

It also represents a concession of at least the same amount on the going-forward numbers. Assuming, conservatively, that Sylvania were to spend about $600,000 per year on photography fees over the next six years, that comes to a total of $3.6 million. Tripling that number for unlimited licenses, under PIC's industry standard licensing fee structure, would require a payment of $10.8 million over the 6-year period. Cutting that number down to an 80% surcharge means that Sylvania will pay under $6.5 million – a savings of over $4 million. Because the license extension would be a blanket one, Sylvania would not have to spend time and money tracking its usage, and would have the peace of mind that it will never run into this problem again.

Should the above arrangement be acceptable to Sylvania, I can also be flexible with regard to how the settlement amount for past uses is paid.

I look forward to hearing from you in response to this proposal.

Paul Kevin Picone
President, PI Corp.

CONFIDENTIAL