# Exhibit C

# AMERICAN ARBITRATION ASSOCIATION

| | |
|---|---|
| OSRAM SYLVANIA, INC., | |
| Claimant, | |
| *v.* | |
| PHOTOGRAPHIC ILLUSTRATORS CORPORATION, | |
| Respondent/Counter/Claimant And Third-Party Claimant, | Case No. 01-16-0000-2652 |
| *v.* | |
| BROOK ELECTRICAL SUPPLY COMPANY; CAPITAL LIGHTING & SUPPLY, LLC d/b/a CAPITALTRISTATE; FACILITY SOLUTIONS GROUP, INC.; FROST ELECTRIC SUPPLY CO. d/b/a FROSTELECTRIC.COM; STUART C. IRBY COMPANY d/b/a IRBY.COM; McNAUGHTON-McKAY ELECTRIC CO.; And TRADE SERVICE CO., LLC, | |
| Third-Party Respondents. | |

## PHOTOGRAPHIC ILLUSTRATORS CORPORATION'S OPPOSITION TO OSI AND THIRD-PARTY RESPONDENTS' APPLICATION FOR ATTORNEYS' FEES AND COSTS

## INTRODUCTION

Osram Sylvania Inc.'s and the Customer Respondents' (collectively, "OSI") Application For Attorneys' Fees and Costs ("Application") fails to meet their burden of proving they are entitled to recover *any* fees or cost. While PIC is entitled to a mandatory award of attorneys' fees as the prevailing party on the breach-of-contract claim (*see* Award at 85-86), under the Copyright Act, it is within the court's discretion whether to award attorneys' fees to the prevailing party. 17 U.S.C. § 505. As the Supreme Court recently confirmed, the central question in making that determination is whether PIC's copyright claims were "objectively reasonable." *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016). Here, the findings and conclusions in the Award that the Arbitrator has already entered on the merits effectively forecloses OSI's claim for attorneys' fees.

In its Application, OSI urges that PIC's claims were objectively unreasonable in two ways. First, it contends that the federal court copyright claims that PIC pursued against OSI's customers were objectively unreasonable. OSI App. at 2, 13, 14. But, the Arbitrator has already found in PIC's favor by dismissing the six causes of action that OSI asserted against PIC based upon PIC's copyright lawsuits against OSI's customers and has found PIC's actions to be *not* "frivolous or in bad faith" and, in fact, to have been precipitated by "Sylvania's breach of contract." Award at 86-87. Second, OSI asserts that PIC's copyright claims against OSI were "objectively weak." OSI App. at 14-15. But, the Arbitrator expressly held that "PIC had a good faith basis to pursue its copyright claims." Award at 86. This finding is fatal to OSI's contention that PIC did not have an objectively reasonable basis to pursue its copyright claims.

In addition to the Arbitrator's findings, it must be remembered that OSI initiated this lawsuit and had all six of its claims dismissed while PIC countersued and was awarded nearly $9.6 million on breach-of-contract claims that were inextricably interwoven with its copyright

1

claims. Thus, the present case is a textbook example of a case in which a prevailing party on the copyright claim should not be awarded its attorneys' fees. And, OSI cites no case in which a defendant who has prevailed on the plaintiff's copyright claims that would remotely support an award of attorneys' fees to OSI.

Further, according to OSI's own expert, Professor Nimmer, OSI cannot recover its attorneys' fees under the Copyright Act as the prevailing party in an arbitration. Section 505 provides that "the *court* in its discretion may allow the recovery of full costs by or against any party …." Nimmer construes this to mean that attorneys' fees under the Copyright Act may not be awarded in an arbitration. "***Absent convincing reasons to consider the arbitration panel as the 'court' that Congress had in mind, it would seem to lack the ability, without more, to award fees to [the prevailing party]***." *See* 5-14 Nimmer on Copyright § 14.10[B][1][c]. Of course, OSI has promoted Professor Nimmer as the world's foremost authority on copyright law, so it goes without saying the Professor Nimmer's views on this subject should be afforded great weight.

Even assuming that OSI could establish a legal entitlement to recover any attorneys' fees (it can't), the question then becomes what would constitute a reasonable fee under the circumstances. Under applicable law, OSI would be limited to its attorneys' fees incurred in defense of solely PIC's copyright claims. However, nearly all of OSI's attorney time was spent in attempting to prove that OSI's conduct was not a breach of the license agreement because, for example, PIC allegedly failed to provide its images to OSI with copyright notices or that it was not reasonably possible and practical for OSI and its customers to use PIC's copyright notices. These type evidentiary issues were equally applicable to PIC's breach-of-contract and copyright claims, and the Arbitrator ruled in PIC's favor on all the factual issues showing that OSI and its

2

customers failed to honor the attribution provision in the License Agreement. *See* Award at 19-50.

That OSI's conduct was deemed a breach of a covenant rather than a condition does not change the fact that the bulk of OSI's attorney time was spent challenging PIC's evidence and arguments that OSI had violated the terms of the License Agreement – which the Arbitrator found that it did. A very small percentage of OSI's attorney time would have related to the one copyright issue upon which OSI prevailed; namely, the legal briefing associated with the "covenant versus condition" issue. Effectively, the time spent by OSI's legal team would not have looked much different had PIC solely brought its breach of contract claims and not its copyright and DMCA claims.  Further, it was OSI's burden to allocate the time spent solely on the copyright claims, which it has not done or even attempted to do.  Further, PIC was also victorious on each of the six causes of action that OSI brought against PIC, and OSI likewise has failed to account for the time it spent in its unsuccessful prosecution of its claims. Given OSI's abject failure to allocate time to those discrete issues upon which it prevailed,  OSI's fee request should likewise be rejected due to a failure of proof.

OSI also seeks to recover its costs. For many of the same reasons that the Arbitrator should deny OSI's request for attorneys' fees, it should deny its request for costs. Moreover, virtually all the costs that OSI seeks to recover, such as expert witness fees, are simply unavailable as a matter of law to a prevailing party under the Copyright Act. In addition, even as to the limited categories of costs that are legally recoverable, OSI has failed to provide the necessary evidentiary support to recover even these costs.

I.   **THE ARBITRATOR SHOULD EXERCISE HIS DISCRETION IN DENYING OSI'S REQUEST FOR ATTORNEYS' FEES**

   A.   **OSI Is Not Entitled To Recover Any Attorneys' Fees**

      1.   **The Supreme Court's "objectively reasonable" framework.**

The Copyright Act provides:   "In any civil action under this title, the court *in its discretion* may . . . award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505 (emphasis added).  Here, PIC had a good faith basis to pursue its copyright claims, which were objectively reasonable, not frivolous and brought with the motivation of protecting its copyrights—all factors the U.S. Supreme Court has instructed courts to review in determining whether attorneys' fees should be awarded.  *See Fogerty v. Fantasy*, 510 U.S. 517 (1994). While there is no "precise rule or formula" to when attorneys' fees should be awarded, *Fogerty*, 510 U.S. at 517, the U.S. Supreme Court has placed two restrictions on that authority. First, a court may not award attorneys' fees "as a matter of course;" rather, it must make a more particularized, case-by-case assessment.  *Id.* at 533.  Second, a court may not treat prevailing plaintiffs and prevailing defendants differently.  *Id.* at 527.  The U.S. Supreme Court also established several non-exclusive factors for courts to consider:   "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.* at 534 n.19.

Recently, the U.S. Supreme Court revisited these factors and confirmed that a court should "give 'substantial weight' to the reasonableness of a losing party's litigation positions while also considering other relevant circumstances."  *Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S. Ct. 1979, 1989 (2016).  Based on *Kirtsaeng* and other cases, Nimmer concludes that there are only three factors that a court should consider when determining an attorneys' fee motion: "courts should consider the three factors relating to the losing party's objective unreasonableness in asserting its claim or defense; its bad faith motivation in urging that claim or defense; and how

4

it comported itself during the litigation process. (The other factors that have been mooted ultimately did not gain traction.)"  4 Nimmer on Copyright § 14.10[D][6][a].  OSI has failed to present any evidence that PIC was objectively unreasonable in asserting its copyright claims, PIC had a bad faith motivation in urging those claims or that PIC committed any type of litigation abuse.  Indeed, the Arbitrator's findings all yield the opposite conclusion. *See* Award at 86-87.

