UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
PHOTOGRAPHIC ILLUSTRATORS           )
CORPORATION,                        )
                                    )
                Petitioner,         )
                                    )       Civil Action
        v.                          )       No. 17-12425-PBS
                                    )
OSRAM SYLVANIA, INC.,               )
                                    )
                Respondent.         )
_____ )

**MEMORANDUM AND ORDER**

February 6, 2019

Saris, C.J.

**INTRODUCTION**

Petitioner Photographic Illustrators Corporation ("PIC") initiated this action to confirm its arbitration award against Respondent OSRAM Sylvania, Inc. ("Sylvania"). As relevant here, the arbitrator ruled against PIC on its copyright infringement counterclaim and for PIC on its breach of contract counterclaim. He awarded PIC $9,591,049.99 in damages for the contract counterclaim. He then denied Sylvania's request for attorneys' fees and costs under the Copyright Act as the prevailing party on PIC's copyright counterclaim and awarded PIC $3,960,655.63 in attorneys' fees and $1,473,653.50 in costs pursuant to the contract that Sylvania breached. Sylvania seeks to vacate the

1

award of fees and costs on the basis that the arbitrator manifestly disregarded the law in rejecting its request for fees and costs under the Copyright Act and essentially rewrote the contract by awarding PIC fees and costs for work exclusively on the copyright counterclaim.

After hearing, the Court **DENIES** Sylvania's motion to vacate the arbitration award (Docket No. 32) and **ALLOWS** PIC's first amended petition to confirm arbitration awards (Docket No. 40).

## FACTUAL BACKGROUND

PIC is a Massachusetts corporation that provides commercial photography services. Sylvania is a Delaware corporation that manufactures and sells lighting products. In 2006, PIC and Sylvania executed a licensing agreement permitting Sylvania to use PIC's photographs of its products ("the Agreement").

In August and November 2015, PIC sued a number of companies that sold Sylvania products for allegedly using PIC's photographs without authorization. The lawsuits alleged copyright infringement and violations of the Digital Millennium Copyright Act (DMCA).

On January 26, 2016, pursuant to the Agreement's arbitration clause, Sylvania commenced an arbitration against PIC with the American Arbitration Association. Sylvania alleged that PIC breached the Agreement, engaged in unfair trade practices under Mass. Gen. Laws ch. 93A, tortiously interfered

with Sylvania's business relationships, was unjustly enriched, and violated the federal RICO statute. PIC asserted a number of counterclaims against Sylvania, including breach of the Agreement, copyright infringement, violation of the DMCA, false designation of origin under the Lanham Act, and unfair trade practices under Mass. Gen. Laws ch. 93A. In October 2016, some of the companies PIC sued in 2015 agreed to consolidate those suits into the arbitration.

In May 2017, PIC and Sylvania agreed to bifurcate the arbitration into two phases, first addressing the merits and then attorneys' fees and costs. The arbitrator held an evidentiary hearing on the merits over twelve days in June 2017. On November 20, 2017, the arbitrator issued a Partial Final Award. He rejected all Sylvania's claims and all but one of PIC's counterclaims, including the copyright infringement counterclaim. He ruled for PIC on its breach of contract counterclaim and awarded it $9,591,049.99 in damages.

On January 18, 2018, the arbitrator issued a Final Award on attorneys' fees and costs. He first addressed PIC's request for fees and costs for prevailing on its contract counterclaim and recognized that it was governed by Paragraph 39 of the Agreement. In Paragraph 39, PIC and Sylvania agreed that "[i]f any legal action, arbitration, or other proceeding is brought for a breach of this Agreement or any of the warranties herein,

the prevailing party shall be entitled to recover its reasonable attorneys' fees and other costs incurred in bringing such action or proceeding." Dkt. No. 34-1 at 20.

Turning to the enforceability of PIC's contingency fee arrangement, the arbitrator noted that PIC gave its attorneys 30% of the fee and cost award in addition to 30% of the contract damages; although this type of contingency fee is unusual, he found that PIC's attorneys sufficiently justified the arrangement in this case. He then determined that the attorneys properly and reasonably incurred the costs and expenses they itemized, the contingency fee was roughly equivalent to what the attorneys would have been paid had they charged on an hourly basis, and the fee amount was reasonable given the nature of the case and the attorneys' qualifications. With these findings, he concluded that the contingency fee arrangement was enforceable between PIC and its attorneys.