Further, in contrast to the discretionary nature, subject to these factors, in awarding attorneys' fees under Section 505, OSI implies that it is automatically entitled to fees. Application p. 1 ("Parties that successfully defend against copyright claims are routinely awarded attorneys' fees.")  That is false—there is nothing "routine" about any party being awarded attorneys' fees under the Copyright Act.  As the U.S. Supreme Court made clear, "a court may not award attorneys' fees as a matter of course."  *Kirtsaeng*, 136 S. Ct. at 1985.  In fact, even after his victory at the Supreme Court, Kirtsaeng was denied attorneys' fees on remand. *John Wiley & Sons, Inc. v. Kirtsaeng*, 2016 U.S. Dist. LEXIS 176981, at *8 (S.D.N.Y. Dec. 21, 2016).  Nor do courts "routinely" award attorneys' fees to a great majority of prevailing defendants.  In the 15 years prior to *Kirtsaeng*, for example, only 53% of prevailing defendants in the Second Circuit were awarded attorneys' fees.  *Id.* at 1988 n.3.  *See, e.g., Airframe Sys. v. L-3 Communs. Corp.*, 658 F.3d 100, 110 (1st Cir. 2011) (The district court denied defendant's motion for attorneys' fees because it did "not consider Airframe's claims to have been frivolous, improperly motivated, or objectively unreasonable, and it further emphasized that the 'contentious nature' and 'reasonably swift resolution' of the case weighed against a fees award.").

Since *Kirtsaeng*, there have been ten district court decisions in the First and Second Circuit, deciding whether to award attorneys' fees under the Copyright Act. [1]  Five awarded attorneys' fees and five did not. An analysis of these decisions demonstrates that the present case fits well within those decisions denying attorneys' fees while the decisions granting attorneys' fees bear no resemblance to the facts or issues in the present case. The five decisions denying attorneys' fees under the Copyright Act are the following:

- *BWP Media USA Inc. v. Polyvore, Inc.*, 2016 U.S. Dist. LEXIS 92121, at *27 (S.D.N.Y. July 15, 2016) (Defendant's motion for summary judgment granted but its request for attorneys' fees is denied.  "Although the Court disagrees with Plaintiffs on the merits, it does not construe their arguments as being objectively unreasonable or frivolous.  It is undisputed that more than 75 photographs owned by Plaintiffs appeared on Polyvore's website without permission. Moreover, the Court denied Polyvore's motion to dismiss this action, as Plaintiffs' claims were plausible when this case was filed.  Plaintiffs' 'inability to substantiate any of [their] allegations . . . does not as a matter of law require an award of fees.'").

- *BWP Media USA Inc. v. Mishka NYC LLC*, 2016 U.S. Dist. LEXIS 179976, at *6 (E.D.N.Y. Dec. 28, 2016) and 2017 U.S. Dist. LEXIS 34794 (E.D.N.Y. Mar. 3, 2017) (Plaintiff's motion for attorneys' fees denied because defendant's litigation position was not objectively unreasonable.).

- *Tufamerica, Inc. v. Codigo Music LLC*, 2017 U.S. Dist. LEXIS 128054, at *27-28 (S.D.N.Y. Aug. 11, 2017) (Defendant's motion for attorneys' fees denied because of the complexity of the claims and the significant number of factual disputes remaining after summary judgment).

- *Mallon v. Marshall*, 2017 U.S. Dist. LEXIS 119369, at *3-4 (D. Mass. July 31, 2017) (Defendant's motion for attorneys' fees denied because plaintiff's legal position was objectively reasonable, not brought in bad faith and there was no issue of deterrence).

- *Creazioni Artistiche Musicali, S. R. L. v. Carlin Am., Inc.*, 2017 U.S. Dist. LEXIS 124082, at *5-6, *9-10, *12-14 (S.D.N.Y. Aug. 4, 2017) (Defendant's motion for attorneys' fees denied because plaintiff's claims were objectively reasonable, not frivolous, not brought through improper motivation, and there was no rationale for compensating defendants, especially since defendants are large companies "presumably possessing the resources and incentives to litigate such claims" and since granting fees would not further the Copyright Act's fundamental goal of "enriching the general public through access to creative works.")

---

[1] Based on a Lexis search conducted during the preparation of this brief.

The five decisions granting, at least in part, attorneys' fees are the following:

- *TCA TV Corp. v. McCollum*, 2017 U.S. Dist. LEXIS 86138, at *28 (S.D.N.Y. June 5, 2017) (Defendant's motion for attorneys' fees granted because plaintiffs never had standing to commence a copyright infringement action, with the Second Circuit calling plaintiffs' position "meritless" and "implausible.")

- *Kali Konangataa v. ABC*, 2017 U.S. Dist. LEXIS 95812, at *4 (S.D.N.Y. June 21, 2017) (Defendant's motion for attorneys' fees granted because plaintiff's claim was not reasonable:  "Here, no reasonable lawyer with any familiarity with the law of copyright could have thought that the fleeting and minimal uses, in the context of news reporting and social commentary, that these defendants made of tiny portions of the 45-minute Video was anything but fair.")

- *Schleifer v. Berns*, 2017 U.S. Dist. LEXIS 112391, at *17 (E.D.N.Y. July 19, 2017) (Defendant's motion to dismiss and for attorneys' fees granted because plaintiff's claims were either frivolous or objectively unreasonable:  "No reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research, would have filed this complaint. If plaintiff's attorneys did not do the requisite research when filing the complaint, surely they should have recognized the absence of merit when preparing the opposition to the motion to dismiss. Despite seeing no supporting case law, plaintiff's attorneys forged onward.")

- *ACEMLA de P.R., Inc. v. Banco Popular de P.R., Inc.*, 2017 U.S. Dist. LEXIS 119130, at *10 (D.P.R. July 26, 2017) (Defendant's motion for attorneys' fees granted because plaintiff's position was unreasonable and the court needed to deter plaintiff.  Ten of the 12 copyright claims were clearly time barred and the other two were precluded by res judicata and collateral estoppel.).

- *Manhattan Review LLC v. Yun*, 2017 U.S. Dist. LEXIS 155508, at *1-2, *17-18 (S.D.N.Y. Sep. 21, 2017) (Defendant's motion for attorneys' fees granted in part because plaintiff's claims were frivolous and filed without a valid registration, and plaintiff lacked the capacity to sue: The claims "should not have been filed because it was barred by a prior state court decision.")

Post-*Kirtsaeng*, these ten cases represent the practical application of the factors that courts consider when deciding whether to award attorneys' fees under the Copyright Act.  When the losing party made objectively reasonable claims, the courts denied the prevailing party attorneys' fees, and conversely when the losing party made objectively unreasonable claims, the court granted the prevailing party attorneys' fees.  And where the courts granted fees, they did so when the losing party exhibited egregious behavior:  (1) plaintiffs' position "meritless" and

7

"implausible," *TCA TV Corp.*, 2017 U.S. Dist. LEXIS 86138, at *28; (2) "no reasonable lawyer with any familiarity with the law of copyright" would have brought the claims, *Kali Konangataa,* 2017 U.S. Dist. LEXIS 95812, at *4; (3) "No reasonable copyright attorney, or even an attorney who had devoted 20 minutes to legal research, would have filed this complaint," *Schleifer,* 2017 U.S. Dist. LEXIS 112391, at *17; (4) claims clearly time barred or precluded from being brought, *ACEMLA de P.R., Inc.,* 2017 U.S. Dist. LEXIS 119130, at *10; and (5) claims were frivolous and "should not have been filed," *Manhattan Review*, 2017 U.S. Dist. LEXIS 155508, at *1-2.  In contrast to the circumstances in which these courts have granted attorneys' fees, OSI points to no egregious conduct by PIC that would justify an award of attorneys' fees.

### B.     PIC's Copyright Claims were Objectively Reasonable.

The heart of the analysis is whether PIC's claims were objectively reasonable. As noted, the Arbitrator has already de facto decided this issue in PIC's favor. The Arbitrator has already found "PIC had a good faith basis to pursue its copyright claims" and further finding that "[a]though PIC failed to recover on the copyright claims, I cannot say that its actions were frivolous or in bad faith. After all, it was Sylvania's breach of contract that created the claims." Award at 86-87.

OSI is well aware that the Arbitrator's finding that PIC prosecuted its claims in good faith dooms its claims and attempts to proactively address this point, but does so via a nonsensical argument.  OSI states:

> We anticipate that PIC will respond that the Arbitrator's statement that PIC "had a good faith basis to pursue its copyright claims" (Final Award at 86) insulates it from an award of fees under the Copyright Act. However, in *Kirtsaeng*, the Court made clear that a court should evaluate a plaintiff's *entire course of conduct* in enforcing its purported copyright and that an award of fees may be appropriate "even if the losing positions was reasonable *in a particular case. Kirtsaeng*, 136 S. Ct. at 1989 (emphasis added). PIC's election to sue Sylvania customers over the course of years for copyright infringement rather than test its claims in

> contract against Sylvania is the quintessence of objectively unreasonable conduct
> warranting an award of attorneys' fees.