He then found that PIC's contingency fee was reasonable under Massachusetts law and thus enforceable against Sylvania under Paragraph 39 of the Agreement, which limited PIC to "reasonable" fees and costs. He rejected Sylvania's argument that the fee was unreasonable because PIC's attorneys spent more time and effort litigating the copyright counterclaim than the contract counterclaim; instead, he determined that the vast majority of the work was applicable to both. He read Paragraph

39 to allow only costs related to the contract counterclaim, so he reduced the consultant and expert witness fees based on the amount of their work that related only to the copyright counterclaim. Ultimately, he awarded PIC $1,473,653.50 in costs and, after running the formula in PIC's contingency fee agreement, $3,960,655.63 in attorneys' fees.

The arbitrator next addressed Sylvania's request for fees and costs under the Copyright Act for prevailing on PIC's copyright counterclaim:

> PIC correctly cites to the recent unanimous Supreme Court decision Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979 (2016) as controlling authority on whether Sylvania and the Customer Defendants should recover any fees or costs. I ruled in the PFA that PIC's copyright claims were objectively reasonable and brought in good faith. This arbitration and the claims asserted were precipitated by Sylvania's clear breach of the attribution provisions of the Agreement and its litigation posture throughout the arbitration. The Supreme Court in Kirtsaeng repeated the principles and criteria for awarding fees set forth in Fogerty v. Fantasy, Inc., 510 U.S. 517, 533-34 (1994).
>
> In Fogerty, the Court emphasized that the trial court has discretion in awarding fees and should not award them as a matter of course. The Court identified some factors to consider, including frivolousness, motivation and objective unreasonableness. Id. In Kirtsaeng, the Court again relied on the objective reasonableness of the losing party's position. I have already found that PIC's position on its copyright claims was a reasonable one, albeit not a successful one. Nor do I find that the granting of fees to Sylvania and the Customer Defendants would further the Copyright Act's fundamental goal of "enriching the general public through access to creative works." Fogerty, supra at 527; accord, Kirtsaeng, supra at 1986. Accordingly, exercising my informed discretion,

5

>  I deny the applications of Sylvania and the Customer
>  Defendants for attorneys' fees and costs.

Dkt No. 34-3 at 12-13.

PIC initiated this civil action on December 8, 2017. In its initial petition, PIC sought to confirm its $9,591,049.99 Partial Final Award for Sylvania's breach of contract. Sylvania does not object to the Partial Final Award. On March 29, 2018, PIC amended its petition to seek confirmation of its $3,960,655.63 in attorneys' fees and $1,473,653,50 in costs in the Final Award. Sylvania has moved to vacate the Final Award.

## DISCUSSION

### I. Standard of Review

Under the Federal Arbitration Act (FAA), a party to an arbitration may apply within one year for a judicial order confirming the award. 9 U.S.C. § 9. Upon receipt of such an application, unless the court vacates, modifies, or corrects the arbitration award pursuant to 9 U.S.C. §§ 10, 11, it must confirm the award. Ortiz-Espinosa v. BBVA Sec. of P.R., Inc., 852 F.3d 36, 42 (1st Cir. 2017).

Section 10 provides the "exclusive grounds" for vacating an arbitration award. Id. (quoting Hall St. Assocs. v. Mattel, Inc., 552 U.S. 576, 584 (2008)). A "federal court's authority to defenestrate an arbitration award is extremely limited." First State Ins. Co. v. Nat'l Cas. Co., 781 F.3d 7, 11 (1st Cir.

6

2015). Courts do not "hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts," even "where such error is painfully clear," nor do they "revisit the arbitrators' ultimate determination of whether or not to impose liability." Ortiz-Espinosa, 852 F.3d at 48 (quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 8 (1st Cir. 1990)). A party challenging an arbitration award therefore bears a "heavy burden." Oxford Health Plans LLC v. Sutter, 569 U.S. 564, 569 (2013).

Sylvania argues that the Court should vacate the Final Award under § 10(a)(4), which permits vacatur "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4).[1] When arbitrators are tasked with contract interpretation, it is not enough for a party seeking to vacate the award to show that they made even a "grave error." Oxford Health, 569 U.S. at 572.

---

[1] Sylvania's brief is replete with insinuations that the arbitrator was biased against it because of a personal relationship with a name partner at one of the law firms representing PIC. Sylvania provides no evidence to support its allegation of bias besides what it sees as an improper award. Accordingly, the Court does not find that vacatur is appropriate for "evident partiality or corruption in the arbitrators." 9 U.S.C. § 10(a)(2); see also Dawahare v. Spencer, 210 F.3d 666, 669 (6th Cir. 2000) (declining to vacate an arbitration award where the party seeking vacatur "point[ed] to nothing but the amount of the award to establish evident partiality").