OSI App. at 14, n. 23.

So while OSI acknowledges the obvious import of the Arbitrator's finding of "good faith," OSI argues that PIC was "objectively unreasonable" in pursuing its federal court lawsuits against OSI's customers. However, OSI fails to note that this Arbitrator has already rejected each of OSI's six causes of action against PIC that were all based upon alleged wrongdoing by PIC in suing OSI's customers. As the Arbitrator concluded in dismissing each of OSI's claims:

> Sylvania asserted six (6) claims, *all of which seem to stem from PIC's actions in suing Sylvania's customers and pursuing copyright claims that Sylvania argues were without merit*. Although PIC failed to recover on the copyright claims, *I cannot say that its actions were frivolous or in bad faith*. After all, it was Sylvania's breach of contract that created the claims. Accordingly, I dismiss Sylvania's claims.

Award at 86-87. OSI never acknowledges this ruling by the Arbitrator in dismissing each of its claims and finding that PIC did not act frivolously or in bad faith in suing OSI's customers. The Arbitrators' express findings in dismissing OSI's claims predicated on PIC's alleged wrongful conduct in suing OSI's customers defeats OSI's mere lawyer-argument that PIC was supposedly "objectively unreasonable" in having sued OSI's customers.

OSI eschews any serious analysis of applicable law and essentially argues that because it successfully defended PIC's copyright claims, those claims must be viewed as objectively unreasonable. But ultimate success does not determine the reasonableness of the claims. *Christiansburg Garment Co. v. Equal Emp't Opportunity Comm'n*, 434 U.S. 412, 421-22 (1978) ("it is important that a district court resist the understandable temptation to engage in post hoc reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable"); *see also DC Comics v. Pacific Pictures Corp*., 2013 U.S. Dist. LEXIS 49119, at *13 (C.D. Cal. April 4, 2013) (denying attorney's fees under the Copyright Act

9

because the losing defendant's position was reasonable: "Though Defendants did not ultimately prevail, their argument rested on several different primary and secondary authorities. Litigants are given broad latitude to advocate their positions, so long as they comport with Rule 11.").

"'Objective unreasonableness' is generally used to describe claims that have no legal or factual support." *Creazioni*, 2017 U.S. Dist. LEXIS 124082, at *5 (internal citation omitted); *see also Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) ("A copyright infringement claim is objectively unreasonable when the claim is clearly without merit or otherwise patently devoid of legal or factual basis."). The fact that a court ultimately disagreed with a plaintiff's position is not enough: "the question is not whether there was a sufficient basis for judgment in favor of defendants, but whether the factual and legal support for plaintiff's position was so lacking as to render its claim . . . objectively unreasonable." *Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 2004 U.S. Dist. LEXIS 5648 at *8 (S.D.N.Y. Apr. 6, 2004) (internal citations omitted); *see also Pearson Educ., Inc. v. Liu*, 2013 U.S. Dist. LEXIS 182648, at *8 (S.D.N.Y. Dec. 27, 2013) ("Indeed, while defendant is correct that plaintiffs' position was ultimately untenable, it is not the case that it was objectively unreasonable from the outset."); *Silberstein v. Fox Entm't Group, Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2009) ("only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable.").

Here, PIC established its *prima facie* case for copyright infringement by proving (1) ownership of its copyrights in the PIC Images; and (2) copying of constituent elements of the PIC Images. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). In fact, OSI did not dispute either of those elements. *See, e.g., Polyvore, Inc.,* 2016 U.S. Dist. LEXIS 92121, at *27 (S.D.N.Y. July 15, 2016) ("It is undisputed that more than 75 photographs owned by Plaintiffs appeared on Polyvore's website without permission.").

Earlier in the arbitration, OSI brought a summary judgment motion, arguing that PIC could not prove as a matter of law that OSI could be secondarily liable for copyright infringement.  *See* Petersen correspondence dated April 27, 2017, May 12, 2017 and Cruciani correspondence dated May 9, 2017, May 15, 2017, May 19, 2017.  That motion was denied by the Arbitrator on May 27, 2017.  Claims that make it to trial are generally considered objectively reasonable.  *VMG Salsoul v. Ciccone*, 824 F.3d 871, 887 (9th Cir. 2016) ("If a plaintiff has a claim that hinges on disputed facts sufficient to reach a jury, that claim necessarily is reasonable because a jury might decide the case in the plaintiff's favor."); *Erickson Prods. Inc. v. Kast,* 2016 U.S. Dist. LEXIS 96113, at *5 (N.D. Cal. July 22, 2016) (plaintiff's claim was not objectively unreasonable where court denied motions for summary judgment); *Penguin Books U.S.A.*, 2004 U.S. Dist. LEXIS 5648, at *8-9 (holding that plaintiffs' claims were objectively reasonable, especially where plaintiffs established a prima facie case, withstood summary judgment, and proceeded to trial).

PIC did not prevail on the copyright claims solely because the Arbitrator ruled that the attribution provision was a covenant as opposed to a condition of the license.  The Arbitrator, however, did find that OSI breached the attribution provision of the License Agreement, that it was reasonably possible and practical to include PIC's attribution, and that OSI was liable for its customers' failure to abide by it.  In so holding, PIC prevailed on its alternative theory that OSI's violation of the attribution provision was a breach of the License Agreement.  Whether OSI's conduct constituted copyright infringement or breach of contract came down to the esoteric and unsettled area of law regarding covenants versus conditions.  With no binding authority in the First Circuit and conflicting case law throughout the country, it was objectively reasonable for PIC to include both theories of liability for the same offensive conduct.  *See Effie Film, LLC v. Pomerance*, 2013 U.S. Dist. LEXIS 58813, at *7 (S.D.N.Y. Apr. 24, 2013) (denying attorneys'

fees to a prevailing copyright plaintiff because "it can hardly be said that the law in this field was well settled when this litigation began"); *Earth Flag Ltd. v. Alamo Flag Co*., 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001) ("A court should not award attorneys' fees where the case is novel or close because such a litigation clarifies the boundaries of copyright law.").

Additionally, OSI cites no authority for the proposition that a plaintiff who pleads copyright infringement in the alternative to a breach-of-contract claim should be required to pay attorneys' fees under the Copyright Act, where the plaintiff succeeded on the breach-of-contract claim. OSI cites *T-Peg, Inc. v. Vt. Timber Works, Inc.* as being analogous to this case. 69 F.3d 59, 62 (1st Cir. 2012). But the *T-Peg* plaintiff only sued for copyright infringement, alleging that the defendant had copied plaintiff's architectural plans. A jury found that the plans were not substantially similar and the defendant was awarded partial attorneys' fees. There was no contract in dispute. Consequently, *T-Peg* is not analogous here and certainly does not support OSI's contention that "[s]everal of the First Circuit's cases (like this one) reside at the intersection of copyright law, contract law, and an 'overly aggressive' plaintiff." OSI App. at 11. Similarly, contrary to OSI's assertion, *Garcia-Goyco v. Law Envtl. Consultants, Inc.* has nothing to do with the intersection of copyright law and contract law. 275 F. Supp. 2d 142, 154 (D.P.R. 2003). There, the district court granted the defendant's motion for summary judgment on the plaintiff's copyright claim without any analysis of defendant's breach-of-contract claim, and dismissed defendant's breach-of-contract claim, without prejudice, for lack of subject matter jurisdiction. And while the plaintiff in *InvesSys, Inc. v. McGraw-Hill Cos., Ltd.* did sue for both copyright infringement and breach of contract, that case is inapposite because the plaintiff *lost* on both claims. *See InvesSys, Inc. v. McGraw-Hill Cos.*, Case No. 01-cv-12048-GAO (D. Mass.), Judgment in a Civil Case (Dkt. No. 43).