7

Instead, the party must demonstrate that the arbitrators "abandoned their interpretative role," id. at 571, or "acted so far outside the bounds of their authority that they can be said to have dispensed their 'own brand of industrial justice,'" First State, 781 F.3d at 11 (quoting Stolt-Nielsen v. AnimalFeeds Int'l Corp., 559 U.S. 662, 671 (2010)).

"Put another way, as long as an arbitration award 'draw[s] its essence' from the underlying agreement, it will withstand judicial review -- and it does not matter how 'good, bad, or ugly' the match between the contract and the terms of the award may be." Id. (alteration in original) (quoting Oxford Health, 569 U.S. at 569, 573). Accordingly, "the sole question . . . is whether the arbitrator (even arguably) interpreted the parties' contract." Oxford Health, 569 U.S. at 569. The focus of this inquiry is on the "text of the arbitral award" to see whether the arbitrators used language that suggests they "understood the nature of their task." First State, 781 F.3d at 11.

Under the manifest disregard doctrine, which is "a judicial gloss on § 10," Ortiz-Espinosa, 852 F.3d at 46, a court may set aside an arbitration award if it is "(1) unfounded in reason and fact; (2) based on reasoning so palpably faulty that no judge, or group of judges, ever could conceivably have made such a ruling; or (3) mistakenly based on a crucial assumption that is concededly a non-fact," Mountain Valley Prop., Inc. v. Applied

Risk Servs., Inc., 863 F.3d 90, 95 (1st Cir. 2017) (quoting McCarthy v. Citigroup Glob. Mkts. Inc., 463 F.3d 87, 91 (1st Cir. 2006)). The doctrine applies when "the award contradicted unambiguous contract language or 'the arbitrator recognized the applicable law, but ignored it.'" Raymond James Fin. Servs., Inc. v. Fenyk, 780 F.3d 59, 64 (1st Cir. 2015) (quoting Bangor Gas Co. v. H.Q. Energy Servs. (U.S.) Inc., 695 F.3d 181, 187 (1st Cir. 2012)). To succeed on a manifest disregard argument, the party challenging the award must point to "some showing in the record, other than the result obtained, that the arbitrator[] knew the law and expressly disregarded it." Ramos-Santiago v. United Parcel Serv., 524 F.3d 120, 124 (1st Cir. 2008) (alteration in original) (quoting Advest, Inc., 914 F.2d at 9). If "the arbitrator's reasoning and conclusions are . . . colorable," a court cannot vacate the award. Mountain Valley, 863 F.3d at 95.

In Hall Street Associates v. Mattel, Inc., the Supreme Court held that the FAA provides the exclusive grounds for vacating an award. 552 U.S. at 578. After Hall Street, the First Circuit has acknowledged doubt on the continuing validity of the manifest disregard doctrine but has declined to decide the issue where the party challenging the award has failed to meet the high burden of showing manifest disregard. See Mountain Valley, 863 F.3d at 94-95. Because the arbitrator did not act in

9

manifest disregard of the law, the Court follows the First Circuit in assuming the validity of the doctrine.

## II. Denial of Fees and Costs Under the Copyright Act

Sylvania first argues that the arbitrator manifestly disregarded the law in rejecting its fee request under the Copyright Act. It contends that the arbitrator 1) did not take an evenhanded approach to evaluating the parties' fee requests by completely denying its request under the Copyright Act while granting nearly all of PIC's request under the Agreement; 2) did not recognize that he could award fees and costs even if PIC's losing position on its copyright counterclaim was reasonable; and 3) improperly failed to articulate why granting its fee request would not serve the purposes of the Copyright Act when doing so would in fact deter PIC's overaggressive assertions of its copyrights.