12

OSI purports to cite cases where a court has found that a plaintiff's copyright claims were objectively reasonable but still awarded a defendant attorney's fees.  But, those cases either do not say what OSI claims that they do, or OSI fails to provide the complete rationale of the court's decision.  OSI cites *Matthew v. Freedman* and implies that the court found that the plaintiff's claims objectively reasonable. 157 F.3d 25 (1st Cir. 1998).  But the court found instead that plaintiff's claims were objectively *unreasonable* in arguing "for an unreasonable extension of copyright protection."  *Id*. at 29. OSI also misapplies *Edwards v. Red Farm Studio Co.*, where the First Circuit had "reversed the denial of attorney's fees to a prevailing defendant because the district court had required a showing of bad faith or frivolousness." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 73 (1st Cir. 1998) (discussing *Edwards*).  In *Edwards,* attorneys' fees were awarded to defendant because plaintiff's claim was "inescapably *highly unreasonable, if not frivolous*."  109 F.3d 80, 83 (1st Cir. 1997).

Finally, despite the extensive analysis OSI provides to *InvesSys, Inc. v. McGraw-Hill Cos., Ltd.,* including its argument that "the same factors that warranted an award of fees and costs in *InvesSys* and *Garcia*-Goyco are found here" (OSI App. at 13), OSI conveniently fails to mention that the district court had found that the plaintiffs' claim was objectively unreasonable. 2003 U.S. Dist. LEXIS 3591, at *5-6 (D. Mass. Mar. 12, 2003) ("In light of the sum of the evidence at trial, I have no difficulty in concluding that the plaintiffs' assertion . . . was, as a factual matter, *objectively unreasonable*."), aff'd, 369 F.3d 16 (1st Cir. 2004).  Accordingly, none of these cases cited by OSI support its argument that prevailing defendants have still been awarded attorneys' fees despite the court having concluded that the claims were objectively reasonable.

**C.** **PIC Had A Good Faith Motive In Asserting Its Copyright Claims as the Arbitrator Has Already Found.**

One of the relevant factors is whether a plaintiff had a bad faith motive in filing its copyright claims. This factor can be summarily disposed of because the recognizes that "PIC had a good faith basis to pursue its copyright claims" and that PIC's actions were not "frivolous or in bad faith."  Award pp. 86-87.

The Arbitrator's finding of PIC's good faith was supported by abundant evidence at the hearing, including the undisputed testimony that PIC had a good faith belief that its copyrights were being infringed, that Mr. Picone strove diligently throughout his career to protect his copyrights, and that paragraph 18 of the icense agreement itself confirmed that PIC had the right to enforce its copyrights against third parties.  "It goes without saying that protection of one's copyright constitutes a permissible motivation in filing a copyright infringement case against one whom the copyright holder believes in good faith to have infringed the copyright." *Luken v. Int'l Yacht Council, Ltd.,* 581 F. Supp. 2d 1226, 1245 (S.D. Fla. 2008). The mere fact that PIC asserted copyright claims that ultimately did not prevail does not evidence bad faith or an improper motive. *Kirtsaeng*, 2016 U.S. Dist. LEXIS 176981, at *7-8 ("Wiley's decision to file and its pursuit of the copyright infringement action against one whom it believed in good faith to have infringed its copyright did not constitute either bad faith or suggest an impermissible motive.  '[C]opyright law celebrates the profit motive, recognizing that the incentive to profit from the exploitation of copyrights will redound to the public benefit by resulting in the proliferation of knowledge.'"  (quoting *Eldred v. Ashcroft*, 537 U.S. 186, 212 n.18 (2003)).

As the First Circuit has stated, "it would be quixotic … to infer bad faith from the mere fact that the plaintiffs chose to sue and lost." *Estate of Hevia v. Portrio Corp.*, 602 F.3d 34, 46 (1st Cir. 2010) (denying fees); *see also Silverstein v. Penguin Putnam, Inc.,* 2008 U.S. Dist.

LEXIS 19479, at *11 (S.D.N.Y. Mar. 13, 2008) ("the Court has no reason to doubt that, throughout the litigation, Silverstein sincerely believed that his book was entitled to copyright protection and pursued his claim for the purpose of vindicating his rights.  This factor weighs against awarding cost and attorneys' fees against him."); *Effie Film,* 2013 U.S. Dist. LEXIS 58813, at *7 (same).  Accordingly, PIC's good faith belief in its copyright claims weighs against awarding attorneys' fees against it.

### D.    PIC Did Not Commit Any Litigation Abuse.

OSI contends that PIC was overaggressive in asserting its copyright claims, but offers little authority on what that means and even less evidence to support it.  For example, OSI includes a citation by the U.S. Supreme Court to *Bridgeport Music, Inc. v. WB Music Corp.*, but in that case, the prevailing defendant was entitled to a *partial* award of fees because although plaintiff's theory was initially objectively reasonable, its pursuit of its claims after it became clear that it could not prevail "was patently futile and thus factually (if not legally) frivolous." 520 F.3d 588, 592-93 (6th Cir. 2008).

The only cases OSI cites to establish a standard for the overaggressive assertion of copyright claims are *T-Peg* and *Garcia-Goyco*.  But the prevailing defendant in *T-Peg* sought over $200,000 in attorneys' fees on a case involving only $66,000 in damages.  The court affirmed the award of attorneys' fees to deter plaintiffs "from litigating in a manner greatly disproportional to the matters at stake," but only awarded $35,000.  *T-Peg*, 669 F.3d at 64.  And in *Garcia-Goyco*, the plaintiff sued the defendant in federal court for copyright infringement and breach of contract, but the district court had found that the plaintiff's copyright claim was brought in bad faith and therefore chastised the plaintiff for bringing his claim in federal court where it had no jurisdiction.  428 F.3d at 17-18.  Here, PIC's good faith has already been determined by the Arbitrator

In contrast, courts require a finding of bad faith, evidenced by particularly egregious acts before awarding attorneys' fees based on a party's litigation conduct. *Matthew Bender & Co. v. West Publ'g Co.*, 240 F.3d 116, 125 (2d Cir. 2001) (While holding that "bad faith in the conduct of the litigation is a valid ground for an award of fees," reversed the award of attorneys' fees because the defendant's acts, both before and during the litigation, were not in bad faith); *Silverstein,* 2008 U.S. Dist. LEXIS 19479, at *10-11 (refusing to award attorneys' fees, where most of plaintiff's conduct "was within the bounds of permissible advocacy," and other conduct, such as plaintiff's repeated and unfounded accusations against defendant of impropriety, even though reckless and uncalled for, did not constitute litigation abuse:  "such regrettable conduct during this long and acrimonious litigation was not egregious enough to warrant an award of attorney's fees, especially in light of the conclusion that Silverstein's claim was objectively reasonable.").

The court in *Yankee Candle Co. v. Bridgewater Candle Co., LLC* exemplifies the type of conduct necessary for a court to find sufficient litigation abuse to justify an award of attorneys' fees under the Copyright Act.  There, the court partially granted an award for attorneys' fees to the prevailing defendant where plaintiff's "pursuit of this litigation has served not to defend any colorable copyright or trade dress claim, but to intimidate, discourage and financially damage an upstart competitor."  140 F. Supp. 2d 111, 113-14 (D. Mass. 2001).  Plaintiff's actions included the following:  (1) filing the case without notice and without any meaningful pre-litigation attempt to resolve companies' differences; (2) the claim was not brought in an unsettled area of law, nor did it ever have a reasonable likelihood of success, as the court held early on in its denial of plaintiff's motion for a preliminary injunction; (3) plaintiff scheduled depositions on the exact day of an important trade show and refused to move the dates; (4) plaintiff prosecuted the case in an economically coercive manner; (5) plaintiff moved to take an unlimited number of

16

depositions; (6) plaintiff made discovery exceedingly difficult; (7) plaintiff refused to make 30(b)(6) witness available, forcing defendant to file motion to compel; (8) plaintiff failed to seriously consider settlement or accept mediation; and (9) plaintiff filed unnecessarily prolix and repetitive briefs—100 page summary judgment opposition and 114 page response to 10 page statement of undisputed facts. *Id.* at 116-18.  OSI cannot point to any evidence that PIC acted in bad faith or engaged in egregious conduct prior to or during the arbitration that would justify an award of attorneys' fees.