### A. Legal Standard

Under 17 U.S.C. § 505, in a copyright infringement action "the court in its discretion may allow the recovery of full costs by or against any party" and "may also award a reasonable attorney's fee to the prevailing party." Courts have "broad leeway" in awarding fees and costs. Kirtsaeng v. John Wiley & Sons, Inc., 136 S. Ct. 1979, 1985 (2016). To determine whether such an award is appropriate, court undertake a "case-by-case assessment" that does "not treat prevailing plaintiffs and

10

prevailing defendants any differently." Id. The primary consideration is whether the fee award would "encourage the types of lawsuits that promote" the purpose of the Copyright Act, namely "enriching the general public through access to creative works" by "encouraging and rewarding authors' creations while also enabling others to build on that work." Id. at 1986 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 526 (1994)). Courts must consider all relevant factors, such as "frivolousness, motivation, objective unreasonableness[,] and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 1985 (alteration in original) (quoting Fogerty, 510 U.S. at 534 n.19).

In balancing these factors, courts should give "substantial weight to the objective reasonableness of the losing party's position." Id. at 1983. But a court "may award fees even though the losing party offered reasonable arguments." Id. at 1988. For example, "even if the losing position was reasonable in a particular case," a court can order fee-shifting "to deter repeated instances of copyright infringement or overaggressive assertions of copyright claims." Id. at 1989. Thus, although objective reasonableness can be "an important factor in assessing fee applications," it cannot be "the controlling one," nor can a court impose a presumption against granting fees if it finds the losing party's position reasonable. Id. at 1988-89.

**B.    Analysis**

After accurately reciting the Kirstaeng standard, the arbitrator stated that PIC's position on its copyright counterclaim was reasonable and in good faith and that it would not further the goals of the Copyright Act to award Sylvania fees in this case. These factors were proper for the arbitrator to consider. Id. at 1985-86. By recognizing the correct legal standard, considering proper factors, and reaching a decision within his broad discretion, the arbitrator did not exhibit manifest disregard of the law.

Sylvania's three specific criticisms of the award are unavailing. The Supreme Court's admonition that fees are to be awarded evenhandedly under the Copyright Act requires evenhandedness between prevailing plaintiffs and prevailing defendants. Id. at 1985. Kirstaeng does not suggest that the arbitrator had to consider the breach of contract fee award in determining whether a fee award was appropriate under the Copyright Act. In addition, the arbitrator did not rely solely on the fact that he found PIC's copyright counterclaim to be reasonable to deny Sylvania's fee request; he also considered whether awarding fees would further the goals of the Copyright Act. Finally, arbitrators "are under no compulsion" to explain their decisions, so the arbitrator's failure to address Sylvania's argument that granting its fee request would serve

the goals of the Copyright Act does not support vacating the award. Zayas v. Bacardi Corp., 524 F.3d 65, 70 (1st Cir. 2008).

Sylvania believes PIC is overaggressively asserting its copyrights and hampering access to creative works. While the Court might agree that PIC has been overly aggressive in litigating its copyright claims in certain actions, the arbitrator did not agree, and the Court, with its limited role in reviewing the award, declines to discard his assessment. See, e.g., Ortiz-Espinosa, 852 F.3d at 48.

## III. Award of Fees and Costs Under the Agreement

Sylvania also contends that the arbitrator exceeded his authority in awarding PIC $1,473,653.50 in costs and $3,960,655.63 in fees pursuant to the Agreement for prevailing on its breach of contract counterclaim. He did not. He correctly recognized that Paragraph 39 of the Agreement governed PIC's request for fees and costs for prevailing on its contract counterclaim. He then applied Paragraph 39 by calculating the fees and costs that PIC owed its attorneys under its contingency fee arrangement and then evaluating, as required by Paragraph 39, whether those fees and costs were reasonable for their work on the contract counterclaim. Through the application of Paragraph 39 and its reasonableness requirement, the award "dr[ew] its essence from the contract" and represented the arbitrator's construction of the Agreement. Oxford Health, 569

13

U.S. at 569 (quoting E. Associated Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000)). The award provides no indication that the arbitrator "abandoned [his] interpretive role." Id. at 571.

Sylvania accuses the arbitrator of rewriting Paragraph 39 to require it to pay PIC's fees and costs for its attorneys' work on the losing copyright counterclaim under the guise of fees and costs for its successful copyright counterclaim. Sylvania correctly notes that a court can vacate an award where it "contradicted unambiguous contract language." Raymond James, 780 F.3d at 64. In the Final Award, however, the arbitrator did not ignore the plain terms of Paragraph 39. He did not state, for example, that the Agreement permitted PIC to recover for work spent exclusively prosecuting its copyright counterclaim or that Sylvania owed whatever fees and costs PIC agreed to pay its attorneys under its contingency arrangement, however unreasonable. In fact, the arbitrator reduced the consultant and expert witness fees to account for the work they did solely on the copyright counterclaim. He noted that there was significant overlap between the work required for the contract and copyright counterclaims because they arose from the same sets of facts. He also determined that the fees PIC owed its attorneys under the contingency fee agreement were reasonable by cross-checking them against the attorneys' hourly rates and billable hours. The