### E. An Award Is Not Justified Based Upon Any Need To Compensate OSI Or Deter PIC.

OSI has provided no evidence that it should be awarded attorneys' fees from the arbitration under the compensation and deterrence factor.  "This factor is meant to ensure that defendants are encouraged to protect their legitimate rights and bad-faith plaintiffs are discouraged from bringing frivolous and unreasonable claims." *Creazioni*, 2017 U.S. Dist. LEXIS 124082, at *12.  But since PIC's claims were not objectively unreasonable, frivolous or driven by an improper motive, this case "does not warrant the deterrent effect of fees." *Id.*; *see Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 820 F. Supp. 2d 569, 574 (S.D.N.Y. 2011) ("Compensation and deterrence may be required where a party is forced to prosecute willful infringement or defend against objectively unreasonable claims, or where a party engages in misconduct.  In those circumstances, there is an interest in disincentivizing behavior that either violates the Copyright Act or exploits it for objectively baseless litigation.  However, the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." (internal citations omitted)).  Further, when issues of unsettled copyright law, close or novel cases are litigated, there is no need for deterrence under the Copyright Act. *Lotus Dev. Corp.*, 140 F.3d at 74, 75

(First Circuit affirmed the denial of attorneys' fees to the prevailing defendant:  "when the parties are litigating a matter of some importance to the copyright laws, there is no need for deterrence" and the "copyright law benefits from the resulting clarification of the doctrine's boundaries.").

Instead, the only argument OSI makes is that "PIC evidently intends to disregard the Arbitrator's findings on its copyright infringement and DMCA claims" and that PIC should be "deterred from continuing its copyright enforcement campaign" against OSI's customers.  OSI App. at 14.  OSI's statement is based on nothing more than an email exchange between PIC's counsel and OSI's counsel after the Award was entered in which PIC's counsel did not agree to OSI's request that PIC unilaterally withdraw all pending actions and commit to bring no future actions.  *See* Petersen Decl. Ex. 1 (email exchange between Petersen and Cruciani from 11/21/17 to 11/28/17.

First, it is ironic that OSI accuses PIC of "disregarding" the Arbitrator's findings since it is OSI that has refused to accept the Arbitrator's decision and to pay PIC the damages that the Arbitrator awarded.  Thus, PIC was forced to file a motion to enforce the arbitration award. That motion was filed on December 8, 2017 in the District Court for the District of Massachusetts and has been assigned to Chief Judge Saris. See Cruciani Decl., Ex. 1 (attaching motion to enforce). Indeed, the email exchange referenced by OSI and attached as Exhibit 1 to the Peterson declaration begins with PIC's counsel writing to OSI's counsel the day after the Award was entered and asking, "Joe, let me know if OSI intends to pay the arbitration award or if PIC will need to file a motion to enforce the award." (11/11/17). OSI refused to agree to pay the award and instead forced PIC to file a motion to enforce. Thus, if any party is guilty of "disregarding" the Arbitrator's findings, it is OSI, not PIC.

McKool 1346354v4

Second, it is hardly unreasonable for PIC to refuse OSI's demand to "confess judgment" on all future copyright claims. It is OSI's request – not PIC's response – that is unreasonable. PIC's counsel at the arbitration, McKool Smith, is not counsel of record in the two pending cases and will need to enter an appearance and familiarize themselves with the specific facts of those cases.  One of the two pending cases, *Photographic Illustrators Corp. v. Orgill* ("*Orgill*") is pending before Judge Saris. In that case, Judge Saris has already denied the defendant's summary judgment on PIC's copyright claim on both the "attribution" issue and the "fee" issue in finding that "[t]here are fact disputes as to fee, attribution, and the nature of the implied license OSI granted Orgill. *Photographic Illustrators Corp. v. Orgill, Inc*., 118 F. Supp. 3d 398, 404 (D. Mass. 2015).[4] Of course, Orgill was not a party to the present arbitration, and in that case the images were distributed in the first instance from OSI to Orgill, not OSI to Trade Service. Apparently, there has been limited discovery in *Orgill* case and it remains to be determined, for example, how the images were distributed, whether Orgill received the images from OSI with the copyright notices and removed the notices or whether Orgill received the images without the copyright notices from OSI, and how exactly the fee provision was implemented by Orgill.

Ultimately, Judge Saris will determine what impact the Arbitrator's findings have in the *Orgill* case based upon the facts of that case. Of course, if OSI succeeds in opposing PIC's motion to enforce the Award, then as a matter of law the Award will be a nullity and have no legal effect. Bottom line, OSI's argument that PIC's supposed "disregard" of the Arbitrator's

---

[4] Moreover, the defendant raised the "covenant versus condition" argument, which Judge Saris declined to address because of "poor[] brief[ing]" but she did note that "[w]hile the provisions of the confirmatory sublicensing agreement are explicitly labeled covenants, is it the licensing agreement that governs the defendants' conduct, and that agreement does not term its attribution requirements 'covenants.'" *Orgill*, 118 F. Supp. 3d at 404, n.4.

findings because of PIC's refusal to unilaterally dismiss any pending claims and foreswear filing any future claims is baseless.

Even more to the point, OSI's argument has nothing whatsoever to do with its fee application.  OSI is placing the cart before the horse in complaining about conduct that has not yet occurred.  For example, if Judge Saris were to dismiss PIC's copyright claims, then Orgill could presumably seek its attorneys' fees as the prevailing party under the Copyright Act. Judge Saris would then determine whether fee-shifting is warranted. However, that would be a decision for Judge Saris, but has nothing to do with any issue related to OSI's current fee application.

But the question presented here is whether copyright owners like PIC should be deterred from bringing copyright claims like the ones brought *in this arbitration* to protect its rights. Since PIC's copyright claims in this arbitration were objectively reasonable, not frivolous and brought in good faith, the answer, according to courts addressing this issue like *Creazioni* and *Jovani Fashion,* is no.  *See King v. IM Global*, 2017 U.S. Dist. LEXIS 112651, at *10 (C.D. Cal. Jan. 25, 2017) ("Having previously determined that Plaintiff's claim was neither frivolous nor objectively unreasonable, the Court cannot conclude that Plaintiff should have been deterred from pursuing it."); *Minden Pictures, Inc. v. John Wiley & Sons, Inc*., 2014 U.S. Dist. LEXIS 60901, at *26 (N.D. Cal. 2014) ("[I]t is not the purpose of the Copyright Act to deter litigants from bringing potentially meritorious claims, even though those claims may be ultimately unsuccessful." (internal citation omitted)).

Additionally, OSI has presented no evidence that it should be compensated for its attorneys' fees.  Defense of copyright claims are a normal cost of doing business. *ZilYen, Inc. v. Rubber Mfrs. Ass'n*, 958 F. Supp. 2d 215, 222 (D.D.C. 2013) (refusing to award attorneys' fees to a prevailing defendant because "[d]efense of reasonable legal claims, under the so-called 'American rule,' is in most instances a cost of business.").  Further, OSI is a very large

20

corporation possessing the resources and incentives to litigate these claims. *Creazioni*, 2017 U.S. Dist. LEXIS 124082, at *13 ("The fact that Defendants are large music publishing companies, presumably possessing the resources and incentives to litigate such claims, also weighs against the imposition of attorney's fees in this case."); *see also Agence Fr. Presse*, 2015 U.S. Dist. LEXIS 189008, at *17 (S.D.N.Y. Mar. 23, 2015) (concluding that compensation was necessary where the victorious party was an individual and "faced the greater challenge in sustaining prolonged litigation").

### F.     Contrary to OSI's Spin, PIC Emerged The Clear Victor In This Dispute.

OSI also attempts to portray the results of the Award as a triumphant victory that somehow means it should be awarded its fees.  Yet, OSI sued PIC for millions of dollars, including a preposterous claim for RICO violations, and each claim was dismissed and OSI received nothing. PIC then counterclaimed and was awarded nearly $9.6 million dollars.  As it currently stands, OSI is $14 million worse off than it was the day before it sued PIC ($9.6 million in damage and $4.5 million in fees and costs it incurred). If that is OSI's idea of victory, one shudders to think what OSI would consider a defeat.

OSI also downplays the fact that the Award was "only" $9,600,000.  OSI suggests that it was the real victor in this case because it supposedly fended off OSI's "multi-billion dollar copyright case." *See* OSI App. at 3, 4, 15, 25. First, to be sure, PIC's copyright damages claim was substantial; however, PIC never sought a "multi-billion dollar" award from the arbitrator. Second, and more to the point, the amount of damages sought by PIC is irrelevant to OSI's fee application. Even if OSI achieved complete success in this case and the Arbitrator awarded no damages to PIC on any of its claims, that alone would not justify the award of attorneys' fees. *Bisson-Dath v. Sony Computer Entm't Am. Inc.,* 2012 U.S. Dist. LEXIS 103159, at *4-5 (N.D. Cal. July 24, 2012) (declining to award attorneys' fees even though defendants "achieved

complete success"); *Loomis v. Cornish*, 2014 WL 12586734, at *2-4 (C.D. Cal. Mar. 17, 2014) (denying prevailing defendants' motion for attorneys' fees, even though they "achieved complete success" by prevailing on summary judgment: "Denying an award for attorneys' fees and costs is consistent with the purposes of the Copyright Act" where the plaintiff did not bring objectively unreasonable claims).Not only isOSI neglects to mention that they instigated this arbitration, alleging six claims, including violating the RICO statute, 18 U.S.C. §§ 1961-68, and lost all of them.  Prevailing defendants in copyright cases who assert meritless counterclaims, are denied an award of attorneys' fees.  *Ann Howard Designs, L.P. v. Southern Frills, Inc.*, 7 F. Supp. 2d 388, 390 (S.D.N.Y. 1998) (Because defendant "went beyond defensive counterclaims, asserting every minutely colorable counterclaim conceivable as found in any body of law it could locate," the court concluded that "costs and fees accrued in that effort are its own.")

### G.  OSI's Claim That This Case Would Have Settled Long Ago But For PIC's "Copyright Infringement Claim" Is Belied By Actual Facts.

OSI claims that it is unfair to be saddled with the expenses it actually incurred because "PIC's large-scale copyright litigation campaign against Sylvania's customers, including the claims that it doggedly pursued against the Customer Respondents (first before the district court and then before the Arbitrator) was not objectively reasonable. Had PIC instead pursued breach of contract claims against Sylvania in late 2012 … that type of streamlined arbitration *undoubtedly would have settled years ago at a fraction of the expense necessitated by PIC's copyright infringement campaign*." OSI App. at 2 (emphasis added).

Paul Picone puts the lie to this assertion in his supporting declaration.  Mr. Picone recites that a settlement meeting was scheduled to be held at Wolf Greenfield's office in Boston on February 9, 2016 and that he had traveled in good faith from Florida to Boston, and paid to have his trial team present at the mediation. Picone Decl. ¶¶ 5 and 6. However, Pam Tracey, OSI's

Vice President and General Counsel began the scheduled meeting by announcing that it was not going to be a "settlement meeting" but, instead, was an "informational meeting" to inform PIC that OSI was "getting out of the lighting business. *Id.* ¶ 6.As a result, she stated that "PIC's disputes with its customers, except for the Trade Service family of cases, were unimportant because OSI did not need its customers anymore." As a result of Ms. Tracey's statement, the meeting abruptly ended.

### H.      OSI Is Only Entitled To The Reasonable Fees Spent Solely On Defending The Copyright Claims, Not The Breach-Of-Contract Claims.

OSI makes the incredible contention that even though PIC proved its breach-of-contract claim (violation of the Attribution provision of the license agreement) based on the same set of facts and evidence as its copyright claims, that OSI should nonetheless be entitled to recover 90% of all of its attorneys' fees and costs.  As courts recognize, a party "should not recover attorneys' fees for work on claims as to which he or she did not prevail." *Roggio v. Grasmuck*, 18 F. Supp. 3d 49, 56 (D. Mass. 2014).  But that is exactly for what OSI seeks.

The Arbitrator recognized that the nexus of facts and evidence for PIC's breach of contract claim and its copyright claim were basically the same since they were alternative legal theories for the same wrongful conduct.  *See* Award p. 20 ("Although much of PIC's evidence was offered in support of its copyright claims, that same evidence supports PIC's claims for breach of Para. 10.b.").  Accordingly, had PIC brought only its breach-of contract claim, OSI and the Customer Respondents would have had to expend roughly the same amount of time, effort, attorneys' fees and costs in defense.  "Congress' obvious concern in section 505 was in facilitating the assertion and defense of copyright claims – not other kinds of claims.  This is why courts implementing section 505 tend almost automatically to allocate attorney's fees and costs between copyright and non-copyright claims where this can feasibly be done, limiting recovery

to costs causally associated with the copyright claim." *InvesSys, Inc. v. McGraw-Hill Cos., Ltd.*, 369 F.3d 16, 24 (1st Cir. 2004) (plaintiff lost both his breach of contract and copyright claims, so there was no apportionment, but *only* because "the same costs would have been incurred for the [copyright claim] alone."); *see also Local 589, Amalgamated Transit Union v. Mass. Bay Transp. Auth.,* 2017 U.S. Dist. LEXIS 50558, at *3 (D. Mass. Mar. 31, 2017) ("[w]hen a plaintiff prevails on some, but not all, of multiple claims, a fee reduction may be in order."). OSI presents no authority supporting its claim that where, as here, a defendant prevailed on a copyright claim but lost on a related breach of contract claim, that defendant was entitled to attorneys' fees and costs beyond those incurred solely in connection with the copyright claim.

The courts have made clear that in submitting a fee application, "'counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary,' limit[ing] their application to time spent on their one winning claim, allocating to that quest a portion of the hours spent on overlapping matters." *Gay Officers Action League v. Puerto Rico*, 247 F.3d 288, 298-99 (1st Cir. 2001) (quoting *Hensley*, 461 U.S. at 434). OSI has made no attempt to do so. Further, OSI has made no attempt to back out the time and costs incurred in connection with its six causes of action, all of which were dismissed.

## I.      OSI Failed to Properly Document Its Attorneys' Fees.

"The court must secure from the attorneys a *full and specific* accounting of their time; bills which simply list a certain number of hours and lack such important specifics as dates and the nature of the work performed during the hour or hours in question should be refused." *Hensley*, 461 U.S. at 436 (denying all attorneys' fees or expense reimbursement to local counsel because the documentation provided was not adequate.). It is OSI's burden to establish an entitlement to an attorneys' fee award and documenting the appropriate hours expended and

hourly rates. *Id.* at 437.  And it was OSI's burden to "maintain billing time records in a manner that *will enable a reviewing court to identify distinct claims*."  *Id.* (emphasis added); *Gamma Audio & Video, Inc. v. Ean-Chea*, 11 F.3d 1106, 1118 (9th Cir. 1993) ("The district court found that the time-sheet entries submitted by Gamma's attorney's were so ambiguous that it was not clear which claims in the complaint the entries related to.  For example, the district court noted entries that stated merely 'Draft documents,' 'Work on Case,' 'Review of Discovery,' and 'study file, legal research re Mass. case.'").

Attached as Exhibit 2 to the declarations of Joe Petersen as well as the declarations of the Customer Respondents, Brad Abrams, Aaron Brodsky, Greg Chun, and John Frost are redacted attorney billing statements. As is obvious from a cursory review, these billing statements have all been redacted to an absurd degree. OSI states that it "has redacted information protected by the attorney-client privilege and /or attorney work-product doctrine. However, if the Arbitrator deems it necessary, Sylvania and the Customer Respondents will make the unredacted invoices available for the Arbitrator's in camera review while preserving all privileges." OSI App. at 20.

Both the extent of the redactions and the offer of an in camera review are improper. First, the redactions are so extensive that it is impossible to determine what tasks related to the copyright claims versus the non-copyright claims. This is critical given OSI's burden to allocate between those claims on which it prevailed versus those on which it did not. Second, an in camera production is not proper under these circumstances since PIC (not just the Arbitrator) would be entitled to review the unredacted information to determine whether or not certain entries related to the copyright claims and the reasonableness of the time reflected in those entries. An in camera review may be appropriate for an arbitrator or court to make a threshold determination whether certain information is privileged; however, it is entirely inappropriate for OSI and the Customer Respondents to ask the Arbitrator to award them fees based upon time

25

entries that PIC is foreclosed from even seeing. That would convert this arbitration into a secret, star chamber proceeding.

As submitted, none of the billing statements upon which OSI and the Customer Respondents rely  contain any information that would allow the Arbitrator to "identify distinct claims."  Nor do the submitted billing records have enough information to allow the arbitrator to make an informed analysis of OSI attorneys' time.[5]  Three random examples: (1) OSI00145407-409 has, as its only entry for 1.1 hours, "Review [redacted] and correspond with Meredith Ainbinder concerning [redacted]."; (2) OSI00146453-456 has entries like "6/8/2016 Located [redacted]; research [redacted]; Draft and send email [redacted]; 6/10/2006 Research [redacted]; 6/14/2016 Comprehensively reviewed [redacted]."; (3) OSI00170298-301 includes "8/24/2017 Continue drafting, revising [redacted] confer with J. Petersen concerning same; confer with K. Teilhaver concerning [redacted] correspondence [redacted] review [redacted] for 7.5 hours; 8/26/2017 Confer with J. Petersen concerning [redacted] for 4.2 hours; 8/28/2017 Confer with J. Petersen concerning [redacted] further analysis of [redacted] for 8.7 hours; 8/30/2017 Review [redacted] for 6.4 hours."  These represent the norm, not isolated instances, of OSI providing incomplete and unreasonable billing records, and constitute the type of billing records that courts reject when considering attorneys' fee applications.  *See, e.g., Gamma Audio & Video, Inc.*, 11 F.3d at 1118 (affirming the district court's significant reduction of the attorneys' fee award where "many of the [time-sheet] entries were extremely vague, making it virtually impossible . . . to determine whether requested hours were excessive, redundant (especially with respect to

---

[5] It is also abundantly clear from the Application and Mr. Petersen's declaration that OSI employed a small army to defend itself in the arbitration, utilizing 20 attorneys and 1 paralegal. *See* App. at 21-24. By contrast, PIC's fee application reflects time for 7 attorneys and 4 paralegals. *See* Cruciani Decl., Ex. B.  Such overstaffing by OSI is improper, and a court is permitted to reduce or deny an award of fees on this basis. *Puerto Rico*, 247 F.3d at 297 ("[A]wards under the Fees Act are not intended to serve as full employment or continuing education programs for lawyers and paralegals." (internal citation omitted)).

how New York and local counsel divided tasks), or otherwise unnecessary, as well as to parse

out attorney time and expenses related to the unsuccessful claims and [voluntarily] dismissed

portion of the case.").

Consequently, OSI's failure to submit reasonably detailed records of its attorneys' time

should result in no award at all.  *Puerto Rico*, 247 F.3d at 297 (Failure of a fee applicant to

provide time records with reasonable detail "may have deleterious consequences (such as the

slashing or disallowance of an award)."); *Roggio*, 18 F. Supp. 3d at 56 ("if a time entry includes

both recoverable costs and non-recoverable costs, and there is no clear way to segregate them,

the court may simply exclude the entire time entry.").

Nor is there any indication, either in the Application or the submitted billing records, of

how the fees were allocated between OSI and the Customer Respondents. At page 4 of the Fee

Application is a chart that purports to assign attorneys' fees among OSI and each of the

Customer Respondents with OSI seeking to recover $587,935 and the seven Customer

Respondents each seeking to recover fees ranging from a low of $365,509 to a high of

$453,334.[6]   These allocations appear to be entirely random, and OSI and the Customer

Respondents offer no evidence – nor even an explanation – to support these allocations. This is

yet another failure of proof on the part of OSI and the Customer Respondents. Without that

---

[6] OSI assumes that the term "Sylvania" in the Award equates to "Sylvania and the Customer Respondents."  But, page 87 of the Award states that "Sylvania, on the other hand, was the prevailing party on the copyright claims," and page 2 of the Award defines only Claimant Osram Sylvania, Inc. as "OSI" or "Sylvania."  If OSI or the Customer Respondents thought there was a clerical or typographical mistake in the Award with respect to whether the Customer Respondents were also the "prevailing party" under the copyright claims and that they could submit an application for their fees, they could have submitted a request pursuant to Rule 50 of the AAA Rules to modify the Award.  But they did not, and the time under Rule 50 has now passed for them to do so.  OSI does not even argue in its Application that the Third Party Respondents should also be deemed "prevailing parties" or that the Third Party Respondents had the ability to even file an application for their attorneys' fees—OSI just assumes it. Consequently, only OSI's reasonable attorneys' fees incurred solely in connection with the copyright claims should even be considered as part of the Application.

information, it is impossible for PIC to challenge the reasonableness of the allocation among OSI and the Customer Respondents and whether time spent was excessive, redundant or otherwise unnecessary.

## II.   THE ARBITRATOR SHOULD EXERCISE HIS DISCRETION IN DENYING OSI'S REQUEST FOR COSTS

### A.   OSI Is Not Entitled To Recover Any Costs; Its Claim For $1,160,549.80 Is Without Any Legal Or Factual Support.

The award of both fees and costs are discretionary under Section 505 of the Copyright Act. For the same reasons that OSI should not recover any fees as the prevailing party on the copyright claim, it should not recover any costs. Yet, OSI seeks to recover $1,160,549.80 in costs – including more than $117,000 in deposition and transcript costs, $197,000 in e-discovery fees, and $595,000 in expert witness fees. *See* OSI App. at 4-5, 35-37. OSI *assumes* with no legal support that it is entitled to recover these costs. In fact, there is no legal basis for their recovery, and OSI cites no case that has awarded these categories of costs. OSI's claim to recover its expert witness fees is a prime example of the legal and factual bankruptcy of OSI's position. More than half of OSI's requested costs are its claim for $595,313.78 in expert witness fees. Yet, OSI cites no case that allows a prevailing party on a copyright claim to recover any expert witness fees. *See* discussion below.  Once again, OSI just assumes its entitlement.

### B.   OSI's Costs Are Limited, At Most, To Taxable Costs Under 28 U.S.C. § 1920.

Congress has specified the expenses that may be taxed as costs against a losing party under 28 U.S.C. § 1920. Here, OSI (not PIC) was clearly the losing party since all of its claims were dismissed while PIC recovered nearly $9.6 million on its counterclaims. Thus, OSI should not be able to recover any costs under 28 U.S.C. § 1920.

Assuming for sake of argument that OSI is entitled to recover any costs in this arbitration, they should be limited to the following costs under 28 U.S.C. § 1920:

- Fees of the clerk and marshal;
- Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
- Fees and disbursements for printing and witnesses;
- Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
- Docket fees under section 1923 of this title; [and]
- Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

The types of costs recoverable under Section 1920 are very modest. OSI, however, did not submit any expenses that conform to the costs recoverable under Section 1920. Thus, even if OSI could recover these costs, it has a complete failure of proof.

OSI cites several cases for the proposition that "full costs" under 17 U.S.C. § 505 are not limited to the costs enumerated in 28 U.S.C. § 1920 and include the costs of online legal research. OSI App. at 34. First, even assuming that Section 505 of the Copyright Act allows for recovery of additional costs beyond those allowed by Section 1920, OSI has failed to show that the costs that it seeks to recover are of the type available under Section 505. Second, the majority view is that the costs recoverable under Section 505 are no greater than the costs recoverable under Section 1920.

The Supreme Court addressed the issue of expert witness fees in *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437 (1987).

The witness fee specified in Section 1920(3) is defined in 28 U.S.C. § 1821:

(a)(1) except as otherwise provided by law, a witness in attendance at any court of the united states, or before a united states magistrate judge, or before any person authorized to take his deposition pursuant to any rule or order of a court of the united states, shall be paid the fees and allowances provided by this section.

* * *

(b) a witness shall be paid an attendance fee of $40 per day for each day's attendance. A witness shall also be paid the attendance fee for the time necessarily

29

occupied in going to and returning from the place of attendance at the beginning and end of such attendance or at any time during such attendance.

Based on these provisions, the U.S. Supreme Court rejected the argument that the court could assess as costs a prevailing party's expert witness fees in excess of the amount specified in Section 1821:

> We will not lightly infer that congress has repealed §§ 1920 and 1821, either through rule 54(d) *or any other provision not referring explicitly to witness fees.* as always, where there is no clear indication otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment. . . . any argument that a federal court is empowered to exceed the limitations explicitly set out in §§ 1920 and 1821 without plain evidence of congressional intent to supersede those sections ignores our longstanding practice of construing statutes in pari materia.

*Id.* at 445 (citations omitted and emphasis added).

While no court has allowed recovery for expert witness fees under Section 1920, the Ninth Circuit has held that certain costs are reimbursable under Section 505 of the Copyright Act and are not limited to the limitations contained in Section 1920. *Twentieth Century Fox Film Corp. v. Dastar Corp.*, Case No. 98-cv-07189 (C.D. Cal. Feb 11, 2004), Judgment on Award of Attorneys' Fees Dkt. No. 452 (awarding the following non-taxable costs:  computer research (reduced 25% for overhead), travel expenses, duplicating and other miscellaneous costs, but refusing to reimburse messenger services (considered overhead)), aff'd, *Twentieth Century Fox Film Corp. v. Entm't Distrib.*, 429 F.3d 869, 885 (9th Cir. 2005);[7] *see also InveSys,* 369 F.3d at

---

[7] OSI argues that the Seventh Circuit also allows a court to award non-taxable costs under Section 505, but the cited decision, *Susan Wakeen Doll Co. v. Ashton-Drake Galleries*, 272 F.3d 441, 457-58 (7th Cir. 2001) did not say that.  Instead, the Seventh Circuit vacated and remanded the district court's decision to award attorney's fees in a copyright action as part of costs under Section 1920:  "In a copyright action, fees are governed by 17 U.S.C. § 505, and any award of fees and non-taxable costs must come through it, and not through the general costs provisions of 28 U.S.C. § 1920.  Therefore, the district court erred in awarding attorney's fees as 'costs' under 28 U.S.C. § 1920." (internal citations omitted).

30

22 (treating computer-aided research as part of "attorney's fees" (because "it saves attorney time to do research this way," resulting in fewer hours billed)).

The Eighth and Eleventh Circuits, however, have followed *Crawford* and refused to award costs beyond those recoverable under Section 1920 in a copyright case. *Pinkham v. Camex, Inc.*, 84 F.3d 292, 295 (8th Cir. 1996) (concluding that costs under Section 505 are limited to costs expressly identified in Section 1920 and that expert witness fees in excess of $40 per day are not recoverable); *Artisan Contractors Ass'n, of Am., Inc. v. Frontier Ins. Co.*, 275 F.3d 1038, 1039-40 (11th Cir. 2001) (same, expressly applying to expert witness fees). The Second Circuit also appears to follow *Crawford. Barrera v. Brooklyn Music, Ltd.*, 346 F. Supp. 2d 400, 405-06 (S.D.N.Y. 2004) (relying on *United States ex rel. Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996) (a non-copyright case)) to hold that fees charged by a party's expert witness for the preparation of his report are not recoverable under Section 505).

Courts in the First Circuit have also followed Crawford. *T-Peg, Inc. v. Vt. Timber Works, Inc.*, 2005 U.S. Dist. LEXIS 27031, at *15-16 (D.N.H. Nov. 8, 2005) ("VTW may not recover expert witness fees. Costs that may be assessed to reimburse a prevailing party [in a copyright infringement case] for its expert witness fees are limited to the $ 40 limit provided for in 28 U.S.C. § 1821(b)." (internal citation omitted)); *MAG Jewelry Co. v. Cherokee, Inc.*, 2007 U.S. Dist. LEXIS 96724, at *13 (D.R.I. Dec. 26, 2007) (expert witness fees not recoverable under Section 505). And recent decisions, relying on a second U.S. Supreme Court decision, confirm that costs under Section 505 are limited by Section 1920. *Tempest Publ'g, Inc. v. Hacienda Records & Recording Studio, Inc.*, 141 F. Supp. 3d 712, 723 (S.D. Tex. 2015) (also relying on *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) to hold that "costs taxable under § 505 are limited to those enumerated in § 1920"); *Geophysical Servs. v. TGS-Nopec Geophysical*

31

*Servs.*, 2016 U.S. Dist. LEXIS 150 (S.D. Tex. Jan. 4, 2016) (same).  Accordingly, only those taxable costs under Section 1920 are recoverable as costs under Section 505.

OSI cites Hutchinson *v. Patrick* for the proposition that "reasonable costs and expenses for travel, printing and photocopying" are recoverable in a fee-shifting proceeding.  636 F.3d 1, 17 (1ˢᵗ Cir. 2011); however, *Hutchinson* is not a copyright case, Section 505 is nowhere mentioned, and the costs referenced are limited to travel, printing and photocopying.  There is no mention of expert witness fees.  Indeed, OSI has failed to cite a single case that does not follow *Crawford* in refusing to include expert witness fees as a recoverable cost under any fee shifting statute (including Section 505) that does not *refer "explicitly to witness fees."  Crawford*, 482 U.S. at 445.

### C.   OSI Either Provided No Documentation, Or Grossly Incomplete Documentation, For The Costs It Seeks To Recover.

In addition to OSI's claims for expert witness fees being legally untenable, OSI also fails to submit any proof of these fees. PIC cannot locate any invoice, bill or other document attached to Mr. Petersen's declaration that relates to any fees paid to any of OSI's experts.  (See OSI App. at 35, n.66, and Petersen Decl. Ex. 2).  Since it is OSI's burden to prove up its costs, its failure to provide evidence of these costs preclude an award for them, even if these costs were recoverable, which they're not.  *See Hensley*, 461 U.S. at 436 (denying all expenses to local counsel because the documentation provided was not adequate.).

OSI identified $575,088.82 in costs and claimed $517,579.94, not including expert witness fees, in a chart.  OSI App. at 35.  According to OSI, "This table contains a summary of certain costs detailed in the invoices attached as Exhibit 2 to the Petersen Declaration."  *Id.* at

n.66.   After a thorough review of all of the invoices in Exhibit 2, however, OSI has only

submitted documentation of $40,382.66 of those costs,[8] broken down as follows:

| Category | Costs Claimed (i.e. 90%) | Total Costs on Ex. 2 Invoices |
|---|---|---|
| AAA Fees | $6,300 | $0 |
| Copy Costs | $35,526.23 | $1,681.36 |
| Deposition/transcript costs | $117,302.51 | $20,824.32 |
| E-discovery fees | $197,478.20 | $4,563.00 |
| Messenger/Courier | $4,624.38 | $113.69 |
| Online legal research | $6,976.53 | $1,144.10 |
| Shipping Costs | $7,675.54 | $368.97 |
| Travel Costs | $97,146.55 | $10,176.89 |
| Trial Technology | $44,550 | $0 |

*See* Declaration of Robert E. Allen, Ex. 1.   There is no reference to any other amount in the

invoices included in Exhibit 2 to the Petersen Declaration.   Since it has failed to include any

documentation, let alone adequate documentation, OSI's request of costs beyond the $40,382.66

(even assuming these categories of costs can be recovered) is without any evidentiary support

and must be denied. *Hensley*, 461 U.S. at 436.

## III.     CONCLUSION

For all of the reasons specified above, the Application should be denied in its entirety.   It

is discretionary whether OSI is entitled to recover any attorneys' fees or costs.   Here, PIC's

copyright claims – those asserted against OSI's customers in the federal copyright lawsuits and

those asserted against OSI in this arbitration – were objectively reasonable and there are no other

factors that would support an award of attorneys' fees to OSI.

Regarding PIC's prior lawsuits against OSI's customers, OSI filed six causes of action

against PIC in this arbitration, each of which was premised upon alleged wrongful conduct by

PIC in suing OSI's customers. Yet, the Arbitrator dismissed each of OSI's six causes of action

and expressly found that PIC's claims against OSI's customers were not "frivolous or in bad

---

[8] The invoices in Exhibit 2 to Mr. Petersen's declaration also include the following costs possibly not included in the chart of costs:   (1) Court Filing Fees, $1,505.00; and (2) Long distance charges, $5.33.

faith. After all, it was Sylvania's breach of contract that created the claims." Award at 86-87. Regarding PIC's copyright claims against OSI in this arbitration, the Arbitrator expressly held that "PIC had a good faith basis to pursue its copyright claims." *Id*. at 86. Based upon these findings that the Arbitrator has already made, it is hard to fathom how OSI could possibly argue that PIC's copyright lawsuits against OSI's customers in federal court or its copyright claims against OSI in this arbitration are objectively unreasonable. In fact, the only thing that is "objectively unreasonable" is OSI's claim for attorneys' fees under these circumstances and given the Arbitrator's findings and conclusions.

Likewise, the Arbitrator should exercise his discretion to decline to award costs to OSI because there is no legal or factual basis to support the award of the vast majority of the costs that OSI seeks to recover, such as its expert witness fees. Even as to the limited costs that are potentially recoverable under 28 U.S.C. § 1920, OSI failed to provide evidentiary support for any of these enumerated costs.

34

Dated:  December 22, 2017        Respectfully submitted,

*/s/ Gary Cruciani*             
 Gary Cruciani

**McKool Smith, P.C.**
300 Crescent Court, Suite 1500
Dallas, Texas 75201
(214) 978-4000
(214) 978-4044 fax
gcruciani@mckoolsmith.com

**McKool Smith Hennigan, P.C.**
Robert E. Allen
300 South Grand Ave., Suite 2900
Los Angeles, California 90071
Telephone: (213) 694-1200
rallen@mckoolsmithhennigan.com

**McKool Smith, P.C.**
Charles W. Fowler
300 West 6th St., Suite 1700
Austin, Texas 78701
Telephone: (512) 692-8700
cfowler@mckoolsmith.com

*Attorneys for Respondent/Counter-Claimant and*
*Third-Party Claimant*
*Photographic Illustrators Corporation*

## **CERTIFICATE OF SERVICE**

I certify that on December 22, 2017, I served this document by transmitting the same by electronic mail to all counsel of record for the Claimant/Counter-Respondent and the Third-Party Respondents.

*/s/ Gary Cruciani*
Gary Cruciani

McKool 1346354v4