Agreement did not provide any guidance on how to determine whether the amount of fees and costs were reasonable, so the arbitrator did not exceed his authority in making a decision on these issues. Unlike the cases Sylvania cites that found grounds for vacatur, the arbitrator here did not ignore what the Agreement "specifically and expressly provide[d]." E.g., U.S. Postal Serv. v. Am. Postal Workers Union, 907 F. Supp. 2d 986, 994 (D. Minn. 2012) (emphasis omitted).

Nor does Sylvania's allegation that the arbitrator rewrote the Agreement to conform to PIC's contingency fee arrangement have merit. As PIC argued to the arbitrator, a contingency fee arrangement can control a contractual fee award. See, e.g., N. Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir. 1988) ("Where the contract for employment of counsel provides a clear and workable formula for determining the amount of fees, the terms of the agreement will usually control."); Winthrop Corp. v. Lowenthal, 558 N.E.2d 1138, 1139, 1142 (Mass. App. Ct. 1990) (interpreting a contract that shifted "costs and reasonable attorney's fees" to the prevailing party on a breach of contract claim to require payment of reasonable fees incurred by the prevailing party under a contingency fee arrangement).

The Court recognizes that PIC's contingency fee arrangement is unusual in that it entitles PIC's attorneys to 30% of the underlying award for breach of contract and 30% of any fees and

costs that PIC receives. However, the Massachusetts Rules of Professional Conduct appear to permit such an arrangement. See Mass. R. Prof'l Conduct 1.5(c)(5) (allowing attorneys and their clients to deviate from the default rule that a contingency fee arrangement entitles the attorney to "the greater of (i) the amount of any attorney's fees awarded by the court or included in the settlement or (ii) the amount determined by application of the percentage of other formula to the recovery amount not including such attorney's fees"). The Massachusetts Supreme Judicial Court has upheld a contingency fee arrangement that gave the attorneys a percentage of both the underlying damages settlement and the client's statutory attorneys' fee award. See Cambridge Tr. Co. v. Hanify & King Prof'l Corp., 721 N.E.2d 1, 4 (Mass. 1999); see also Douglas R. Richmond, Turns of the Contingent Fee Key to the Courthouse Door, 65 Buff. L. Rev. 915, 973-74 (2017) (discussing this type of contingency fee arrangement). Such an arrangement would be vulnerable to attack and not enforceable if it were "plainly unreasonable." Cambridge Tr. Co., 721 N.E.2d at 7 (quoting Gagnon v. Shoblom, 565 N.E.2d 775, 777 (Mass. 1991)). To guard against an unreasonable windfall, the arbitrator cross-checked against the lodestar and

found the contingency fee was not unreasonable given PIC's attorneys' work on the matter.[2]

At its heart, Sylvania takes issue with the arbitrator's decision that the fees PIC owed its attorneys under the contingency arrangement were reasonably incurred in bringing the contract counterclaim. Sylvania's argument that PIC's attorneys could not have spent most of their time on the contract counterclaim when they emphasized the copyright counterclaim in the briefing and at the hearing certainly has force. So does its policy argument that the arbitrator's decision to accept PIC's broad definition of how much of its attorneys' work related to the contract counterclaim encourages bringing frivolous, related claims to gin up more fees and costs. But under the extremely narrow scope of judicial review of an arbitration award, the Court cannot second-guess the arbitrator's decision on allocating PIC's attorneys' time between the contract and copyright counterclaims, even if the Court might have done it differently. See Oxford Health, 569 U.S. at 572.

---

[2] The arbitrator looked at the billing rates and number of hours billed and determined that they were comparable to what a large Boston law firm would have charged for this type of case. See Dkt. No. 34-3 at 10. He calculated that the amount of attorneys' fees would have been over $4.3 million had PIC's attorneys charged via an hourly rate, in comparison to the $3,960,655.63 in fees awarded pursuant to the contingency arrangement. See id. at 6.

## ORDER

Accordingly, Sylvania's motion to vacate the arbitration award (Docket No. 32) is **DENIED** and PIC's first amended petition to confirm arbitration awards (Docket No. 40) is **ALLOWED**.

SO ORDERED.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge